UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-60351-PAS-SEITZ/O'SULLIVAN

MANAGED CARE SOLUTIONS, INC.,

      Plaintiff,

v.

ESSENT HEALTHCARE, INC.,

      Defendant.

      _____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNT TWO OF PLAINTIFF'S AMENDED COMPLAINT

THIS MATTER is before the Court on Defendant's Motion to Dismiss Count Two of Plaintiff's Amended Complaint [DE-32]. Plaintiff, Managed Care Solutions, Inc. ("MCS") brings this action for breach of contract and equitable accounting against Defendant, Essent Healthcare, Inc. ("Essent"), alleging that Essent breached a contract with MCS granting MCS exclusive rights to perform collection and appeal services on third-party payor accounts for each of Essent's five hospitals. Through its claim for an equitable accounting, MCS essentially requests that the Court ascertain the amount of MCS' damages rather than a jury. Essent moves to dismiss MCS' claim for equitable accounting, arguing that MCS has an adequate remedy at law such that it is not entitled to an equitable accounting. Because the facts alleged in MCS' Complaint do not indicate that the complexity of the accounts at issue would prevent a jury from competently ascertaining MCS' damages and prevent MCS from having an adequate remedy at law, Essent's Motion to Dismiss will be granted.

### 1.     Background Facts

MCS alleges as follows. Essent is a corporation that provides healthcare services through

1

five hospital facilities that Essent owns and operates.  (DE-28, Amended Complaint ("Complaint") at ¶ 5).  At all times relevant to this action, these five hospital facilities were Merrimack Valley Hospital, Sharon Hospital, Nashoba Valley Medical Center, Southwest Regional Medical Center and Paris Regional Medical Center ("Paris Regional") (collectively "Essent Facilities").  (*Id.*).  Like other hospitals, after the delivery or arrangement of health care services, these five hospitals generate patient receivables that reflect the amounts due from the patient or a designated third-party payor.  (*Id.* at ¶ 6).  MCS is a corporation with a principal place of business in Florida that is engaged in the business of collecting for health care providers the amounts due on patient receivables when those accounts go unpaid in whole or in part due to a third-party payors' denial or failure to pay part or all of an outstanding bill.  (*Id.* at ¶ 7).

On February 20, 2006, Essent entered into a three-year Professional Services Agreement ("Agreement") with MCS, providing for MCS to manage and collect payments from third party payors on receivables generated by all Essent Facilities, which included appealing and recovering on Essent's behalf claims for hospital services denied or underpaid by health insurance companies, health maintenance organizations, preferred provider organizations, governmental payors, and any other managed care organizations.  (*Id.* at ¶ 8).  Critically, under the Agreement, MCS was to have sole and exclusive rights to perform these collection services for all receivables on third party denials or underpayments worth more than $100.  (*Id.* at ¶¶ 9, 11(a)).[1]

---

[1]  Specifically, the Agreement provided that

[Essent's] engagement of MCS to provide the 'Services' is exclusive.  During the Term of this Agreement, MCS shall have the sole and exclusive right to perform the Services on behalf of [MCS].  Accordingly, [Essent] shall not, directly or indirectly, employ or engage any other person or entity to provide the Services, whether as an employee, consultant, independent contractor or an any other basis....

2

Pursuant to this exclusive right, Essent was to transfer all such receivables to MCS within 72 hours after receiving a denial on the claim. (Agreement at ¶ 6.1.1). Essent also was responsible for providing MCS with access to Essent's receivables system and managed care contracting system to enable MCS to have account information necessary for collection. (Agreement at ¶ 6.2.2).

The Agreement prescribed for MCS to be compensated according to the amounts it was able to collect. Specifically, it stated that MCS would receive 22% of any amount Essent recovered on receivables assigned to MCS. (*Id.* at ¶ 10). MCS was to receive this fee regardless of whether Essent or one of the Hospital Facilities had worked on recovering on the assigned receivable at any time. (Agreement at ¶ 7). An addendum to the Agreement effective April 1, 2006 slightly modified the Agreement such that MCS was to recover 27.88% on any amount recovered on a receivable from Paris Regional. (Complaint at ¶ 10; DE-28-2, Addendum to Contract). The Agreement does not provide for an accounting if there is a dispute as to the amount of outstanding fees upon termination.

On September 29, 2006, Steven Wylie ("Wylie"), Vice President of Financial Operations for Essent, notified MCS in a letter that Essent was terminating the Agreement without cause. (Complaint at ¶ 13). Pursuant to a clause in the Agreement allowing for either party to terminate without cause upon 180 days' prior written notice, Wylie's letter resulted in termination of the Agreement on March 29, 2007. (*Id.*). During the term of the Agreement, Essent only provided MCS with access to receivables from Paris Regional, from which MCS ultimately recovered in excess of $2,000,000 on Essent's behalf. (*Id.* at ¶ 14).

