UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-60351-CIV-SEITZ/O'SULLIVAN

MANAGED CARE SOLUTIONS, INC.,

    Plaintiff,

v.

ESSENT HEALTHCARE, INC.,

    Defendant.
_____/

## DEFENDANT'S MOTION TO STRIKE "PLAINTIFF'S SUPPLEMENTAL DISCLOSURES" AND MEMORANDUM OF LAW IN SUPPORT

Defendant, Essent Healthcare, Inc. ("Essent"), respectfully moves the Court for an Order striking "Exhibit S" to Plaintiff Managed Care Solutions, Inc.'s ("MCS") Motion for Sanctions [DE #152-19], which is titled "Plaintiff's Supplemental Disclosures," pursuant to Federal Rule of Civil Procedure 26(a), 26(g) and applicable law, including *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

Essent's Motion is based on the following grounds:

- The "Supplemental Disclosure" is unsigned in violation of Rule 26(g) of the Federal Rules of Civil Procedure [s*ee* DE #152-19];

- The "Supplemental Disclosure" is untimely under the Federal Rules of Civil Procedure and the Court's Order, and was produced long after the close of discovery [*see* Fed. R. Civ. P. 26(a)(1)(A); Order on March 4, 2010 Discovery Conference, DE #110, ¶ 5];

- The "Supplemental Disclosure" contains improper evidence and testimony, presented without the benefit of an expert witness, and the time for expert disclosures under Rule 26(a)(2) of the Federal Rules of Civil Procedure has expired [*see* DE #152-19; Third Declaration of D. Michael Costello, DE #173-1], and

- The "Supplemental Disclosure" is unreliable and improper expert evidence and testimony under *Daubert* and the law in this Court [*see Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); Third Declaration of D. Michael Costello, DE #173-1].

MCS's "Supplemental Disclosure"[1] was first provided on June 10, 2010, buried as the nineteenth exhibit to MCS's Motion for Sanctions. MCS apparently submits this "Supplemental Disclosure" is a substitute for failing to produce any information whatsoever about its claim for lost-profits-damages in prior discovery or as required by Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure. As set forth in detail in Essent's Motion in Limine to Exclude Evidence of Lost Profits [DE #158, hereinafter "Essent's Motion in Limine"] this offering, well after the close of all fact and expert discovery, and after MCS was compelled to produce such information by March 9, 2010, is too little too late. Essent will be materially and unfairly prejudiced if MCS is permitted to use Exhibit S for any purpose in this litigation. It should be stricken as provided under Federal Rules of Civil Procedure and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

I.  **PLAINTIFF'S "SUPPLEMENTAL DISCLOSURE" IS UNSIGNED AND SHOULD BE STRICKEN.**

This "Supplemental Disclosure" was and remains unsigned, in violation of Rule 26(g) of the Federal Rules of Civil Procedure. Under the Federal Rules, Essent has "no duty to act on an unsigned disclosure . . . until it is signed, and the court must strike it unless a signature is promptly supplied after omission is called to the attorney's or party's attention." Fed. R. Civ. P. 26(g)(2). Counsel for Essent twice requested that a signed copy be provided in email correspondence on June 14, 2010 and June 16, 2010, and no such copy has been provided,

---

[1] This purported "Supplement" is a 15-page document with 56 pages of Exhibits purporting to be supplemental information about its damages, including several pages of documents created by MCS to quantify its alleged lost profits.

-2-

though a document with a newly-added Certificate of Service with a "typed" signature on the Certificate of Service was provided. [*See* Email from René Harrod to Robert Ingham, June 14, 2010; Email from René Harrod to Robert Ingham, June 16, 2010; and document with a "typed" signature on the Certificate of Service, filed herewith as Collective **Exhibit 1**.]  As such, the "Supplemental Disclosure" must be stricken.

## II. PLAINTIFF'S "SUPPLEMENTAL DISCLOSURE" IS UNTIMELY AND SHOULD BE STRICKEN.

The "Supplemental Disclosure" is woefully untimely and should be stricken pursuant to Federal Rules of Civil Procedure 37(b)(2) and 37(c).  In summary, MCS provided no information on its computation of damages in its Initial Disclosures, unilaterally "reserving the right" to do so later.  MCS stated that it was "seeking its lost profit from the Contract." [Pl.'s Rule 26(A)(1) Disclosures, p. 4; DE #159-1.]  MCS submitted Supplemental Initial Disclosures on September 29, 2009, stating in full:

> Furthermore, Plaintiff seeks damages resulting from Essent's failure to properly terminate the contract, including, but not limited to, expected loss [sic] profits and revenue for denial and underpayment accounts for the remainder of the initial 36 month term stipulated to in the parties' PSA.

