UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-60351-CIV-SEITZ/O'SULLIVAN

MANAGED CARE SOLUTIONS, INC.,

       Plaintiff,

v.

ESSENT HEALTHCARE, INC.,

       Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court on the Plaintiff's Motion for Sanctions, Including the Entry of a Default Judgment and an Award of Attorney's Fees and Request for Hearing (DE# 152, 6/10/10). This matter was referred to the undersigned by the Honorable Patricia A. Seitz, United States District Court Judge for the Southern District of Florida, pursuant to 28 U.S.C. § 636(b).  Having reviewed the applicable filings and law, it is

ORDERED AND ADJUDGED that the Plaintiff's Motion for Sanctions, Including the Entry of a Default Judgment and an Award of Attorney's Fees and Request for Hearing (DE# 152, 6/10/10) is **DENIED** for the reasons stated herein.

## BACKGROUND

Managed Care Solutions, Inc. (hereinafter "MCS" or "plaintiff") is in the business of "collect[ing] amounts due and owing from patient accounts receivable when those accounts go unpaid in whole or in part due to third-party payors' denial or failure to pay, [such as] insurance companies, who refuse to reimburse part or all of an outstanding

bill." Amended Complaint (DE# 28 at ¶7, 7/29/10); Answer and Affirmative Defenses of

Defendant Essent Healthcare, Inc. (DE# 34 at ¶7, 8/17/09) (hereinafter "Answer")

(admitting ¶7 of the Amended Complaint). Essent Healthcare, Inc. (hereinafter "Essent"

or "defendant") "is engaged in the business of owning and managing hospitals." Answer

(DE# 34 at ¶5, 8/17/09). During the relevant time, the defendant "owned and operated

the following five hospitals: Merriack Valley Hospital (Haverhill, MA), Nashoba Valley

Medical Center (Ayer, MA), Paris Regional Medical Center (Paris, TX), Sharon Hospital

(Sharon, CT), and Southwest Regional Medical Center (Waynesburg, PA)." Id. at ¶ 5.

On February 20, 2006, the plaintiff and the defendant entered into a three-year

Professional Services Agreement (hereinafter "PSA").[1] Under the PSA, the plaintiff

agreed to provide certain services to the defendant including denial management

services.[2] See PSA (DE# 152-1 at ¶3.1.1, 6/10/10). The defendant agreed to, inter alia,

"transfer all accounts, regardless of services, with a balance greater than $100 that

have been denied by a Third Party Payor, within 72 hours of receipt of a qualified

'denial' on the claim." Id. at ¶6.1.1. The PSA further provided as follows:

**EXCLUSIVE RIGHTS OF MCS.** [The defendant]'s engagement of [the

---

[1] On or about June 14, 2006, the parties executed an addendum to the PSA. See Amended Complaint (DE# 28 at ¶ 10, 7/29/09); Answer (DE# 34 at ¶5, 8/17/09). The terms of the addendum are not relevant to the instant motion. Id.

[2] The term "denial management service" is a term of art in the healthcare industry. See Transcript March 4, 2010 Hearing (DE# 117 at 18, 4/8/10). When a healthcare provider submits a claim to a third party payer, such as an insurance company, the third party payer may pay the entire claim, pay part of the claim or deny the claim. Denial management services encompasses working with the third party payer to obtain payment of that claim after it has been denied. Id. It is unclear whether it also encompasses claims that have been partially denied. The parties dispute whether the plaintiff was contracted to service claims that were denied in part.

plaintiff] to provide the "Services" is exclusive. During the Term of this Agreement, [the plaintiff] shall have the sole and exclusive right to perform the Services on behalf of [the defendant]. Accordingly, [the defendant] shall not, directly or indirectly, employ or engage any other person or entity to provide the Services, whether as an employee, consultant, independent contractor or on any other basis, <u>with the exception of accounts that were assigned to other vendors prior to the effective date of this Agreement.</u>

Id. at ¶8 (emphasis in original). The PSA permitted either party to terminate the agreement. However, in the event that the defendant terminated the agreement during the initial three years, the defendant was required to pay the plaintiff "a lump sum payment of $50,000 and associated software license fee[s] paid by [the plaintiff] to a third party." Id. at ¶ 9.2.

"[O]n or about September 29, 2006, Steven Wylie, [ ] the Vice President of Financial Operations for Essent, provided MCS with written notice to terminate the PSA." Answer (DE# 34 at ¶13, 8/17/09); see also Affidavit Steven Wylie (DE# 152-7 at ¶ 28, 6/10/10). On May 18, 2007, the plaintiff sought to recover from the defendant software licensing fees totaling $125,000. Affidavit Steven Wylie (DE# 152-7 at ¶ 34, 6/10/10). On January 18, 2008, the plaintiff advised the defendant that it owed the plaintiff $135,312.50 for software licensing fees under the PSA. Id. at ¶ 44.[3] At some point, the plaintiff accused the defendant of breaching additional provisions of the PSA including the exclusivity provision. On February 11, 2009, counsel for the defendant sent correspondence to counsel for the plaintiff outlining issues that had been previously discussed by the parties including the defendant's alleged breach of the

---

[3] The plaintiff subsequently demanded additional amounts for the software licensing fees. See Affidavit Steven Wylie (DE# 152-7 at ¶¶ 52, 58, 6/10/10)

exclusivity provision. See Letter (DE# 181-1, 7/9/10). The parties were unable to resolve their disputes and litigation ensued.

On March 6, 2009, the plaintiff filed its Complaint seeking damages resulting from the defendant's alleged breach of the PSA. See Complaint (DE# 1, 3/6/09). The Complaint asserted claims for breach of contract (Count I), breach of implied covenant of good faith and fair dealing (Count II) and sought an accounting (Count III). Id. The plaintiff filed an Amended Complaint (DE# 28) on July 29, 2009 pursuant to the Court's Order requiring "an Amended Complaint with additional factual allegations in support of [the plaintiff's] request for common law accounting . . . ." See Order (DE# 23, 7/13/09).

On or about September 18, 2009, the plaintiff propounded its First Request for Production on the defendant seeking certain documents from the defendant including:

**Request No. 24:** Copies of any and all contract(s) and or addendum(s) between Essent and Preferred Medical Marketing Company also known as **PMMC** prior [sic] from January 1, 2005 through June 30, 2009.

\*      \*      \*

**Request No.25:** Copies of any and all documentation and communication whether in paper or electronic including emails between Essent and **PMMC** and/or their agent/broker/contact person and/or sales-representative from January 1, 2005 through June 30, 2009.