---

(DE-28-1, Agreement, at ¶ 8).

According to MCS, Essent breached the Agreement in a number of ways, chiefly by failing to provide MCS with exclusive rights for collecting on third party denials and underpayments during the term of the Agreement.  Besides claiming that Essent only provided MCS access to the receivables for one hospital, Paris Regional, MCS also alleges that Essent assigned to other companies certain receivables that should have been transferred to MCS.  (*Id.* at ¶¶ 14, 19-21).  Furthermore, MCS claims Essent failed to uphold a host of other ancillary responsibilities the Agreement placed on Essent to assist MCS in identifying and collecting on denied claims, including duties to become fully operational within 60 days of the start of the agreement, to transfer to MCS denials on all accounts worth more than $100, to provide MCS at least 220 days to work on any assigned claim, and to provide MCS with copies of all contracts Essent entered into with third party payors.  (*Id.* at ¶ 15).

Moreover, MCS claims that Essent breached the contract after termination by failing to comply with the post-termination obligations imposed on Essent under Paragraph 9.2 of the Agreement.  (*Id.* at ¶ 28).  This provision requires Essent to (1) continue for 90 days after termination to pay MCS a professional fee on all monies recovered on receivables assigned to MCS (27.88% on Paris Regional receivables and 22% on receivables from all other Essent Facilities) and (2) make a lump sum payment to compensate MCS for software licensing fees MCS expended to a third party in order for MCS to have a system to manage and service Essent's receivables.  (Agreement at ¶ 9.2).  MCS claims that Essent failed to pay MCS these required professional fees or, despite MCS' expenditure of over $1,150,000 for the software necessary to implement a management system, for software licensing fees.  (Complaint at ¶¶ 28-30).

4

MCS' Complaint asserts causes of action for both breach of contract and an equitable accounting and demands a jury trial. Its cause of action for breach of contract is straightforward, asserting that Essent breached various contractual provisions, causing MCS to incur lost revenue and lost profits, resulting in liquidated, compensatory and actual damages. MCS' cause of action for an equitable accounting asks the Court to enter judgment for "an accounting by Essent of all information related to each and every account that should have been directed to MCS under the PSA and each and every account that MCS alleges should have been directed to it under the PSA." (Complaint at page 11). MCS further alleges that the Agreement's "demands between the parties involve extensive and complicated accounts" and that "[b]ecause of the volume of the receivable accounts at issue and Essent's lack of cooperation, MCS' remedy at law is inadequate and will not be as expeditious as it is in equity." (*Id.* at ¶¶ 39, 43).

Essent moves to dismiss MCS' claim for an equitable accounting under Federal Rule of Civil Procedure 12(b)(6), asserting that MCS cannot maintain an action for the equitable remedy of accounting when it can obtain an adequate remedy at law through a judgment on its breach of contract action. MCS responds that it can bring an action for an equitable accounting to determine the extent of the damages resulting from the breach of the Agreement because the obligations of the Parties under the Agreement involve extensive or complicated accounts such that it is not clear that a remedy at law is as adequate or expeditious as it is in equity.

**2.      Motion to Dismiss Standard**

The purpose of a motion brought pursuant to Fed. R. Civ. P. 12(b)(6) is to test the facial sufficiency of a complaint. To survive a 12(b)(6) motion to dismiss, a complaint need not be detailed, but the factual allegations contained therein "must be enough to raise a right to relief

above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555. "[A] formulaic recitation of the elements will not do." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (quotation omitted). In other words, a plaintiff's pleading obligations require "more than mere labels and conclusions." *Id.*

On a motion to dismiss, the Court must accept all allegations in the complaint as true, and view them in the light most favorable to plaintiff. *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). A well-pled complaint can proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely. *Rance v. D.R. Horton, Inc.*, 316 Fed. Appx. 860, 862 (11th Cir. 2008). However, taking the facts as true, a court may grant a motion to dismiss if no reasonable construction of the factual allegations will support a cause of action. *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006).