[Pl.'s Supplement to Initial Disclosure, para. II; DE #159-3.]  No spreadsheet or additional documentation was attached and at no time did MCS provide a "computation of any category of damages claimed" nor did MCS make available "the documents or other evidentiary material … on which such computation is based" as MCS was required to do by Rule 26(a)(1)(A)(iii).  MCS first responded to Essent's written discovery on September 15, 2009, by providing three general categories of the damages it sought, but no calculation for claimed lost profits.  [See Responses to Def.'s First Set of Interrogatories, No. 5; DE #159-4.]  On September 29, 2009, MCS amended its written discovery responses by making the same summary statement quoted above

to describe its damages, while stating that it would produce all responsive documents. [*See id.*; Am. Response to Def.'s First Set of Interrogatories, No. 5; DE #159-5; and Am. Response to Defendant's First Request for Production, No. 5; DE #159-6.]

No documents were ever produced specifically designated as responsive to the request seeking damages information, and, indeed, no calculations were provided for its claim for lost profits. Essent moved to compel production of these documents, and after a March 4, 2010, discovery hearing, Plaintiff was ordered to produce all documents that relate to or substantiate MCS's claims for damages "on or before March 8, 2010." [Order on March 4, 2010 Discovery Conference, DE #110, ¶ 5.] MCS represented on February 16, 2010, and again on March 9, 2010, that its document production was complete, and never produced any additional documents until its "Supplemental Disclosure" on June 10, 2010. [*See* Exhibit 8 and 10 to Essent's Motion in Limine, DE #159-8 and DE #159-10.]

Essent did not just seek this damages information through written discovery. Essent first noticed the deposition of MCS's Rule 30(b)(6) representative designating "MCS's alleged damages, documentation supporting such damages, calculation of such damages, and any efforts MCS made to mitigate such damages" as areas of inquiry. [Def.'s Notice of Taking Dep. of Pl., Ex. A, para. 12; DE #159-9.] At the deposition, Kara Atchison, MCS's CEO and corporate representative, stated she did not bring any financial statements of MCS with her to the deposition; [Dep. of MCS, 7:8-23, DE #159-10] and she could not testify about the percentage of revenue that was received as profit to MCS. [*Id.* at 24:10-25.]

Next, Essent deposed Charlene Maxion, Managing Agent of MCS and its bookkeeper. Essent issued a detailed subpoena to Ms. Maxion to produce several categories of financial documents at the deposition. [Def.'s Subpoena to Take Dep. of Charlene Maxion., Sch. A; DE

#159-11.] Despite the Court's ruling denying MCS's motion for protective order and compelling MCS to produce Ms. Maxion and the subpoenaed documents [DE #114], no calculation of damages was produced at any time. Further, Ms. Maxion testified that all of the bank statements, monthly and annual financial records, and general ledger of MCS were in the possession of MCS [*id.* at 39:18—40:12] and at no time had Ms. Maxion created a lost profits analysis for this case. [*Id.* at 158:5-13.] Ms. Maxion also testified that she was instructed by MCS's litigation coordinator, Raphael Baruch,[2] ***not to comply*** with the document production requirements of the subpoena that was served on her. [*Id.* at 40:16-22]

Finally, on April 14, 2010, Kara Atchison testified in her individual capacity that she *did* perform a profit analysis on the MCS contract with Essent prior to it being entered into, but she does not have any documents regarding it and does not remember the projected profit [Atchison Dep. at 203:24-205:14, DE #159-13]; and she is preparing a profit analysis, presumably for trial, but she is "still working on it." [*Id.* at 203:16-18.] She estimated that the lost profits are "anywhere from" $10M and $30M. [*Id.* at 205:21-25.] Whether Exhibit S is the "profit analysis" on which Ms. Atchison was working on April 14, 2010 remains unknown since Essent has been deprived of any opportunity to depose any witness about Exhibit S.

Rule 37(c)(1) of the Federal Rules of Civil Procedure addresses the exclusion of evidence as a consequence of a party failing to comply with the initial disclosure requirements of Rule 26(a) and provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or 26(e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing or at a trial, unless the failure was substantially justified or is harmless." In addition,

---

[2]  Mr. Baruch is the husband of MCS's president, Kara Atchison, and manages all of MCS's litigation, including its discovery. He is also president of BCAC, a company that MCS claim to be an unrelated third-party.