\*      \*      \*

**Request No. 26:** Copies of any and all contract(s) and or addendum(s) between Essent and National Healthcare Payer Network Company also known as **NHPN** prior [sic] from January 1, 2005 through June 30, 2009.

\*      \*      \*

**Request No. 27:** Copies of any and all documentation and communication whether in paper or electronic including emails between Essent and **NHPN** and/or their agent/broker/contact person and/or sales-representative from January 1, 2005 through June 30, 2009.

4

\*      \*      \*

**Request No. 30:** For all of Essent vendors working on collections and/or recovery of accounts receivable on January 1, 2005 through June 30, 2009:

      a)     Copies of all internal email communications between such vendors and Essent.

      b)     Copies of al internal email communications between Essent employees regarding such vendors.

See Defendant Essent Healthcare, Inc.'s Responses and Objections to Plaintiff's First Request for Production of Documents (DE# 152-3 at 14-17, 6/10/10) (emphasis added). The defendant served its responses and objections to the First Request for Production on October 21, 2009. Id.

On December 10, 2009, the undersigned held the first[4] of eight informal discovery conferences regarding various discovery disputes between the parties. Following the December 10, 2009 hearing, the undersigned issued an Order (DE# 48) requiring, inter alia, that the defendant produce documents responsive to the plaintiff's First Request for Production. See Order (DE# 48, 12/10/09). Specifically, the undersigned ordered that the defendant produce documents responsive to Requests for Production 24 and 25 (regarding PMMC) from February 20, 2006 through June 30, 2009. Id. With respect to Request for Production 26 (as to NHPN), the undersigned required the defendant to "provide the contract and any addendums that were in effect in May 2007." Id. The Order further required that the defendant produce documents

---

[4] The undersigned held a prior discovery hearing on September 22, 2009 regarding the plaintiff's responses to outstanding discovery. See Minute Entry (DE# 40, 9/22/10). The September 22, 2009 hearing is not pertinent to the instant motion.

responsive to Request for Production 27 (as to NHPN), "if the scope of services in the May 2007 contract . . . provides for the same scope of services as the contract at issue . . . ." Id. As to Request for Production 30 (unspecified vendors), the undersigned ordered the defendant to "provide the plaintiff with the names of other vendors working on collections or accounts receivable for the five (5) relevant hospitals during the dates of February 20, 2006, through June 30, 2009." Id.

On June 10, 2010, the plaintiff filed the instant motion alleging that the defendant spoliated documents that were the subject of various discovery orders including the December 10, 2009 Order (DE# 48), discussed supra. See Plaintiff's Motion for Sanctions, Including the Entry of a Default Judgment and an Award of Attorney's Fees and Request for Hearing (DE# 152, 6/10/10) (hereinafter "Motion for Sanctions"). The defendant filed its response on June 28, 2010. See Defendant's Response in Opposition to Plaintiff's Motion for Sanctions (DE# 171, 6/28/10) (hereinafter "Response").[5] The plaintiff filed a reply on July 8, 2010. See Plaintiff's Reply in Support of Motion for Sanctions (DE# 180, 7/8/10) (hereinafter "Reply"). On July 9, 2010, the plaintiff filed a Notice of Filing Exhibits in Support of Reply in Support of Plaintiff's Motion for Sanctions, Default and Attorney's Fees (DE# 181, 7/9/10). The matter is ripe

---

[5] The first page of the defendant's Response (DE# 171) contains only the caption or title of the document. As a result, the page numbers on the bottom of the defendant's response do not correspond with the page numbers automatically assigned by the Court's CM/ECF filing system. To avoid confusion, the Court will cite to the page numbers assigned by the CM/ECF system when citing to documents in this Order.

for consideration.[6]

## STANDARD OF REVIEW

The plaintiff seeks sanctions under Rule 37 of the Federal Rules of Civil

Procedure and the Court's inherent power for the spoliation of evidence by the

defendant. See Motion for Sanctions (DE# 152 at 1, 6/10/10). Spoliation has been

defined as the "intentional destruction of evidence or the significant and meaningful

alteration of a document or instrument." Southeastern Mechanical Services, Inc. v.

Brody, 657 F. Supp.2d 1293, 1299 (M.D. Fla. 2009) (citing Green Leaf Nursery v. E.I.

DuPont De Nemours & Co., 341 F.3d 1292, 1308 (11th Cir. 2005)). Spoliation also

_____

[6] On August 20, 2010, the plaintiff filed the declaration of Daniel Elliot in support
of the instant motion. See Plaintiff's Notice of Filing the Declaration of Daniel Elliot in
Support of Plaintiff's Motion for Spoliation, Plaintiff's Response in Opposition to
Summary Judgment, Plaintiff's Response in Opposition to Motion to Strike and
Plaintiff's Response in Opposition to Motion in Limine (DE# 209, 8/20/10). The
undersigned will not consider this untimely filed declaration. In Williams v. R.W.
Cannon, Inc., 657 F.Supp.2d 1302, 1320 (S.D. Fla. 2009), this Court granted the
plaintiff's motion to strike an untimely affidavit filed by the defendant in opposition to the
plaintiff's fees motion. This Court reasoned that because the affidavit was filed after the
plaintiff's reply brief, "[t]here [wa]s no opportunity for further briefing regarding the
motion to which this affidavit relate[d]; and, therefore, it would both be prejudicial to [the
p]laintiff and ill-serve the interests of judicial economy to permit additional briefing,
especially when [the d]efendants have failed to respond to the motion to strike [the
affidavit] and have failed to offer a rationale establishing good cause to justify their
untimeliness." Id. These same concerns are present here. Moreover, Mr. Elliot's
declaration violates the Local Rules. The Local Rules of this Court state that "[t]o the
extent a party wants the Court to consider affidavits, declarations, or other materials in
support of or in opposition to the motion, then: (A) the movant must serve with the
motion all such materials; and (B) the opposing party must serve with the opposing
memorandum all such materials in opposition to the motion.The movant may serve a
reply memorandum with affidavits, declarations, or other materials provided that all
such materials are strictly limited to rebuttal of matters raised in the opposing
memorandum." S.D. Fla. L.R. 7.1(c)((3). Because Mr. Elliot's declaration relates to
missing form 835s which were addressed in the motion for sanctions, the plaintiff
should have filed the declaration at the time it filed its motion for sanctions.
Notwithstanding Local Rule 7.1(c)((3), Mr. Elliot's declaration was filed 43 days after the
plaintiff's reply brief and will not be considered in this Order.

includes the intentional concealment of evidence. See Walter v. Carnival Corp., No. 09-20962-CIV, 2010 WL 2927962 at *2 (S.D. Fla. July 23, 2010) (citing St. Cyr v. Flying J Inc., No. 3:06-cv-13-33TEM, 2007 WL 1716365 at *3 (M.D. Fla. June 12, 2007)).