### 3.   Analysis

Here, by asserting claims for both a breach of contract and equitable accounting, MCS presents the Court with both legal and equitable issues. However, despite MCS' allegation of an equitable claim, this is an action at law based on Essent's alleged breach of the Agreement in which MCS. *See Bradshaw v. Thompson*, 454 F.2d 75 (6th Cir. 1972) (action in which plaintiff asserts a claim for accounting seeking recovery for damages arising out of an alleged breach of contract is "unmistakably legal"). The Federal Rules of Civil Procedure protect the right of any party to try a legal question before a jury. Fed. R. Civ. P. 38(a) ("The right of trial by jury as

declared by the Seventh Amendment to the Constitution ... is preserved to the parties inviolate.")[2]
As a result, it has long been the rule in federal courts that where both legal and equitable issues
are presented in a single case, "only under the most imperative circumstances ... can the right to
trial of a legal issue be lost through prior determination of equitable claims." *Beacon Theaters,
Inc. v. Westover*, 359 U.S. 500, 511 (1959).

In a situation like this, where causes of action for both a breach of contract and equitable
accounting are asserted simultaneously with respect to the same underlying facts, the plaintiff can
only maintain both causes of action by showing "that the 'accounts between the parties' are of
such a 'complicated nature' that only a court of equity can satisfactorily unravel them." *Dairy
Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962). Furthermore, "[i]n view of the powers given to
District Court ... to appoint special masters to assist the jury in those exceptional cases where the
legal issues are too complicated for the jury adequately to handle alone, the burden of such a
showing is considerably increased and it will indeed be a rare case in which it can be met." *Id.*[3]
Pursuant to these long-standing principles, a claim for equitable accounting should be dismissed
where the evidentiary facts alleged in a complaint show neither complexity nor inadequacy of a
legal remedy. *See, e.g., Florida Software Sys. Inc. v. Receivable Dynamics Inc.*, 46 F. Supp. 2d
1276, 1285-86 (M.D. Fla. 1999); *Chiron v. Isram Wholesale Tours and Travel Ltd.*, 519 So. 2d

---

[2] The Seventh Amendment to the United States Constitution states as follows: "In Suits at common law,
where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." A "suit at
common law" is one that adjudicates legal rather than equitable rights. *Granfinanciera v. Nordberg*, 492 U.S. 33, 41
(1989). The Seventh Amendment right to a jury trial attaches to all actions except "those where equitable rights
*alone* were recognized." *Id.* at 43-44 (quotation omitted).

[3] At least one commentator has read *Dairy Queen* and subsequent lower court decisions to mean that "in
the federal courts, one may now conclude that the remedy of an 'accounting' no longer exists in cases of complex
accounts. Such is the clear implication of the United States Supreme Court's decision in *Dairy Queen v. Wood*."
Joel Eichengrun, *Remedying the Remedy of Accounting*, 60 Ind. L.J. 463, 473 (1985).

1102, 1103 (Fla. DCA 3rd 1988) (dismissing action for equitable accounting under Florida law and similarly requiring allegations of complexity and inadequate legal remedy).[4]

Here, MCS requests an equitable accounting to have access to the receivables on third party denials or underpayments that Essent should have provided to MCS under the Agreement.[5] Moreover, MCS concedes that this request is being made in order for the Court to determine the extent of damages" resulting from Essent's breach.  (DE-36, MCS Response at pages 3-4).

While it appears MCS' damages for breach of the Agreement would be derived by calculating MCS' expected collections on the aggregation of a large number of receivables[6], the method for calculating that amount is outlined with specificity in the Agreement and is not complicated.  As alleged in the Complaint, MCS was to receive 27.88% on all collections on Paris receivables and 22% on all other receivables.  In other words, Essent was to pay MCS a commission on all of MCS' collections, a concept that any jury can understand.  As a result, a jury could readily assess evidence concerning the amount of the commissions MCS can expect to have received had Essent not breached the agreement by withholding receivables and by violating other provisions of the Agreement.  MCS' conclusory allegation that the accounts at

---

[4] Florida law substantially incorporates *Dairy Queen*'s requirement that a plaintiff demonstrate the accounts at issue are so complicated that a jury would not be able to ascertain damages and a remedy at law is inadequate. *See Kee v. National Res. Life Ins. Co.*, 918 F.2d 1538, 1540 (11th Cir. 1990) ("Under Florida law, a party seeking an equitable accounting must show the existence of a fiduciary relationship or a complex transaction and must demonstrate that the remedy at law is inadequate.")

[5] In its claim for an equitable accounting, MCS does not ask for an accounting of the software licensing fees MCS expended to third parties.