Rule 37(b)(2) of the Federal Rules of Civil Procedure provides that "[i]f a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35 or 37(a), the court where the action is pending may issue further just orders. They may include the following: . . . (ii) prohibiting the disobedient party from . . . introducing designated matters in evidence."

In short, MCS has participated in extensive written and oral discovery, stating always that it had produced all documents and information related to its damages. After the close of all fact and expert discovery,[3] this purported "Supplemental Disclosure" was provided for the first time as an exhibit to a Motion for Sanctions against Essent. This document is not only untimely, but it is in clear violation of the Court's Order that all documents relating to damages be produced by March 8, 2010. [DE #110.] There is no justification for MCS's late production of the information and documents contained in its "Supplemental Disclosures." There is no reason that its "Supplemental Disclosures" could not have been provided in a proper and timely manner. The time for discovery has passed, and, indeed, Essent is afforded no vehicle to discover any information about this purported disclosure at this time. Essent's experts will be forced to speculate on the reasoning behind this document, if it is allowed to stand, and Essent will be materially and unfairly prejudiced if MCS is permitted to use its "Supplemental Disclosures" for any purpose in this litigation.

    **III.   THE "SUPPLEMENTAL DISCLOSURE" CONTAINS IMPROPER EXPERT EVIDENCE AND TESTIMONY, PRESENTED WITHOUT THE BENEFIT OF AN EXPERT WITNESS, AND SHOULD BE STRICKEN.**

The "Supplemental Disclosure" is essentially an expert report with no expert witness identified or provided, and it purports to calculate lost profits of MCS. Calculation of lost profits of a business requires a qualified expert to apply generally accepted methodologies to calculate a

---

[3] Fact discovery closed on April 1, 2010, and expert discovery closed on April 30, 2010.

relevant and reliable result. [Third Declaration of D. Michael Costello, DE #173-1, ¶ 4.] MCS was required to disclose its experts no later than March 12, 2010, and expert discovery was to be completed no later than April 30, 2010. [DE #105.] MCS identified four individuals as experts, but because MCS failed to comply with the disclosure requirements of Fed. R. Civ. P. 26(a)(2) and S.D. Fla. L.R. 16.1.K, the Court precluded testimony from the individuals and struck them as experts. [*See* Order, DE #138.] The expert disclosure deadline has long passed, and any expert proffered by MCS at this point would be untimely and in violation of the Court's order. [DE #105.] As such, no expert witnesses were deposed by Essent, and no expert will testify about this matter at trial. If Kara Atchison is the author of this document, she was not prepared to testify about it during her deposition and no testimony on that topic was able to be obtained from her. [*See* Atchison Dep. 203:16-18, DE #159-13.] MCS is attempting to provide expert testimony without an expert witness and without providing that witness for deposition by Essent. Therefore, the "Supplemental Disclosure" should be stricken.

### IV.   PLAINTIFF'S "SUPPLEMENTAL DISCLOSURE" IS UNRELIABLE AND IMPROPER UNDER *DAUBERT* AND SHOULD BE STRICKEN.

The "Supplemental Disclosure" is improper and unreliable expert evidence and testimony. Under Rule 104(a) of the Federal Rules of Evidence, the party seeking to introduce testimony has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592, n.10 (1993).[4] Federal Rules of Evidence 702 and 703 govern the admissibility of expert evidence. Rule 702 states in part that: "[i]f scientific, technical, or other specialized knowledge will assist

---

[4] The Order Setting Trial Date, Pretrial Deadlines and Referral to Magistrate dated July 16, 2009, provides that all *Daubert* motions must be filed by May 17, 2010. However, all of MCS's experts were excluded by Order on May 3, 2010, making *Daubert* motions unnecessary at that time. [*See* Order, DE #138.] MCS filed Exhibit S on June 10, 2010, making a *Daubert* motion relevant for the first time since the Court's Order of May 3, 2010.

the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

*Daubert*, which established the current standard for determining the admissibility of expert evidence, charges trial judges with the responsibility of acting as "gatekeepers" to exclude unreliable and irrelevant expert testimony. *Daubert*, 509 U.S. at 589. The United States Supreme Court subsequently clarified that this gatekeeper function extends beyond scientific testimony and applies to all expert testimony, including "testimony based on . . . 'technical' and 'other specialized knowledge.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