In a diversity action such as the instant case, federal law governs the imposition of spoliation sanctions. See Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005) ("conclud[ing] that federal law governs the imposition of sanctions for failure to preserve evidence in a diversity suit."). Although federal law governs, "the Court may look to state law for guidance to the extent that it is consistent with federal law." Wilson v. Wal-Mart Stores, Inc., No. 5:07-cv-394-Oc-10GRJ, 2008 WL 4642596, at * 2 (M.D. Fla. Oct. 17, 2008) (footnote omitted). Florida law on spoliation is consistent with federal law. See FTC v. Nationwide Connections, Inc., No. 06-80180-CIV, 2007 WL 4482607, at *1 (S.D. Fla. Dec. 19, 2007) (stating that "Florida based federal courts look to Florida law for guidance on when to impose sanctions for spoliation.").

The plaintiff, as the moving party, has the burden of proof. "[T]he party seeking [spoliation] sanctions must prove . . . first, that the missing evidence existed at one time; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the evidence was crucial to the movant being able to prove its prima facie case or defense." Walter, 2010 WL 2927962, at *2 (citing Floeter v. City of Orlando, 6:05-cv-400-Orl-22KRS, 2007 WL 486633, at *5 (M.D. Fla. Feb.9, 2007)). Even if all three elements are met, "[a] party's failure to preserve evidence rises to the level of sanctionable spoliation 'only where the absences of that evidence is predicated on bad faith," such as where a party purposely loses or destroys relevant evidence." Id. at *2 (citing Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997)).

8

If direct evidence of bad faith is unavailable, the moving party may establish bad faith through circumstantial evidence. Id.; see also Atlantic Sea Company, S.A. v. Anais Worldwide Shipping, Inc., No. 08-23079-CIV, 2010 WL 2346665, at *2 (S.D. Fla. June 9, 2010) (noting that where the movant "offer[s] no direct evidence of bad faith, . . . this Court must assess the circumstantial evidence of bad faith under the standard set forth in Calixto."). The following constitutes circumstantial evidence of bad faith:

> (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

Walter, 2010 WL 2927962, at *2 (citing Calixto v. Watson Bowman Acme Corp., No. 07-60077-CIV, 2009 WL 3823390, at *16 (S.D. Fla. Nov. 16, 2009)). The party seeking the sanctions must establish all four of these factors where there is no direct evidence of bad faith. Calixto, 2009 WL 3823390, at *16 (stating that "in this Circuit, bad faith may be found on circumstantial evidence where all of the [aforementioned] hallmarks are present").

Sanctions for spoliation of the evidence "are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." Flury, 427 F.3d at 944. Sanctions may include "(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator." Id. at 945. In the instant case, the plaintiff seeks the entry of a default judgment in favor of the plaintiff and against the defendant and attorney's fees and costs. See Motion for Sanctions (DE# 152 at 1, 20, 6/10/10). If the Court declines to

enter a default judgment against the defendant, the plaintiff requests an adverse jury instruction. Id. at 19. Specifically, the plaintiff asks that "the fact finder be instructed to draw an adverse inference directing that the destroyed evidence would have supported [the p]laintiff's claim that [the d]efendant materially breached the exclusivity provision of the parties['] PSA, among other provisions." Id.

## ANALYSIS

The plaintiff states that the instant "motion [wa]s necessitated by [the d]efendant's egregious and admitted destruction, omission and concealment of documentary records that would have been directly probative of [the p]laintiff's claims." Motion for Sanctions (DE# 152 at 1, 6/10/10). Specifically, the plaintiff complains of the following bad acts undertaken by the defendant:

> (1) [the defendant] deleted emails relative to [the plaintiff]'s claims in this case, (2) that [the defendant] failed to place a litigation "hold" on documents related to this case, until well after the case was filed in March 2009, (3) [the defendant] did not produce any documents that pre-dated December 2008, and (4) [the defendant] failed to produce other directly relevant, responsive evidence until after the close of fact discovery.

Id.[7]

As noted above, the plaintiff has the burden of proof in establishing that the defendant spoliated the evidence and that the plaintiff is entitled to sanctions. In order to establish that spoliation occurred in the instant case, the plaintiff must show: (1) that the missing evidence existed at one time; (2) that the alleged spoliator had a duty to preserve the evidence; and (3) that the evidence was crucial to the movant being able

---

[7] The plaintiff does not specifically identify what pre-December 2008 documents the defendant failed to disclose. To the extent that the plaintiff is referring to emails, those emails are addressed at length in this Order.

to prove its prima facie case or defense. <u>Walter</u>, 2010 WL 2927962, at *2 (citing <u>Floeter v. City of Orlando</u>, 6:05-cv-400-Orl-22KRS, 2007 WL 486633, at *5 (M.D. Fla. Feb.9, 2007)). The undersigned will address each prong in turn.

## A.    The Existence of the Evidence

There are several categories of documents specifically identified in the plaintiff's motion that the plaintiff maintains the defendant destroyed or concealed. These documents include the following: emails and email attachments, third party vendor contracts, checks, invoices, accounts payable vendor summary reports and form 835s.[8] The parties do not dispute the existence of these documents. <u>See</u> generally, Response (DE# 171, 6/28/10) (failing to address the existence of the allegedly spoliated evidence).

With respect to the accounts payable vendor summary reports (hereinafter "summary reports"), the undersigned finds that they cannot form the basis of a spoliation motion in the instant case. The defendant prepared the summary reports in response to Request for Production No. 21. <u>See</u> Response (DE# 171 at 7, 6/28/10). Additionally, the defendant made the checks and invoices contained in the summary reports available to the plaintiff for inspection. <u>Id.</u> at 7-8. Thus, the summary reports were never concealed or destroyed. Rather, the plaintiff claims that the summary reports were inaccurate and that the defendant used the inaccurate summary reports in order to conceal the true number of invoices and checks that the defendant paid to third party vendors. "[W]hile ordered to produce copies of checks and invoices issued to

---

[8] The term "835" refers to a form used in the healthcare industry. It contains patient information and is used to obtain payment for healthcare services.

[other] vendors/agencies, . . . [the defendant] instead, produced misleading AP vendor summary reports summarizing the checks and invoices made available to [the plaintiff] under the . . . Court orders and [the plaintiff's] production request." Motion for Sanctions (DE# 152 at 8, 6/10/10). Since the summary reports were prepared voluntarily by the defendant and the actual checks and invoices were made available to the plaintiff for inspection, the plaintiff cannot cite to the summary reports as a basis for spoliation sanctions.