[6] Under Florida law, a non-breaching plaintiff in a breach of contract action is entitled to benefit-of-the-bargain damages. *National Educ. Ctrs., Inc. v. Kirkland*, 635 So. 2d 33, 34 (Fla. DCA 4th 1994).  In other words, MCS would be entitled to damages that would put it in the condition it would have been in had the contract been performed and the breach not occurred. *See Telemundo Network, Inc.v. Spanish Television Servs., Inc.*, 812 So. 2d 461, 464 (Fla. DCA 3d 2002).

issue are "extensive and complicated" cannot trump the factual allegations indicating that a calculation of damages in this action is not a complicated endeavor. *See Validsa, Inc. v. PDVSA Servs. Inc.*, 632 F. Supp. 2d 1219, 1245 (S.D. Fla. 2009) (dismissing equitable accounting claim with prejudice when contracts at issue "are merely installment contracts for the sale of sugar and beef" and "[t]here is nothing complex about [them] from an operational or financial standpoint").

Despite MCS' claim that determining the amount of the receivables that should been transferred during the course of the Agreement would be a time-consuming and complicated task for a jury, the fact that MCS' damages may require the aggregation of thousands of receivables does not, in this case, make a calculation of damages unduly complex or unnecessarily extensive. *See, e.g., Kreamer v. College of Osteopathic Medicine & Surgery*, 301 N.W.2d 698, 700-701 (Iowa 1981) ("length and volume have never, in and of themselves, been sufficient to require the adjudication of an accounting action in equity"); *Huebener v. Chinn*, 207 P.2d 1136 (Or. 1949) (a plaintiff "who depends upon complexity to confer jurisdiction upon a court of equity, must allege ... facts which show, not only a lengthy account, but one which is so difficult and complicated as to be beyond the ken of jury trial"). Rule 1006, which provides for parties to present the contents of voluminous documents in "the form of a chart, summary, or calculation," allows MCS to concisely present to a jury the total amount of receivables that should have been transferred to MCS pursuant to the Agreement. *See Haynes Trane Serv. Agency, Inc. v. American Std., Inc.*, 573 F.3d 947, 965 (10th Cir. 2009) (rejecting equitable accounting claim and use of a special master where fraud damages calculation did not require jury to examine individual claimbacks since Rule 1006 summaries could be used). Furthermore, if MCS believes such testimony would be helpful in furthering the jury's understanding of how receivables are generated, how those

receivables are collected and the damages MCS incurred as a result of Essent's breach, MCS can present expert testimony on those issues.

Finally, MCS' claim that it is entitled to an equitable accounting because Essent has sole and exclusive possession of the receivables records is also misguided. First, the fact that Essent has possession of the receivables information is irrelevant in determining whether the accounts at issue are so complex that a jury cannot ascertain damages. A "legal remedy cannot be characterized as inadequate merely because the measure of damages may necessitate a look into [the defendant's] business records." *Dairy Queen*, 369 U.S. at 478; *see also, Oil Express Nat'l, Inc. v. Latos*, 966 F. Supp. 650, 652 (N.D. Ill. 1997). Second, while MCS alleges that Essent failed to transfer receivables to MCS during the term of the contract, there is no reason why MCS cannot request records reflecting the amount of those receivables during discovery. "Where a party [has] the opportunity to establish their damage claim through discovery, a request for accounting is not appropriate." *Centrix HR, LLC v. On-Site Staff Mgmt., Inc.*, 2008 U.S. Dist. LEXIS 43629 (E.D. Pa. Jun. 3, 2008). Even if MCS has difficulty ascertaining those records during discovery, that does not justify taking the resolution of MCS' damages away from the jury. An equitable accounting is not a substitute for a motion to compel under Fed. R. Civ. P. 37.[7] *See Profile Prods., LLC v. Soil Mgmt. Tech., Inc.*, 155 F. Supp. 2d 880, 887 (N.D. Ill. 2001).

Because the Agreement indicates that the nature of the accounts is not so complicated that a jury would be unable to ascertain damages and federal courts strongly disfavor taking damages

---

[7] Should Plaintiff have difficulty procuring those records during discovery, it should follow the procedure described in the Pretrial Order [DE-26] and contact Magistrate Judge O'Sullivan's Chambers to resolve the matter on his next available discovery calendar.

calculations away from a jury, MCS' equitable accounting claim will be dismissed with prejudice. *See Validsa*, 632 F. Supp. 2d at 1245 (S.D. Fla. 2009) (dismissing equitable accounting claim with prejudice as plaintiff has an adequate remedy at law)  Having carefully considered Defendant's Motion, it is hereby

ORDERED that Defendant's Motion To Dismiss [DE-32] is GRANTED and MCS' equitable accounting claim (Count II) is DISMISSED with prejudice.

DONE AND ORDERED in Miami, Florida, this 2nd day of January, 2010.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record