Where experts base their opinions on facts not in evidence, the facts must be reasonably relied upon by experts in the particular field. Fed. R. Evid. 703. Furthermore, an expert's testimony must also rest on a reliable foundation and must be relevant to the particular case. *Daubert*, 509 U.S. at 597. A district court's task in assessing evidence proffered under Rule 702 is to determine whether the evidence both rests on a reliable foundation and is relevant to the task at hand. *Toole v. Baxter Healthcare Corp.,* 235 F.3d 1307, 1312 (11th Cir. 2000) (citing *Daubert*, 509 U.S. at 597). The district court must consider whether the reasoning or methodology underlying the testimony is scientifically valid. *Id; see* Fed. R. Evid. 702 (Advisory Committee Notes) ("[A]ny step that renders the analysis unreliable . . . renders the expert's testimony inadmissible.").

Subjective or speculative expert testimony is not competent proof, is not reliable, and is not admissible. *See, e.g., Edwards v. Safety-Kleen Corp.,* 61 F. Supp. 2d 1354, 1359 (S.D. Fla. 1999) (excluding a treating physician testimony regarding the cause in fact because it was speculative). Expert testimony, to be admissible, must be pertinent to an issue in the case and

reflect sound scientific methodology. *Rider v. Sandoz Pharms. Corp.,* 295 F.3d 1194, 1202 (11th Cir. 2002).

MCS has not and cannot demonstrate by a preponderance of the evidence that its "Supplemental Disclosure" and any expert associated therewith are supported by a reliable methodology which incorporates trustworthy assumptions and facts. Essent's expert witness, D. Michael Costello, has reviewed and considered MCS's "Supplemental Disclosure" and determined it to be unreliable. [Third Declaration of D. Michael Costello, DE #173-1.] Significantly, he noted multiple flaws with the calculations provided in the document, including that the underlying data is unreliable. He noted that the "revenue figures obtained from the American Hospital Directory are not consistent with other data and information provided in Exhibit S" and the data regarding patient accounts assigned to MCS was "inconsistent with the terms of the contract between the parties and with the testimony of MCS's on-site representative, Robin Bowers, and is therefore not reliable." [*Id.* at ¶ 5 (a) and (e).]

Moreover, Mr. Costello noted that there are calculation errors and assumptions not explained in the document. [Third Declaration of D. Michael Costello, DE #173-1, ¶ 5(b) and (c).] Finally, the profit rate used by MCS in the document—the very rate at issue in its claim for lost profits—is not supported by MCS's own financial statements. [*Id.* at ¶ 5(d).]

In short, the Supplemental Disclosure is unreliable and improper under *Daubert* and the law in this Court. It is expert testimony presented without an expert witness associated with it. It should be excluded as improper expert testimony under *Daubert*.

## CONCLUSION

Essent's Motion to Strike Exhibit S to MCS's Motion for Sanctions, its "Supplemental Disclosures," should be granted because the so-called Supplemental Disclosures are unsigned,

-9-

untimely, contain improper expert evidence without an expert witness, and contain unreliable expert testimony under *Daubert*. Essent respectfully requests that its Motion be granted.

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1.A.3**

Essent counsel certify that reasonable efforts were made to confer with MCS regarding the relief sought in this Motion. Specifically, Essent counsel wrote to MCS counsel on June 22, 2010, stating the nature of this Motion and sought to confer with MCS. Counsel for MCS responded by letter dated June 29, 2010 stating its position regarding its "Supplemental Disclosures." The parties further discussed the relief sought in this motion during a conference call on June 30, 2010.

Dated: July 12, 2010.  Respectfully submitted,

By:   s/ Lea Carol Owen
Joseph A. Woodruff, Pro hac vice
Lea Carol Owen, Pro hac vice
WALLER LANSDEN
DORTCH & DAVIS LLP
511 Union Street, Suite 2700
Nashville, TN  37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
E-mail: Woody.Woodruff@wallerlaw.com
E-mail: Carol.Owen@wallerlaw.com

By:   s/ René D. Harrod
René D. Harrod, Florida Bar No. 627666
350 East Las Olas Blvd., Suite 1000
Fort Lauderdale, Florida 33301
Telephone: (954) 525-9900
Facsimile:  (954) 523-2872
E-mail: rharrod@bergersingerman.com

*Attorneys for Defendant Essent Healthcare, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:   s/René D. Harrod
       René D. Harrod, Fla. Bar 627666