The remaining specifically identified documents which the plaintiff claims were either destroyed or concealed by the defendant (emails, email attachments, third party vendor contacts and form 835s) are addressed below.

**B.     The Defendant's Duty to Preserve the Evidence**

A party has an obligation to retain relevant documents, including emails, where litigation is reasonably anticipated. See Southeastern Mechanical Services, Inc. v. Brody, No. 8:08-CV-1151-T-30EAJ, 2009 WL 2242395, at *2 (M.D. Fla. Jul. 24, 2009) (noting that "[o]nce a party files suit or reasonably anticipates doing so . . . it has an obligation to make a conscientious effort to preserve electronically stored information that would be relevant to the dispute."); Wilson v. Wal-Mart Stores, Inc., No. 5:07-cv-394-Oc-10GRJ, 2008 WL 4642596, at * 2 (M.D. Fla. Oct. 17, 2008) (footnote omitted) (stating that "the law imposes a duty upon litigants to keep documents that they know, or reasonably should know, are relevant to the matter."). Here, the defendant failed to place a litigation hold on documents until June 4, 2009. Response (DE# 171 at 10, 6/28/10).

The plaintiff argues that the defendant was under an obligation as early as

12

January 2008 to preserve emails, email attachments and other documents relevant to

the instant case because the defendant was on notice that the plaintiff would assert

claims regarding the defendant's multiple breaches of the PSA, including the exclusivity

provision. See Motion for Sanctions (DE# 152 at 7, 6/10/10) (stating that the

"[d]efendant was aware or should have been aware of the commencement of legal

action as early as January 2008 . . . ."). The defendant acknowledges that it "allowed

emails to be deleted in the ordinary course of business pursuant to its routine document

destruction policy." Response (DE# 171 at 15, 6/28/10).[9] The defendant further

acknowledges that "[s]ome of those emails may have related to third party vendors

employed by [the defendant] for various payment services." Id. However, the defendant

argues that it did not have notice that the plaintiff's claims encompassed anything other

than the software license fee. "The most that [the defendant] can 'reasonably' be

expected to have retained as of June 2009, and all that was required under the law, is

information related to the dispute about the software license fee." Id.[10]

　　Neither party has provided the Court with a copy of the defendant's document

---

[9] The defendant's document retention policy only affected emails.

The automatic e-mail deletion policy did not have any effect on hard copy
documents or documents maintained on [the defendant]'s network drives.
Therefore, contracts, electronic remittance files (also known as "835"),
and many other documents were produced for the entire 40-month period
of February 20, 2006 through June 30, 2009.

Response (DE# 171 at 10-11, 6/28/10).

[10] The defendant further states that it had no reason to implement a litigation
hold at that time because the documentation regarding the software licensing fees
would have been in the exclusive possession of the plaintiff. See Response (DE# 171
at 14-15, 6/28/10).

13

retention policy.[11] Nonetheless, the defendant does provide a brief description of its document retention policy in its response. See Response (DE# 171 at 9-10, 6/28/10). According to the defendant, "emails that are deleted by a user are permanently and automatically deleted from the system thirty days later. Additionally, all electronic mailbox items are automatically deleted thirteen months after receipt." Id. at 9 (emphasis and citation to the record omitted). Thus, as a result of the defendant's document retention policy, emails and attachments that were 13 or more months old were automatically deleted prior to the issuance of the June 4, 2009 litigation hold. The defendant's document retention policy only applies to emails and does not affect other documents. See Response (DE# 171 at 10-11, 6/28/10) (stating that "[t]he automatic e-mail deletion policy did not have any effect on hard copy documents or documents maintained on [the defendant's] network drives.").

The plaintiff takes issue with the reasonableness of the defendant's document retention policy. It argues that "there is no reasonable business routine demanding that data be destroyed after [13 months], especially in light of developments in the

_____

[11] The parties have filed numerous exhibits in conjunction with the instant Motion for Sanctions (DE# 152, 6/10/10) and the Defendant's Motion for Summary Judgment (DE# 142, 5/17/10). It is possible that the defendant's document retention policy is somewhere on the docket but its whereabouts have not been specifically identified by either party. The defendant states in its response that the document retention policy was attached as Exhibit 107 to Mr. Wylie's deposition and identifies Mr. Wylie's deposition transcript by docket entry number. See Response (DE# 171 at 9, 6/28/10). Unfortunately, the deposition transcript filed with the Court does not include any exhibits to the deposition. See Deposition of Steven Wylie (DE# 153-1, 6/10/10). Thus, the undersigned must rely on the defendant's description of its document retention policy which the plaintiff does not materially dispute. See Motion for Sanctions (DE# 152 at 13-14, 6/10/10) (footnote omitted) (stating that "the [d]efendant allowed (and continues to allow) the data to be purged from the system after thirty days (if the user deleted the email) or automatically would be deleted once it was thirteen (13) months old.").

technology field (including the ability to inexpensively maintain documents at an off-site server); and industry standards state the exact contrary." Motion for Sanctions (DE# 152 at 14, 6/10/10). The plaintiff's position is at odds with the case law in this Circuit. See Wilson v. Wal-Mart Stores, Inc., No. 5:07-cv-394-Oc-10GRJ, 2008 WL 4642596, at * 2 (M.D. Fla. Oct. 17, 2008) (footnote omitted) (citing Matya v. Dexter Corp., No. 97-cv-763C, 2006 WL 931870, at *11 (W.D. N.Y. Apr. 11, 2006) (stating that "[a] party is not guilty of spoliation when it destroys documents as part of its regular business practices and is unaware of their potential relevance to litigation."); Floeter v. City of Orlando, No. 6:05-CV-400-Orl-22KRS, 2007 WL 486633, at * 7 (M.D. Fla. Feb. 9, 2007) (denying the plaintiff's request for spoliation sanctions against the defendant city where "[t]he evidence established that the overwriting of server backup tapes was done as part of a long-standing [c]ity practice."). Thus, the undersigned will not fault the defendant for having a document retention policy.

The plaintiff maintains that the "[d]efendant was aware or should have been aware of the commencement of legal action as early as January 2008, when [the plaintiff]. . . sent . . . an email [to the defendant] demanding payment for unpaid invoices and expressing its intent to file suit in the alternative. . . ." Motion for Sanctions (DE# 152 at 7, 6/10/10). The January 18, 2008 email requested payment for the software licensing fees. The email advised the defendant that the plaintiff would "proceed with all necessary legal actions enforceable under Florida Law," if the parties were unable to resolve their dispute. Email (DE# 152-11 at 2, 6/10/10). However, the email did not advise the defendant that the plaintiff considered the defendant in breach of any other provision of the PSA, including the exclusivity provision. Thus, the defendant could not

15

have reasonably anticipated on January 18, 2008 that the exclusivity provision would be an issue in future litigation and, as such, did not have an obligation to place a litigation hold with respect to third party vendors at that time. See Southeastern Mechanical Services, Inc. v. Brody, No. 8:08-CV-1151-T-30EAJ, 2009 WL 2242395, at *3 (M.D. Fla. July 24, 2009) (noting that a party has a "duty to preserve relevant information from the time that th[e] litigation became[s] reasonably anticipated.").

The undersigned does find that the defendant had a duty to preserve documents as early as February 11, 2009. The record is clear that as of February 11, 2009, the defendant was aware of the plaintiff's claim that the defendant had breached the exclusivity provision. See Reply (DE# 180 at 9, 7/8/10). On that date, counsel for the defendant sent counsel for the plaintiff a letter outlining the defendant's position with respect to some of the provisions of the PSA which the plaintiff claimed had been breached. See Letter (DE# 181-1, 7/9/10). The letter indicates that the parties had previously discussed these issues and that the defendant was "merely reiterat[ing] several key points." Id. at 1. Among the key points "reiterated" by the defendant was the PSA's exclusivity provision: "with regard to the 'exclusivity provision' at section 8, contrary to [the plaintiff]'s assertions, [the defendant] has never assigned 'denied claims' to any other party other than [the plaintiff]; thus, there is no credible possibility that [the plaintiff] will prove breach of this provision." Id.[12] Thus, by the time the

---

[12] The undersigned does not condone the defendant arguing that "all correspondence until the actual lawsuit referred to and 'specifically addressed' only the software license fee dispute,' Response (DE# 171 at 15, 6/28/10), when the defendant's own counsel prepared a letter dated February 11, 2009 clearly showing that the parties had previously discussed other alleged breaches including the breach of the exclusivity provision. See Letter (DE# 181-1, 7/9/10).

February 11, 2009 letter was written, the defendant was reasonably on notice that its compliance with the exclusivity provision of the PSA would likely be an issue in any impending litigation. Yet, the defendant did not place a litigation hold on documents until June 4, 2009,[13] almost four months after the defendant wrote the February 11, 2009 letter discussing the exclusivity provision.

## C.   The Importance of the Evidence to the Plaintiff's Case

The law in this Circuit requires that the movant show that the spoliated evidence was crucial to its claim or defense. Walter, 2010 WL 2927962, at *2 (citation omitted) (requiring movant to show "that the evidence was crucial to the movant being able to prove its prima facie case or defense."). It is not enough that the spoliated evidence would have been relevant to a claim or defense. See Floeter v. City of Orlando, No. 6:05-CV-400-Orl-22KRS, 2007 WL 486633, at *6 (M.D. Fla. Feb. 9, 2007) (finding that although relevant, spoliated evidence was not crucial). Here, the plaintiff generally states that the spoliated "evidence is . . . crucial as it goes towards the proof of the material breaches of the PSA as well as to the calculation of [the p]laintiff's damages and . . . it sheds light on the volume of accounts that were sent to other collection agencies in violation of the underlying exclusivity [provision]. . . ." Motion for Sanctions (DE# 152 at 14-15, 6/10/10) (footnotes omitted).

The undersigned finds that the allegedly spoliated evidence is not crucial to the plaintiff's claims because the plaintiff would still be able to prove its case through additional already obtained evidence. The plaintiff acknowledges that deposition testimony and documents received from third parties show that the defendant breached

---

[13] See Response (DE# 171 at 10, 6/28/10).

the exclusivity provision of the PSA.[14] See e.g., Motion (DE# 152 at 5, 6/10/10) (stating

that "during [the defendant]'s corporate deposition, other designated 30(b)(6)

representatives acknowledged the similarities of services provided by most of the

eleven (11) disclosed vendors, . . . with those services [the defendant] contracted [the

plaintiff] to perform, thus admitting that the other contracts, in large part, encompassed

third party payor related collection work, and not self-pay or other marketing services,

[the defendant] has so purported."); Reply (DE# 180 at 3, 7/8/10) (stating that Mr. Miller

testified that the defendant employs an in house billing department in clear breach of

the exclusivity provision). Thus, additional evidence showing that the defendant

engaged third party vendors to provide the same services as the plaintiff would be

cumulative in establishing the plaintiff's claim that the defendant breached the PSA.

See Floeter v. City of Orlando, No. 6:05-CV-400-Orl-22KRS, 2007 WL 486633, at *6

(M.D. Fla. Feb. 9, 2007) (stating that "because evidence supporting [the plaintiff's]

testimony about the type and number of sexually explicit e-mails exists, the additional e-

mails that might have been found on the Original Computer would have been

cumulative and are not crucial to the presentation of [the plaintiff]'s case."); Wilson v.

Wal-Mart Stores, Inc., No. 5:07-cv-394-Oc-10GRJ, 2008 WL 4642596, at * 3 (M.D. Fla.

Oct. 17, 2008) (finding that the missing evidence was "not critical to [the p]laintiff's

ability to prove her case because there is other evidence potentially available to [the

p]laintiff to prove her claim.") . Here, the allegedly destroyed/concealed evidence

establishing a breach would be cumulative at best and would not be crucial to the

---

[14] The undersigned takes no position as to whether the defendant beached the PSA.

18

plaintiff's claims.

Additionally, the plaintiff cannot show that the allegedly destroyed/concealed evidence is crucial to establishing its damages claim. There is no indication that any additional checks, invoices or form 835s exist that cannot be obtained from third parties.[15] The undersigned has allowed the plaintiff to subpoena third party vendors after the close of discovery and to take the depositions of the individuals who executed the third party vendor contracts. See Transcript April 29, 2010 Hearing (DE# 139 at 31-32, 5/11/10); Transcript May 12, 2010 Hearing (DE# 150 at 36-37, 7/23/10); Transcript July 13, 2010 Hearing (DE# 193 at 38-43, 7/23/10). Additionally, the undersigned has allowed the plaintiff to search the defendant's servers to determine whether any additional form 835s have not been provided. See Transcript July 13, 2010 Hearing (DE# 193 at 19-21, 7/23/10).

D.     **Bad Faith**

In order to obtain spoliation sanctions against the defendant, the plaintiff must show, through direct or circumstantial evidence, that the defendant acted in bad faith. The plaintiff argues that "a finding of bad faith only impacts the severity of the sanctions (e.g. whether a dismissal or default judgment should be entered) and not whether a sanction should be issued." Motion for Sanctions (DE# 152 at 17, 6/10/10) (relying inter alia on Flury, 427 F.3d 939 (11th Cir. 2005)). The undersigned disagrees with the plaintiff's position based on the aforementioned Eleventh Circuit cases requiring a showing of bad faith before imposing spoliation sanctions. See, e.g., Bashir v. Amtrak,

---

[15] The declaration of Mr. Elliot is untimely and will not be considered by the undersigned.

119 F.3d 929, 931 (11th Cir. 1997) ("[i]n this [C]ircuit, an adverse inference is drawn

from a party's failure to preserve evidence only when the absence of that evidence is

predicated on bad faith.") (citation omitted).[16]

---

[16] Nonetheless, this Court has noted that "at least one [district c]ourt in this Circuit has interpreted the Eleventh Circuit's decision in Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005), as relegating the bad faith inquiry as one of a handful of factors to consider . . . ." Preferred Care Partners Holding Corp., No. 08-20424-CIV, 2009 WL 982460, at * 4 (S.D. Fla. Apr. 9, 2009) (citing Brown v. Chertoff, 563 F.Supp.2d 1372, 1381 (S.D. Ga. 2008)). In Brown, the district court stated that "since Flury, bad faith is only one factor to consider." 563 F.Supp.2d at 1381. Flury was a panel decision and as such did not overrule the prior panel decision in Bashir, 119 F.3d at 931, requiring a showing of bad faith. See United States v. Steele, 147 F.3d 1316, 1318 (11th Cir. 1998) (stating that "[t]he law of this [C]ircuit is emphatic that only the Supreme Court or this court sitting en banc can judicially overrule a prior panel decision."). Even if this Court were to relegate bad faith to one of several factors, the plaintiff is not entitled to the relief sought. In Flury, the Eleventh Circuit stated that:

> In determining whether dismissal is warranted, the court must consider: (1) whether the defendant was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the plaintiff acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded.

Id. at 945. With respect to the fourth factor, whether the [party] acted in good or bad faith, the Eleventh Circuit stated that "[t]he court should weigh the degree of the spoliator's culpability against the prejudice to the opposing party." Id. at 946 (citing Bridgestone/Firestone North American Tire, LLC v. Campbell, 574 S.E.2d 923, 927 (Ga. Ct. App. 2003)).

The undersigned finds that even weighing the defendant's culpability against the prejudice to the plaintiff, the plaintiff would still not be entitled to spoliation sanctions. The plaintiff has shown that the defendant was negligent in failing to issue a litigation hold prior to February 2009. The defendant was further negligent in failing to timely discover additional third party vendor contracts and form 835s which were later disclosed to the plaintiff. Nonetheless, the prejudice to the plaintiff is minimal at best. As noted above, the plaintiff can establish its case through other existing evidence and the additional third party vendor contracts and form 835s were ultimately produced. The undersigned allowed the plaintiff to reopen and take new depositions when the additional vendor contracts were disclosed by the defendant. See Transcript April 29, 2010 Hearing (DE# 139 at 31-32, 5/11/10); Transcript May 12, 2010 Hearing (DE# 150 at 36-37, 7/23/10). The undersigned also allowed the plaintiff to subpoena third party

### 1.      Direct Evidence of Bad Faith

The plaintiff has failed to show any direct evidence of bad faith by the defendant. The plaintiff states that "[t]he defendant's actions in proffering perjurious testimony, concealing documents and destroying documents and/or information can only be seen as bad faith. . . ." Motion for Sanctions (DE# 152 at 17, 6/10/10). At the outset, the plaintiff has not established that the defendant committed perjury. At most, the plaintiff has shown that the parties disagree on the interpretation of certain terms contained in the PSA. The undersigned does not find any evidence that the defendant concealed documents. The plaintiff has shown that the defendant was negligent in failing to timely uncover the additional third party vendor contracts and form 835s. However, these documents were ultimately produced, and the prejudice to the plaintiff for its late production has been minimized. <u>See</u> <u>supra</u>. Lastly, the only documents the plaintiff has shown were destroyed by the defendant were emails and email attachments that were in existence prior to the issuance of the June 4, 2009 litigation hold. The undersigned has already determined that the defendant was negligent in failing to issue the litigation hold four months earlier, in February 2009. Negligence however, is not tantamount to bad faith. <u>See</u> <u>Walter v. Carnival Corp.</u>, No. 09-20962-CIV, 2010 WL 2927962 at *2 (S.D. Fla. July 23, 2010) (citation and internal quotation marks omitted) (stating that

---

vendors after the close of discovery. <u>See</u> Transcript July 13, 2010 Hearing (DE# 193 at 38-43, 7/23/10). As to the form 835s, the undersigned sanctioned the defendant $6,000 for the late discovery of additional form 835s and allowed the plaintiff to employ a computer expert to inspect the defendant's servers for any additional form 835s. <u>See</u> Transcript July 13, 2010 Hearing (DE# 193 at 19-21, 7/23/10). In the instant case, the defendant did not act in bad faith but was merely negligent in failing to timely place the litigation hold and discover the additional third party vendor contracts and form 835s. Additionally, any prejudice to the plaintiff has been minimized. As such, spoliation sanctions are not warranted.

"[m]ere negligence in losing or destroying records is not enough for an adverse inference, as it does not sustain an inference of consciousness of a weak case."); Floeter v. City of Orlando, No. 6:05-CV-400-Orl-22KRS, 2007 WL 486633, at *7 (M.D. Fla. Feb. 9, 2007) (stating that "in this [C]ircuit the negligent destruction of evidence is insufficient to support an adverse inference instruction.").

In Walter v. Carnival Corp., 2010 WL 2927962 at *3, this Court found no evidence of bad faith where the defendant had lost the chair that injured the plaintiff. In that case, the plaintiff "ha[d] failed to present direct or circumstantial evidence demonstrating [the defendant]'s bad faith in losing the chair, or evidence showing that [the defendant] engaged in an intentional affirmative act causing the chair to be lost." Id. at 3. Similarly here, there is no evidence that the defendant purposefully failed to place a litigation hold on February 11, 2009 in order to ensure that relevant emails and email attachments would be destroyed or that the defendant purposefully failed to locate the additional third party vendor contracts and form 835s.

The plaintiff argues that bad faith must be presumed in the instant case. "[The d]efendant breached . . . federal [Health Insurance Portability and Accountability Act (hereinafter "HIPAA")] regulations, which create a presumption that the evidence was unfavorable to [the defendant]." Motion for Sanctions (DE# 152 at 16, 6/10/10). As noted above, the only documents that the plaintiff has been able to show have been lost by the defendant are emails and email attachments.[17] The plaintiff does not cite to any case law supporting its argument that the defendant's document retention policy

---

[17] The remaining documents that are the subject of the instant motion for spoliation sanctions (the additional vendor contracts and form 835s) were not lost by the defendant, they were untimely produced.

22

which only applied to emails and email attachments violated HIPAA. See Response (DE# 171 at 10-11, 6/28/10) (stating that "[t]he automatic e-mail deletion policy did not have any effect on hard copy documents or documents maintained on [the defendant's] network drives.").

Even if the defendant's automatic deletion of emails pursuant to its document retention policy violated HIPAA, the only applicable presumption would be that the information contained in the emails was adverse to the defendant with respect to HIPAA. In Latimore v. Citibank Federal Savings Bank, 151 F.3d 712 (7th Cir. 1998), the circuit court stated that "[t]he violation of a record retention regulation creates a presumption that the missing record contained evidence adverse to the violator." Id. at 716 (citing Hicks v. Gates Rubber Co., 833 F.2d 1406, 1418-19 (10th Cir. 1987)). In that case, the plaintiff brought a racial discrimination claim against the defendant bank and two employees. Id. at 713. The defendant bank was required to maintain notes and a report about an appraisal pursuant to a record keeping regulation. The bank lost the notes in violation of the regulation. Id. at 716. Nonetheless, the court declined to impose an adverse inference against the bank because the disappearance of the "notes was inadvertent, and an inadvertent failure to comply with the regulation is not a violation of it." Id. The plaintiff also cites to Favors v. Fisher, 13 F.3d 1235, 1239 (8th Cir. 1994) and Hicks v. Gates Rubber Company, 833 F. 2d 1406, 1418-19 (10th Cir. 1987). While both those cases state that because the defendant violated a record keeping regulation, the plaintiff was "entitled to the benefit of a presumption that the destroyed documents would have bolstered her case," in both those cases the record keeping regulation that was violated was directly related to the plaintiff's claims. See Favors, 13 F.3d at 1239

23

(the plaintiff asserted a claim for race discrimination against her employer and the employer violated a regulation that required it to maintain employment records); Hicks, 833 F.2d at 1419 (plaintiff asserted claims for sexual and racial harassment against her former employer and the regulation violated by the employer required that personnel and employment records be kept by the employer). Here, the plaintiff has not, and cannot, assert claims for HIPAA violations. Thus even if the defendant's document retention policy violated HIPAA, it makes little sense to apply a presumption that the deleted emails and email attachments would have been favorable to the plaintiff's breach of contract claims. Whether the defendant violated HIPAA is immaterial to the plaintiff's breach of contract claims, thus, the plaintiff is not entitled to an adverse presumption that the deleted emails would have been favorable to its case.

### 2.    Circumstantial Evidence of Bad Faith

Where direct evidence of bad faith is unavailable, bad faith may be established through circumstantial evidence if the following criteria are met: (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator. Calixto v. Watson Bowman Acme Corp., No. 07-60077-CIV, 2009 WL 3823390, at *16 (S.D. Fla. Nov.16, 2009).

The plaintiff argues that all four factors in Calixto are present in the instant case. It states that:

> 1) the materiality of the evidence is obvious in light of the fact that it goes to the crux of the complaint (the breach of the exclusivity provision) and proof that it once existed has been demonstrated since other collection agencies have provided some documents that should have been provided by [the defendant] (but have not been provided since the documents have been destroyed, concealed or omitted) and from [the d]efendant's own admissions, that it destroyed evidence; 2) the [d]efendant undoubtedly engaged in an affirmative act causing the evidence to be lost when its own 30(b)(6) representative admitted destroying evidence (See Exhibit "H", Deposition Tr. of WYLIE at 199-202; see also Exhibit "J", Deposition Tr. Of Larry Reaves, March 26, 2010);[18] 3) the [d]efendant here in fact knowingly admitted to its own duty to preserve the evidence pursuant to its corporate Records Retention Policy but failed to do so; and 4) [the d]efendant's affirmative act in destroying the documents cannot be credibly explained by any reason whatsoever, but for the bad faith of the [d]efendant in destroying relevant documents in an effort to conceal its own clear violations of the underlying PSA. . . .

Motion for Sanctions (DE# 152 at 16, 6/10/10).

The undersigned finds that there is no circumstantial evidence of bad faith in the instant case. With respect to the first factor, it cannot "fairly be supposed" that emails existed that were "material to the proof or defense of a claim at issue in the case." There is no indication that emails between January 2008 and May 2008[19] were material to the plaintiff's claims. Additionally, the plaintiff acknowledges that it has obtained other evidence that shows that the defendant violated the PSA. As to the other documents which the plaintiff claims the defendant spoliated, the third party vendor contracts and the form 835s, these documents clearly exist and were ultimately provided to the

---

[18] The exhibits referenced by the plaintiff merely show that the defendant had a document retention policy and that pursuant to the document retention policy some emails and email attachments were deleted.

[19] The undersigned has found that the defendant should have placed a litigation hold in February 2009. Pursuant to the defendant's document retention system, undeleted emails dated January 2008 and later would have still been in the system. The litigation hold was placed on June 4, 2009, thus relevant emails dated May 4, 2008 and later were preserved.

plaintiff or obtained from third parties.

The next factor is whether the defendant "engaged in an affirmative act causing the evidence to be lost." The undersigned finds that this factor has not been met. In Atlantic Sea Company, S.A. v. Anais Worldwide Shipping, Inc., No. 08-23079-CIV, 2010 WL 2346665, at *2 (S.D. Fla. June 9, 2010), this Court found that the movant had failed to show that the plaintiff engaged in an affirmative act when it failed to preserve a spotlight. That case involved claims arising from a fire onboard a vessel. The claimant's expert opined that the fire was caused by a spotlight. Id. "[T]he [c]laimants allege[d] that the [p]laintiff spoliated the evidence by failing to preserve the spotlight and its electrical wiring," thereby prohibiting the claimants from establishing the cause of the fire. Id. This Court found that the movant had failed to assert an affirmative act when the plaintiff failed to preserve the spotlight: "[t]he [c]laimants have not properly alleged an 'affirmative act' by the [p]laintiff leading to the destruction of the evidence, but rather state that the [p]laintiff 'failed to preserve the light fixture.'" Id. at 2. The Court concluded that "[g]iven the [c]laimants' failure to allege an affirmative act by the [p]laintiff leading to the spoliation of the evidence, the [c]ourt need not reach the issue of whether the [p]laintiff knew or should have known of its duty to preserve the evidence." Id. Here, the plaintiff cannot show that the emails and email attachments were deleted pursuant to an affirmative act by the defendant. In Calixto, 2009 WL 3823390, at *16 (S.D. Fla. Nov.16, 2009), this Court found that the movant had shown an affirmative act where the spoliator intentionally deleted an email inbox. Here, the emails and email attachments were deleted pursuant to the defendant's automatic email retention policy. There is no evidence that the defendant intentionally deleted the emails and email attachments or

26

intentionally failed to place the litigation hold until June 2009 to ensure that relevant emails and attachments would be deleted. With respect to the remaining evidence, the plaintiff cannot point to any affirmative acts by the defendant in failing to timely discover the additional third party vendor contracts and form 835s that were later turned over to the plaintiff. Thus, the plaintiff cannot meet this factor.

The third factor is whether "the spoliating party [engaged in an affirmative act] while it knew or should have known of its duty to preserve the evidence." The Court does not need to reach this factor where there is no affirmative act by the spoliator. See Atlantic Sea Company, 2010 WL 2346665, at *2. The undersigned has already determined that the defendant's failure to issue the litigation hold in February 2009 instead of June 2009 and its failure to discover the additional third party vendor contracts and the form 835s were not affirmative acts. Thus, the third factor has not been met.

The fourth factor is whether "the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator." Although the undersigned has already determined that the defendant did not engage in any affirmative act with respect to the emails, email attachments, additional third party vendor contracts and form 835s, the Court will look to the reasons for the loss. See Atlantic Sea Company, 2010 WL 2346665, at *2. Here, the additional third party vendor contracts and form 835s were not lost, they were untimely discovered and were subsequently provided to the plaintiff. The only evidence that the plaintiff can show was lost were emails and email attachments dated January through May 2008. The reason these emails and attachments were not preserved is because the defendant failed to

27

issue a timely litigation hold. The undersigned had already determined that the defendant was negligent in failing to issue the litigation hold.

In sum, because the plaintiff has failed to satisfy all four factors, the undersigned finds that there is no circumstantial evidence of bad faith in the instant case.

**E.    Sanctions Sought By the Plaintiff**

**1.    Default Judgment**

The plaintiff seeks the imposition of the "ultimate sanction" "including the striking of [the d]efendant's pleadings and the entry of a default judgment in [the p]laintiff's favor due to the [d]efendant's conduct in this case." Motion for Sanctions (DE# 152 at 2, 6/10/10). The facts of this case do not merit the imposition of the "ultimate sanction" against the defendant. "Dismissal represents the most severe sanction available to a federal court, and therefore should only be exercised where there is a showing of bad faith and where lesser sanctions will not suffice." Flury, 427 F.3d at 944. Because the plaintiff has failed to show, through direct or circumstantial evidence, that the defendant exhibited bad faith, the plaintiff's request for the entry of a default judgment against the defendant is denied.

**2.    Attorney's Fees and Costs**

The plaintiff also seeks attorney's fees and costs. Pursuant to Fed. R. Civ. P. 37, the undersigned has already awarded monetary sanctions to the plaintiff and permitted targeted discovery when necessary to address the defendant's discovery shortcomings. See Preferred Care Partners Holding Corp., No. 08-20424-CIV, 2009 WL 982460, at * 17 (S.D. Fla. Apr. 9, 2009) (granting in part a motion for sanctions based on the defendant's discovery violations including the destruction of numerous emails and

28

finding that "the most appropriate sanction at th[at] point [w]as to permit targeted discovery, and monetary sanctions."). Here, the undersigned allowed the plaintiff to depose the signatories of certain third party vendor contracts at the defendant's expense. See Transcript April 29, 2010 Hearing (DE# 139 at 31-32, 5/11/10). The undersigned later allowed the plaintiff to reopen the depositions of Messrs. Wiley, Miller and Reeves and a 30(b)(6) corporate representative regarding a newly disclosed vendor contract and new information at the defendant's expense. See Transcript May 12, 2010 Hearing (DE# 150 at 37, 6/4/10). Most recently, the undersigned has awarded $6,000 in Rule 37 sanctions against the defendant for failing to previously disclose additional form 835s. See Transcript July 13, 2010 Hearing (DE# 193 at 19, 7/23/10). Accordingly, the defendant's discovery failures have been addressed by this Court and the undersigned finds no reason to impose additional monetary sanctions on the defendant.

### 3. Adverse Jury Instruction

The plaintiff's request for an adverse jury instruction is also denied. For the reasons stated above, the Court finds no direct or circumstantial evidence of bad faith. As such, the plaintiff's request for an adverse jury instruction is denied. See Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997) (per curiam) (citing Vick v. Texas Employment Comm'n, 514 F.2d 734, 737 (5th Cir. 1975)); see also Wilson v. Wal-Mart Stores, Inc., No. 5:07-cv-394-Oc-10GRJ, 2008 WL 4642596, at * 2 (M.D. Fla. Oct. 17, 2008) (footnote omitted) (stating that "an adverse inference or presumption instruction is available as a sanction for spoliation of evidence only where the Court finds that the spoliator acted in bad faith.").

Although the undersigned finds that the plaintiff's motion for sanctions should be

denied in its entirety, this ruling does not foreclose the possibility that the plaintiff will be able to introduce evidence of the defendant's failure to retain relevant documents at trial. In Floeter v. City of Orlando, 6:05-cv-400-Orl-22KRS, 2007 WL 486633, at *7 (M.D. Fla. Feb.9, 2007), the magistrate judge denied the plaintiff's motion for spoliation sanctions. Nonetheless, it stated that its ruling did not foreclose the possibility that the trier of fact would hear evidence of the defendant's failure to preserve evidence:

> This order should not be read to mean that the circumstances surrounding the replacement and reimaging of [the plaintiff's supervisor's] Original Computer would necessarily be inadmissible at trial. Courts have found that loss of evidence may be relevant and admissible for the jury's consideration, and that adverse inferences arising from such destruction can be argued by counsel in closing. . . . Whether such evidence and argument will be permitted in this case is a decision to be made by the presiding district judge.

Id. (citations omitted). Similarly here, although the plaintiff is not entitled to an adverse jury instruction, see Bashir, 119 F.3d at 931 (requiring a showing of bad faith for the imposition of an adverse inference), the district court may determine that the circumstances surrounding the defendant's failure to retain relevant documents after February 2009 are admissible at trial.

## CONCLUSION

In accordance with the foregoing, the Plaintiff's Motion for Sanctions, Including the Entry of a Default Judgment and an Award of Attorney's Fees and Request for Hearing (DE# 152, 6/10/10) is **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida this **23rd** day of August, 2010.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Seitz
All Counsel of Record