UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60351-CIV-SEITZ/O'SULLIVAN

MANAGED CARE SOLUTIONS, INC.,

      Plaintiff,

vs.

ESSENT HEALTHCARE, INC.,

      Defendant.

_____/

## ORDER

THIS MATTER is before the Court on the Defendant's Motion for Award of Attorney's Fees, Costs, and Expenses and Memorandum of Law in Support Thereof (DE# 298, 10/6/10) in accordance with a referral by the Honorable Patricia A. Seitz, United States District Judge pursuant to 28 U.S.C. § 636(b). See Order Following September 22, 2010 Status Conference, Granting Motion for Default, and Referring Motion on Attorney's Fees and Sanctions to Magistrate Judge (DE# 293, 9/23/10). The parties consented to magistrate judge jurisdiction for the final disposition of this motion. Id. at 3. Having reviewed the applicable filings and law and as more fully discussed below, the Defendant's Motion for Award of Attorney's Fees, Costs, and Expenses and Memorandum of Law in Support Thereof (DE# 298, 10/6/10) is **GRANTED in part and DENIED in part** in accordance with this Order.

## BACKGROUND[1]

On March 6, 2009, the plaintiff commenced the instant action against the defendant over the defendant's alleged breaches of the Professional Services Agreement (hereinafter "PSA"). See Complaint and Demand for Jury Trial (DE# 1, 3/6/09). The complaint alleged the following causes of action: breach of contract, breach of implied covenant of good faith and fair dealing and accounting. Id. The litigation concluded when the plaintiff, shortly before trial was scheduled to commence, agreed to a default judgment against it. See Order Following September 22, 2010 Status Conference, Granting Motion for Default, and Referring Motion on Attorney's Fees and Sanctions to Magistrate Judge (DE# 293 at 1, 9/23/10). On the same day, the Court issued a Final Judgment (DE# 294, 9/23/10) in favor of the defendant and against the plaintiff on all counts of the complaint.

The defendant filed the instant motion along with supporting documentation, declarations and affidavits on October 6, 2010. See Defendant's Motion for Award of Attorney's Fees, Costs, and Expenses and Memorandum of Law in Support Thereof (DE# 298, 10/6/10); Defendant's Notice of Filing Declarations and Affidavits in Support of its Motion for Award of Attorney's Fees and Expenses and Motion for Sanctions Against Plaintiff, Managed Care Solutions, Inc.; Robert Ingham, Esq.; Ingham & Associates, P.A.; Jonathan J. Warrick, Esq.; The Law Office of Jonathan J. Warrick, P.A.; and Raphael Baruch (DE# 300, 10/6/10). The defendant also moved for sanctions in a separate motion. See Defendant's Motion for Sanctions Against

---

[1] To avoid confusion, the Court will refer to the page numbers automatically assigned by the Court's CM/ECF system when citing to the record in this case.

Plaintiff Managed Care Solutions, Inc.; Robert Ingham, Esq.; Ingham & Associates, P.A.; Jonathan J. Warrick, Esq.; The Law Office of Jonathan Warrick, P.A.; and Raphael Baruch and Memorandum of Law in Support Thereof (DE# 299, 10/6/10).[2] For the most part, the plaintiff and the plaintiff's former counsel responded to both motions in the same filings. These responses, as they pertain to the motion for attorneys' fees, are as follows:

- Partial Response in Opposition to Motion for Sanctions (and Memorandum of Law) and Incorporated Motion for Enlargement and Extension of Time to Respond in Full to the Sanction Motion and to the Defendant's Motion for Award of Attorney's Fees and Costs (DE# 301, 10/12/10) filed by the plaintiff;

- Jonathan J. Warrick, Esq.'s Motion for an Enlargement and Extension of Time to Respond to Defendant's Motion for Sanctions Against Jonathan J. Warrick and to Defendant's Motion for Award of Attorney's Fees, Costs and Expenses as it Relates to the Undersigned (DE# 304, 10/18/10);[3]

- Response in Opposition to Motion for Sanctions and Motion for Award of Attorney's Fees, Costs and Expenses (DE# 316, 11/12/10) filed by the plaintiff;

- Former Counsel for Plaintiff, Robert Ingham's Verified Response in Opposition to Defendant's Motion for Sanctions Against Plaintiff Managed Care Solutions,

---

[2] The defendant's motion for sanctions is the topic of a Report and Recommendation to be issued separately.

[3] Although this motion is captioned as a motion for an enlargement of time, the motion raises substantive defenses to the relief requested by the defendant and the undersigned will consider those arguments in ruling on the Defendant's Motion for Award of Attorney's Fees, Costs and Expenses (DE# 298, 10/6/10).

3

Inc., Robert Ingham, Esq., Ingham & Associates, P.A., Jonathan J. Warrick, Esq., The Law Office of Jonathan J. Warrick, P.A., and Raphael Baruch and Memorandum of Law in Support [D.E. 299] and Plaintiff's and Raphael Baruch's Response in Opposition to Motion for Sanctions and Motion for Award of Attorney's Fees, Costs and Expenses [D.E. 316] (DE# 319, 11/29/10);

• Reply to Robert Ingham, Esquire's Verified Response in Opposition to Defendant's Motion for Sanctions and Plaintiff's and Raphael Baruch's Response in Opposition to Motion for Sanctions and Motion for Award of Attorney's Fees, Costs and Expenses [D.E. 319] (DE# 320, 12/20/10) filed by the plaintiff;

• Notice of Filing Exhibit C to D.E. 320 (DE# 322, 12/20/10) filed by the plaintiff and

• Notice of Filing Exhibit B to D.E. 320 (DE# 325, 12/21/10) filed by the plaintiff.

The defendant filed its reply on December 20, 2010. <u>See</u> Defendant's Reply in Support of its Motion for Fees (DE# 323, 12/20/10).

<b><u>ANALYSIS</u></b>

**I.     Attorneys' Fees**

    **A.     Entitlement to Fees**

The defendant seeks an award of attorney's fees and costs in the amount of $2,081,903.76 as the prevailing party under the PSA. The pertinent provision in the PSA states as follows:

    **14.6     <u>Legal Fees and Costs.</u>** In the event either Party elects to incur legal expenses to enforce or interpret any provision of this Agreement, the prevailing Party shall be entitled to recover from

4

> the other Party such legal expenses, including attorney's fees,
> costs, and necessary disbursements, in addition to any other
> relief to which such party shall be entitled through all arbitration,
> trial and appellate proceedings.

PSA (DE# 1 at 21, 3/6/09). The plaintiff does not dispute that the defendant is the

prevailing party in this litigation. See Partial Response in Opposition to Motion for

Sanctions (and Memorandum of Law) and Incorporated Motion for Enlargement and

Extension of Time to Respond in Full to the Sanction Motion and to the Defendant's

Motion for Award of Attorney's Fees, Costs and Expenses (DE# 301 at 3, 10/12/10)

(stating that "[a]s a result of the Final Judgment, the Defendant is the prevailing party

and is entitled to recovery of its reasonable attorneys' fees and costs pursuant to the

Professional Services Agreement sued upon in this case."); Transcript 9/22/2010

Hearing (DE# 296 at 17, 10/5/10) (agreeing that the defendant is the prevailing party).

The defendant is entitled to attorneys' fees and costs against the plaintiff under the

PSA.[4]

####    B.    Amount of Fee Award

Having determined that the defendant is entitled to attorneys' fees in the instant

case, the Court must now determine the amount. The defendant seeks attorneys' fees

pursuant to a provision in a contract. Contracts are generally construed in accordance

---------------

[4] The defendant does not seek attorney's fees and costs in the instant motion against the plaintiff's former counsel. The defendant does seek sanctions in the form of attorney's fees against the plaintiff, Raphael Baruch and the plaintiff's former counsel in the Defendant's Motion for Sanctions Against Plaintiff Managed Care Solutions, Inc.; Robert Ingham, Esq.; Ingham & Associates, P.A.; Jonathan J. Warrick, Esq.; The Law Office of Jonathan Warrick, P.A.; and Raphael Baruch and Memorandum of Law in Support Thereof (DE# 299, 10/6/10). That motion will be addressed in a report and recommendation.

with state law. Eli Lilly and Co. v. Air Exp. Intern. USA, Inc., 615 F.3d 1305, 1314

(11th Cir. 2010) (stating that the Court "generally appl[ies] state law to such questions

of contract interpretation"). The PSA contains the following clause:

> **14.9    Applicable Law.** The construction, interpretation, and
> enforcement of this Agreement shall be at all times and in all
> respects be governed by the laws of the State of Florida, without
> reference to Florida's choice of law or conflict of law provisions or
> principles.

 PSA (DE# 1 at 21, 3/6/09). Thus, Florida law governs the amount of fees the

defendant should recover in the instant case.

The instant action was brought under the Court's diversity jurisdiction. Florida

law applies in a diversity action where fees are sought pursuant to a state law claim.

Trans Coastal Roofing Co., Inc. v. David Boland, Inc., 309 F.3d 758, 760 (11th Cir.

2002). Florida has adopted the federal lodestar approach to calculating reasonable

attorney's fees. Bell v. U.S.B. Acquisition, Co., 734 So. 2d 403, 406 (Fla. 1999);

Florida Patient's Compensation Fund v. Rowe, 472 So. 2d 1145, 1150 (Fla.1985).

Under this approach, the Court must consider the number of hours reasonably

expended on this litigation, together with the customary fee charged in this community

for similar legal services in calculating a reasonable attorneys' fee award. See

Hensley v. Eckerhart, 461 U.S. 424 (1983); Loranger v. Stierheim, 10 F.3d 776 (11th

Cir. 1994). These two figures are then multiplied together, resulting in a sum

commonly referred to as the "lodestar." Under certain circumstances, the lodestar

may be adjusted in order to reach a more appropriate fee. See Blum v. Stenson, 465

U.S. 886, 888 (1984).

The plaintiff takes the position that the defendant's fee request should be

limited to reasonable fees for time spent prior to January 15, 2010. Response in

Opposition to Motion for Sanctions and Motion for Award of Attorney's Fees, Costs

and Expenses (DE# 316 at 17, 11/12/10).[5] The plaintiff further argues that it:

> is unable to properly inform this . . . Court with what it submits to be a
> reasonable attorneys' fee in light of the [d]efendant's failure to delineate
> with any specificity or exactitude the contributions by each time keeper
> and have also failed to address whether any duplicative time was
> excluded or why there was no duplication or redundancy.

Id. (citation omitted). As such, the plaintiff argues that the defendant's fee request

should be denied or the defendant should be required to provide "more exact and

definitive statements . . . ." Id. (citation omitted).

The Court is not persuaded by the plaintiff's argument that the defendant's fee

request should be limited to those fees incurred prior to January 15, 2010. The

plaintiff voluntarily entered into a contractual agreement with the defendant wherein

"the prevailing [p]arty [would] be entitled to recover from the other [p]arty such legal

expenses, including attorney's fees, costs, and necessary disbursements, in addition

to any other relief to which such party shall be entitled through all arbitration, trial and

appellate proceedings." PSA (DE# 1 at 21, 3/6/09). The Court will not rewrite the

contract between the parties by limiting the defendant's recovery to only those fees

incurred prior to January 15, 2010. See State Farm Mut. Auto. Ins. Co. v. Pridgen,

498 So. 2d 1245, 1248 (Fla.1986) ("Courts may not rewrite contracts or add meaning

---

[5] The plaintiff takes the position that fees incurred after January 15, 2010 were unnecessary and the result of Mr. Ingham's abusive litigation tactics. See Declaration of Peter R. Goldman (DE# 316-1 at 72, 11/12/10) (stating that "but for the 'abusive tactics' employed primarily by Mr. Ingham, none (or only a minimal amount) of the legal expense after January 15, 2010 would have been necessary or incurred by the [d]efendant.") (footnote omitted).

to create an ambiguity."). The Court also rejects the plaintiff's argument that the defendant's fee request is insufficiently detailed. The defendant submitted billing statements totaling 199 pages for the by Waller, Lansden, Dortch & Davis, LLP  and 84 pages of billing records for Berger Singerman, P.A. These billing statements contained detailed and contemporaneous billing descriptions of the tasks performed and the time expended by each time keeper. The undersigned will evaluate the defendant's fee request for reasonableness below.

### 1.    Hourly Rate

The Court must first evaluate the defendant's requested fee in terms of the appropriate hourly rate. In order to determine a reasonable and proper fee award, the Court must consider the number of hours expended on the case together with the customary hourly fees charged in this community for similar services. See Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). The Supreme Court has held that a reasonable hourly rate is to be measured by "prevailing market rates in the relevant community." See Blum, 465 U.S. at 886. In determining the prevailing market rates the Court should consider several factors including "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." Mallory v. Harkness, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (citing Dillard v. City of Elba, 863 F. Supp. 1550, 1552 (M.D. Ala. 1993)). In the instant action, the defendant was represented by Waller, Lansden, Dortch & Davis, LLP (hereinafter "Waller" or "lead counsel") and Berger Singerman,

8

P.A. (hereinafter "Berger" or "local counsel"). The hourly rates sought by the defendant for lead counsel range from $130 to $515 for 2009 and 2010.[6] See Exhibit 1 to Defendant's Motion for Award of Attorney's Fees, Costs, and Expenses (DE# 298-1, 10/6/10). The hourly rates sought by the defendant for local counsel (and staff) range from $155 to $400 in 2009 and $75 to $560 in 2010. See Exhibit 2 to Defendant's Motion for Award of Attorney's Fees, Costs, and Expenses (DE# 298-2, 10/6/10).

The plaintiff has submitted the Declaration of Peter R. Goldman in response to the defendant's fee request. See Declaration of Peter R. Goldman (DE# 316-1 at 64-77, 11/12/10). Mr. Goldman has been practicing law for approximately 20 years and his practice includes complex healthcare litigation. Id. at 64. Mr. Goldman opines "that the hourly rates charged by the attorney and paralegal time-keepers for the [d]efendant are reasonable and within the range of market rates for lawyers and paralegals practicing in the South Florida legal community." Id. at 66. Having considered counsels' reputation and experience in the areas of the applicable law, the Affidavit of Robert C. Josefsberg on the Reasonableness of Attorneys' Fees (DE # 300-13, 10/6/10) and the Declaration of Peter R. Goldman (DE# 316-1 at 64-77, 11/12/10) and the Court's familiarity with attorneys' fees in general, the undersigned finds that the hourly rates sought by the defendant are reasonable and should be awarded. See Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988) (the court may consider its own knowledge and experience concerning reasonable and proper fees and may form an

---

[6] This includes hourly rates for staff.

9

independent judgment when reviewing a claim for hours reasonably expended).

### 2.    Amount of Hours

The Court must next evaluate the defendant's requested fee for reasonableness in terms of the total hours expended by defendant's counsel. This Court may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment when reviewing a claim for hours reasonably expended.  See Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988). If there is inadequate documentation or if the Court finds a claim for hours to be "excessive or unnecessary," the Court may reduce the number of hours for which fees will be awarded. Florida Patient's Compensation Fund v. Rowe, 472 So. 2d 1145, 1150 (Fla. 1985).

Mr. Goldman disputes that the instant case represented an "existential threat" to the defendant. Mr. Goldman opines that "the case did have merit and an 'upside' of roughly $1.3 million." See Declaration of Peter R. Goldman (DE# 316-1 at 69, 11/12/10). As such, Mr. Goldman argues that the defendant overlitigated the case. Id. (stating "it is my opinion that the scope of the litigation (and expense attributable thereto) was not necessitated by a so-called 'existential threat' to the [d]efendant."). According to Mr. Goldman, the defendants assigned too many timekeepers to the case: "the staffing of this case would, at most, *ordinarily* require 1-2 partners, 1-2 associates and 2-3 paralegals. . . ." Id. at 72 (italics in original).

At the outset, the Court is not persuaded by the plaintiff's "existential threat" argument. Any unreasonableness on the part of the defendant in believing the case was an "existential threat" was directly attributable to the plaintiff. See, e.g., Plaintiff's Motion

10

for Sanctions, Including the Entry of a Default Judgment and an Award of Attorney's Fees, and Request for Hearing (DE# 152 at 15 n. 16, 6/10/10) (stating that damages in the instant case could range from $22,860,000.00 to 10,090,000.00 based on a 30% denial rate by the defendant). Additionally, given the nature of the case and the contentious manner in which it was litigated, the Court does not find it unusual to have a large number of attorneys and staff working on this case. The Court notes that the case involved approximately ten discovery hearings and 13 depositions. The defendants produced over a million pages of documents in response to the plaintiff's discovery requests. Much of the discovery produced in the instant case concerned confidential healthcare information which required time consuming and careful redaction in order to comply with healthcare privacy laws. Thus, the Court is not persuaded by Mr. Goldman's argument that the case should have been staffed with, at most, seven legal professionals. Nonetheless, each timekeeper working on the instant case would have had to spend some time on the learning curve to efficiently work on this case. The Court finds that timekeepers who spent less than ten hours on this case would have spent more of their total billed time on the learning curve. Moreover,  it is difficult to determine what value was added to the case by such a minimal involvement. The Court will disallow the billing entries of those timekeepers that worked less than ten hours on the instant case. For the Waller law firm, there were 13 timekeepers[7] who billed less than

---

[7] These timekeepers are Sharon K. Herron, Richard G. Sanders, Beth Guest, Andrew Norwood, Michael T. Harmon, Nate Gilmer, Emily J. Zibart, Joseph A. Sowell, Frank Grace, Kristin M. Jantz, Vicki C. Thornton, Richard A. Moore and Michelle C. Wilson.

ten hours for a total of $11,835.50. For the Berger law firm, eight timekeepers[8] billed less than ten hours in this case for a total of $3,749.50.

### a.    Waller

The fees submitted by the defendant's lead counsel, Waller, total $1,384,601.40 ($1,396,436.90 minus $11,835.50, see supra). See Exhibit 1 to Defendant's Motion for Award of Attorney's Fees, Costs, and Expenses (DE# 298-1, 10/6/10). The plaintiff does not specifically address the defendant's billing entries. Rather, the plaintiff's expert, Mr. Goldman, takes the position that "it [is] impossible (and impractical) to try and ascertain, from the materials submitted by the [d]efendant in connection with the fee motion, the extent to which there are overlapping, redundant time entries. . . . [I]t is impossible for anyone to opine, with any degree of reasonable certainty, what constitutes time reasonably devoted to the handling of the case (considering what a lawyer in this community would ordinarily devote to a dispute of this nature) versus redundant, overlapping work." See Declaration of Peter R. Goldman (DE# 316-1 at 67-68, 11/12/10) (italics in original). Mr. Goldman also opines that "it . . . appear[s] that [the d]efendant is seeking recovery for clerical work that is not reimbursable." Id. at 65. However, in his declaration, Mr. Goldman does not identify which time entries he believes are clerical in nature. The defendant submitted detailed monthly billing records and invoices supporting their fee request. There is no reason why the plaintiff's expert could not have reviewed the defendant's billing records, as the Court has done, and identified any excessive, redundant, clerical  or otherwise non-recoverable billing entries. "Generalized

---

[8] These timekeepers are Mitchell Berger, Rita Goldberg, Andrew Kinkes, Erick Rodriguez, Michelle Albrecht, Lissette Merida, Luis Torres and Betsy Moya.

statements that the time spent was reasonable or unreasonable . . . are not particularly helpful and not entitled to much weight. . . . [a]s the district court must be reasonably precise in excluding hours thought to be unreasonable or unnecessary, so should be the objections and proof from fee opponents." <u>Norman</u>, 836 F.2d at 1301.

Upon independent review of the billing invoices submitted by the defendant, the undersigned finds that the time entries for the Waller law firm were contemporaneous, complete, standardized and accurately reflect the work done by the defendant's counsel. Nonetheless, the Court finds that an across the board reduction of 30 percent for the billing entries submitted by the defendant is warranted. "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour- by-hour analysis or it may reduce the requested hours with an across-the-board-cut." <u>Bivins v. Wrap It Up, Inc.</u>, 548 F.3d 1348, 1350 (11th Cir. 2008) (<u>per curiam</u>). An across the board reduction is particularly appropriate in the instant case where the defendant has submitted approximately 283 pages of billing records representing 5,058.60 hours for the Waller firm and 888.5 hours for the Berger firm.[9] <u>See</u> <u>Villano v. City of Boynton Beach</u>, 254 F.3d 1302, 1311 (11th Cir. 2001) (finding 569.3 hours were "extensive enough that [the appellate court] d[id] not expect the district court or the magistrate judge to conduct an hour-by-hour analysis [of] th[e] case.").

An overall 30 percent reduction of the requested fee amount is warranted to account for billing entries that are excessive, duplicative, clerical in nature, unnecessary or otherwise unreasonable. This overall reduction is also warranted because the time

---

[9] These totals do not include the timekeepers who billed less than ten hours on the case because they were previously disallowed by the Court.

entries include block billing and multiple attorneys. Additionally, there were some fees which the defendant should not recover. For instance, there were three discovery hearings wherein the Court sanctioned the defendants. The first hearing took place on April 29, 2010. At this hearing, the undersigned allowed the plaintiff to depose the signatories of certain third party vendor contracts at the defendant's expense. See Transcript April 29, 2010 Hearing (DE# 139 at 31-32, 5/11/10). At the May 12, 2010 hearing, the undersigned allowed the plaintiff to reopen the depositions of Steve Wylie, Michael Miller[10] and Larry Reaves and a 30(b)(6) corporate representative regarding a newly disclosed vendor contract and new information at the defendant's expense. See Transcript May 12, 2010 Hearing (DE# 150 at 37, 6/4/10). Lastly, the plaintiff was awarded $6,000 in Rule 37 sanctions against the defendant for failing to previously disclose additional form 835s. See Transcript July 13, 2010 Hearing (DE# 193 at 19, 7/23/10). The Court finds that it would be inequitable to require the plaintiff to reimburse the defendant for legal fees incurred in relation to these three discovery hearings. For example, attorney Woodruff billed a total of 11.10 hours on May 13, 2010, including time spent on preparing and defending the deposition of Larry Reaves. See Waller July 21, 2010 Billing Statement (DE# 300-6 at 33, 10/6/10).[11] The plaintiff should not be required to reimburse the defendant for the deposition of Mr. Reaves because that deposition was supposed to take place at the defendant's expense pursuant to a Court Order.

---

[10] Ken Miller was also a deponent in this case. The deposition costs for Ken Miller are recoverable.

[11]Although Mr. Woodruff billed for preparing for other depositions which would be recoverable, Mr. Woodruff's use of block billing makes it impossible to determine how much time was devoted to preparing for Mr. Reaves' deposition.

Other examples of billing entries supporting an across the board 30 percent reduction include the billing entries from Attorney Brian J. Malcom concerning the defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Venue or, in the Alternative, to Transfer Venue (DE# 4, 4/16/09) and the Defendant's Memorandum in Support of its Motion to Dismiss for Lack of Personal Jurisdiction and Venue, or in the Alternative, to Transfer Venue (DE# 5, 4/16/09). Mr. Malcom spent approximately 43.3 hours[12] from March 27, 2009 until April 14, 2009 working on the motion to dismiss which consisted of two pages of substance and the memorandum of law consisting of 16 pages of substance. See April 23, 2009 Waller Billing Statement (DE# 300-5 at 8, 10/6/10); May 27, 2009 Waller Billing Statement (DE# 300-5 at 9-10, 10/6/10). Mr. Malcom billed almost as much, approximately 39.5 hours, for working on the reply, consisting of ten substantive pages. See June 17, 2009 Waller Billing Statement (DE# 300-5 at 13-14, 10/6/10). These amounts do not include the time billed by attorney Carol Owen and local counsel Rene Harrod for working on the same documents. Similarly, billing entries such as "work on motion practice" and "[w]ork on discovery issues" are not sufficiently detailed to allow the Court to determine whether the amount of time spent on these tasks was reasonable. See, e.g., June 17, 2009 Waller Billing Statement (DE# 300-5 at 14, 10/6/10); October 12, 2009 Waller Billing Statement (DE# 300-5 at 34, 10/6/10). Other billing entries appear excessive for the task described. For example on July 24, 2009, attorney Carol Owen billed 7.20 hours for the following: "Correspondence

---

[12] Mr. Malcom employed block billing. Thus, while Mr. Malcom spent time on other tasks, it is impossible for the Court to determine what portion of Mr. Malcom's block billing entries were devoted exclusively to the motion to dismiss.

to R. Ingham re: motions for protective order and pro hac vice admission; review court documents pursuant to fact investigation; instructions to H. Estama re: background research into Plaintiff's litigation; confer with S. Wylie re: case status; correspondence to R. Ingham re: deficiencies of document production." August 18, 2009 Waller Billing Statement (DE# 300-5 at 23, 10/6/10). Similarly, Mr. Malcom billed approximately 14.5 hours for researching breach of contract claims and defenses under Florida law and drafting a case assessment memorandum. See December 10, 2009 Waller Billing Statement (DE# 300-5 at 45, 10/6/10); January 14, 2010 Waller Billing Statement (DE# 300-5 at 47, 10/6/10). Breach of contract is not a novel or complex legal issue under Florida law. As an example of a duplicative entry Mr. Malcom and attorney Sarah C. McBride both billed for reviewing the order setting mediation. October 12, 2009 Waller Billing Statement (DE# 300-5 at 34, 10/6/10). The Court also found some limited examples of clerical work. For example, Litigation Support Specialist Michael S. Creath billed for "[p]repar[ing] copies of document production" and for loading discovery documents into the Summation program on multiple occasions. See, e.g., December 10, 2009 Waller Billing Statement (DE# 300-5 at 44-45, 10/6/10), January 14, 2010 Waller Billing Statement (DE# 300-5 at 48, 10/6/10). Attorney Carol Owen billed for overseeing the filing and service of pretrial submissions. See September 29, 2010 Waller Billing Statement (DE# 300-6 at 88, 10/6/10). These tasks appear to be clerical in nature. Lastly, Mr. Malcom billed 2.40 hours for attending the September 22, 2010  hearing on the motion to withdraw and motion for default judgment. See September 29, 2010 Waller Billing Statement (DE# 300-6 at 93-94, 10/6/10). However, a review of the hearing transcript shows that Mr. Malcom did not participate at this hearing. The

16

foregoing are some examples of the billing entries which lead the Court to conclude that a 30 percent overall reduction is appropriate in the instant case.

Applying the 30 percent reduction to the fees submitted from the Waller firm, the Court finds that it was reasonable for the defendant to incur **$969,220.98** ($1,384,601.40 minus 30 percent) in legal fees defending against the plaintiff's claims. The defendant is awarded a total of **$969,220.98** in attorneys' fees for the work performed by the Waller firm.

### b.    Berger

The fees submitted by the defendant's local counsel, Berger, total $282,438.50 ($286,188.00 minus $3,749.50, see supra). Upon review of the billing statements submitted by the defendant, the undersigned finds that the time entries for the Berger law firm were contemporaneous, complete, standardized and accurately reflect the work done by the defendant's counsel. Nonetheless, the Court finds that a 30 percent reduction to the Berger billing records is warranted.

This 30 percent reduction accounts for work that is excessive, duplicative, clerical in nature or unnecessary. Additionally, some block-billing makes it impossible to discern what portion of the time billed was attributed to a specific task. Examples of billing entries that should be reduced or disallowed include the March 19, 2009 billing entry from paralegal Hulda Estama. Ms. Estama billed 1.30 hours for preparing the pro hac vice motion for attorney Carol Owen. See April 2, 2009 Berger Billing Statement (DE#300-7 at 2, 10/6/10). The Court has reviewed the pro hac vice motion filed on behalf of Ms. Owen and finds that the amount billed is excessive and the billing entry should be substantially reduced. As an example of clerical work, Ms. Estama

consistently billed for electronically filing documents on the Court's CM/ECF system. See, e.g., June 2, 2009 Berger Billing Statement (DE#300-7 at 4, 10/6/10). This task should be disallowed in its entirety. Similarly, Ms. Estama billed for other clerical work such as obtaining transcripts and making arrangements for depositions. See, e.g., March 2, 2010 Berger Billing Statement (DE#300-7 at 32 and 34, 10/6/10); April 1, 2010 Berger Billing Statement (DE#300-7 at 38, 10/6/10). The Court's review of the billing entries for the Berger firm revealed a few duplicative entries. An example of a duplicative entry occurred on July 30, 2009 and July 31, 2009 when attorney Rene Harrod billed for drafting the notice of selection of mediator. Id. at 10-11. Lastly, an example of unnecessary work occurred on August 17, 2010 when Ms. Estama billed 10 hours for attending the mock trial. See September 3, 2010 Berger Billing Statement (DE#300-7 at 63, 10/6/10). The Court finds that it would be unreasonable to require the plaintiff to pay for a paralegal's attendance at a mock trial. Similarly, attorney Monica F. Rossbach billed 3.00 hours on September 10, 2010 for attending a pretrial conference and for having lunch with lead counsel Mr. Woodruff and Ms. Owen. See September 30, 2010 Berger Billing Statement (DE#300-7 at 71, 10/6/10). The Court finds that it would be unreasonable to charge the plaintiff for Ms. Rossbach's time spent at lunch. Additionally, the Court has reviewed the transcript of the pretrial conference and notes that Ms. Rossbach did not participate at this hearing. Similarly, attorney Etan Mark billed 8.20 hours on September 17, 2010 for preparing and attending the pretrial conference. Id. at 74. The transcript reveals that Mr. Mark did not participate in the pretrial conference, although he may have been in attendance. Mr. Mark also billed 4.00 hours on September 22, 2010 for preparing and attending the hearing on the motion to withdraw

18

and motion for default judgment. Id. at 75. Again, the transcript shows that while Mr. Mark was in attendance, he did not participate at this hearing. The Court finds these billing entries represent unnecessary time and will be disallowed as a whole. In sum, the Court finds that a 30 percent reduction to the billing entries of the Berger law firm are warranted to account for excessive, duplicative, clerical or otherwise unnecessary billing entries.

Applying the 30 percent reduction to the fees submitted from the Berger firm, the Court finds that it was reasonable for the defendant to incur **$197,706.95** ($282,438.50 minus 30 percent) in legal fees defending against the plaintiff's claims. The defendant is awarded a total of **$197,706.95** in attorneys' fees for the work performed by the Berger firm.

**II.    Costs and Expenses**

The defendant also seeks $135,461.01 in costs incurred by both the Waller and Berger law firms. See Exhibit 3 to Defendant's Motion for Award of Attorney's Fees, Costs and Expenses (DE# 298-3, 10/6/10). In addition to costs, the defendant seeks to recover $263,817.85 expended on experts and trial consultants. See Invoices, (DE# 300-8 at 2-37). Costs are generally recoverable pursuant to contract or by statutory authority, 28 U.S.C. § 1920. Here, the PSA entitles the defendant to recover costs and expenses. See PSA (DE# 1 at 21, 3/6/09). Although the defendant is not limited to those costs taxable under § 1920, the defendant still bears the burden of submitting a costs request that will allow the Court to determine which costs were actually incurred and whether they are reasonable. See Lee v. American Eagle Airlines, Inc., 93 F. Supp. 2d 1332, 1335 (S.D. Fla. 2000) (citing Loranger v. Stierheim, 10 F.3d

19

776, 782 (11th Cir. 1994).

**A.     Costs**

Here, the defendant has submitted monthly itemized costs[13] and supporting

documentation (DE# 300-5-8, 10/6/10) for the costs it seeks to recover in the instant

case. The Court has calculated the costs reflected in the defendant's billing statements

and finds that the costs contained in the defendant's billing statements exceed the total

cost reflected in Exhibit 3 to Defendant's Motion for Award of Attorney's Fees, Costs and

Expenses (DE# 298-3, 10/6/10) by $2,750.02. The Court will use the lower number

reflected in Exhibit 3 as a starting point in determining the reasonable amount of costs to

award.

**i.     Depositions**

The defendant seeks $35,618.08 in connection with the depositions taken in the

instant case. These costs include the appearance fees of the court reporter and costs

associated with transcription and video services. These costs have been adequately

documented and the Court finds that, for the most part, they were reasonably incurred.

Nonetheless, the Court finds that some of the deposition fees are not recoverable by the

defendant. Specifically, depositions that were taken at the defendant's expense as part

of a Court ordered sanction will not be recovered by the defendant. At the May 12, 2010

hearing, the undersigned allowed the plaintiff to reopen the depositions of Steve Wylie,

Michael Miller and Larry Reaves at the defendant's expense. See Transcript May 12,

---

[13] The monthly billing statements prepared by the defendant's counsel included
itemized costs.

2010 Hearing (DE# 150 at 37, 6/4/10).[14] Thus, the second depositions of Steve Wylie, Michael Miller and Larry Reaves shall be excluded from the costs recovered by the defendants. To that end, the Court will disallow $4,256.70 ($3,020.65 plus $1,236.05) for the second depositions of Steve Wylie, Michael Miller and Larry Reaves. See Invoices (DE# 300-8 at 53-54, 10/6/10). In total, the defendant is permitted to recover $31,361.38 ($35,618.08 minus $4,256.70) for the depositions taken in the instant case.

ii.   **Litigation Support**

The defendant seeks reimbursement for "litigation support" in the amount of $26,286.90. This amount is for services provided by two vendors, Document Solutions and Net Evidence. The services provided by Document Solutions included "data factory," password cracking and organizing encrypted files, optical character recognition, file conversion and providing CDs and DVDs of documents for use in the case. Net Evidence provided data collection and review for use in the case. The Court finds that in light of the voluminous document discovery in the instant case, it was necessary and reasonable to incur these expenses. The defendant will be awarded the full amount for "litigation support" services.

---

[14] The Court also ordered the reopening of a 30(b)(6) deposition and permitted the plaintiff to depose the signatories of certain third party vendor contracts at the defendant's expense. See Transcript April 29, 2010 Hearing (DE# 139 at 31-32, 5/11/10); Transcript May 12, 2010 Hearing (DE# 150 at 37, 6/4/10). However, the Court cannot determine the names of these deponents from the documents submitted by the defendant or whether these depositions took place. Additionally, the plaintiff has failed to adequately defend against the defendant's costs motion. Thus, the only deposition costs that will be removed from the costs sought by the defendant are the second depositions of Steve Wylie, Michael Miller and Larry Reaves.

### iii.   Travel Expenses

The defendant seeks reimbursement for travel expenses for its lead and local counsel. The travel expenses of lead counsel include traveling to Florida and other states to attend Court hearings and conferences, depositions, the mediation and the mock trial. For the most part, this travel appears reasonable. However, attorney Carol Owen billed $186.94 in travel expenses for attending a hearing on a motion to dismiss in Birmingham, Alabama. See Waller November 9, 2009 Billing Statement (DE# 300-5 at 41, 10/6/10). This expense entry appears to be from another case since Ms. Owen already billed $881.90 for her travel expenses in attending the motion to dismiss in the instant case. See Waller August 18, 2009 Billing Statement (DE# 300-5 at 24, 10/6/10). The Court will disallow the $186.94 expense. Additionally, there are two $35.00 cancellation fees[15] charged for the travel of attorneys Claire G. Sawyer and Frances Fenelon. Ms. Sawyer was scheduled to travel on March 3, 2010 and March 7, 2010. See Waller April 7, 2010 Billing Statement (DE# 300-6 at 6, 10/6/10). Ms. Sawyer's trip was cancelled and her travel expenses were credited back to the client with the exception of $35.00. See Waller May 10, 2010 Billing Statement (DE# 300-6 at 25, 10/6/10). Similarly, Ms. Fenelon cancelled a trip to Florence, South Carolina and the client was credited for the cost of the trip with the exception of $35.00. Id.[16] There is no indication

---

[15] The billing records show two charges, $621.40 and $335.70, in connection with travel by Ms. Sawyer. See Waller April 7, 2010 Billing Statement (DE# 300-6 at 6, 10/6/10). On April 15, 2010, the defendant was credited the full $621.40 and $300.70 for Ms. Sawyer's travel. Thus, $35.00 was not credited back to the defendant. See Waller May 10, 2010 Billing Statement (DE# 300-6 at 25, 10/6/10).

[16] The billing records show that the defendant incurred a charge of $438.30 for Ms. Fenelon's travel. See Waller May 10, 2010 Billing Statement (DE# 300-6 at 25,

that the plaintiff was responsible for the cancellation of these two trips. The plaintiff should not have to pay for Ms. Sawyer's and Ms. Fenelon's cancellation fees. The defendant's travel expenses will be reduced by $70.00 ($35.00 times 2).

Local counsel billed for travel expenses consisting of tolls, mileage and parking for attending hearings. These travel charges appear reasonable. However, there was also a $240.00 charge for a limo services for two witnesses. See Invoice (DE# 300-9 at 75, 10/6/10). The records do not indicate who these witnesses are and the $240.00 charge for transportation is unreasonable. The Court will disallow the $240.00 charge in its entirety.

In sum, the Court will disallow $496.94 ($186.94 plus $70.00 plus $240.00) in travel expenses sought by the defendant. The remaining travel entries, totaling $15,133.68 ($15,630.62 minus $496.94), appear reasonable.

### iv.   Photocopies

The defendant requests $12,163.40 for photocopies. The defendant has offered no explanation as to what these photocopies were for or how they were necessary to this case. The defendant's description of its photocopying expenses consists of each firm's billing records which merely states "reproductions" or "photocopies." Obviously, accounting for each photocopy would be impracticable. However, a brief description of the nature or purpose of the photocopies would assist the Court in determining its reasonableness. It is clear that some photocopy expenses were reasonably incurred in the instant action. Waller's billing records indicate that the defendant charged $0.20 per

---

10/6/10). The trip was cancelled and the defendant received a credit of $403.30. Id. Thus, $35.00 was not credited back to the defendant.

page for copies. See, e.g., Waller April 7, 2010 Billing Statement (DE# 300-6 at 10, 10/6/10). The Court cannot determine the per page copy rate charged by the Berger firm. The Court will allow the defendant to recover photocopies at a rate of $0.10 per page, $6,081.70 ($12,163.40 divided by half). The Court will further reduce this amount by half to $3,040.85 ($6,081.70 divided by half) to account for the lack of explanation. The defendant will be allowed to recover photocopying costs of $3,040.85 in the instant case.

### v.   Document and Data Duplication and Management

The defendant seeks to recover $10,830.00 for document and data duplication and management. These fees include $5,992.30 for the services of Pitney Bowes. Pitney Bowes provided bate stamping, optical character recognition and scanning services. The undersigned finds that the defendant reasonably incurred these fees. In the instant case over a million documents were produced. In order to make document production possible, the defendant reasonably retained the services of outside vendors. The Court cannot readily determine which vendors provided services for the remaining Document and Data Duplication and Management charges. Thus, the Court will allow the defendant to recover $5,992.30 for data duplication and management.

### vi.   Postage

The defendant seeks to recover $10,387.15 in postage. A nominal amount was incurred for correspondence sent through the United States mail. The majority of these charges were incurred by using commercial shipping company such as Federal Express and UPS. The dates of the shipments and the names of the senders and the recipients were generally included in the defendant's detailed billing records. Most of these

24

shipments were sent by lead counsel to the plaintiff's counsel, Mr. Ingham and to the defendant's local counsel, Rene Harrod. Because this litigation was paper intensive, it seems reasonable that lead counsel would routinely ship documents to Mr. Ingham and Ms. Harrod using a commercial shipping company.

### vii.    Online Research Charges

The defendant seeks to recover $8,618.33 for online legal research. The billing statements submitted by the defendant are sufficiently detailed to allow the Court to determine the nature of the legal research performed in this case. Moreover, the Waller billing statements provide the Court with the date on which the research was conducted. The Court has reviewed the billing statements for both the Waller and Berger firms and finds that $8,618.33 is reasonable for the amount of legal research performed in the instant case. The Court will allow the defendant to recover the full amount for legal research.

### viii.    Courier Services and Delivery Charges

The defendant seeks to recover $3,604.71 in courier services and $392.95 in delivery charges. Some delivery charges appear in billing statements from the Waller law firm but are not descriptive. See, e.g., Waller April 7, 2010 Billing Statement (DE# 300-6 at 10, 10/6/10). Since the Court cannot determine why or to whom the deliveries were made, the Court will disallow the delivery charges in their entirety. With respect to the courier charges, the invoices submitted by the defendant note, the defendant employed courier services to hand-deliver documents to the Court. It is unclear whether the documents were hand-delivered at the Court's request. Because some use of couriers was reasonable in the instant case, the Court will reduce the amount sought by

the defendant for courier services by half. The defendant shall recover $1,802.36 ($3,604.71 times 50 percent).

### ix.   Conference Calls and Phone Charges

The defendant seeks to recover $3,434.69 in conference calls and $1,967.07 in telephone charges. The majority of the telephone calls for which the defendant seeks reimbursement were long distance telephone calls between lead counsel and local counsel and from lead or local counsel to the various facilities owned by the defendant. Additionally, the use of conference calls was reasonable and cost efficient in that it allowed the parties to confer and attend hearings without incurring unnecessary travel expenses. The Court will allow both the conference calls and the phone charges sought by the defendant.

### x.   Hearing Transcripts

The defendant seeks to recover $1,927.15 for obtaining hearing transcripts in the instant case. The Court finds that the defendant is entitled to recover the full amount for these hearing transcripts. Obtaining hearing transcripts in the instant case was reasonable and necessary particularly where the parties had difficulty agreeing on the substance of the Court's rulings from the bench. On more than one occasion, the Court had to reconvene a discovery hearing because the parties could not agree to the substance of the Court's ruling at the previous discovery hearing. The documentation submitted by the defendant adequately supports this expense. Because the hearing transcripts were necessary in the instant case and the amount sought is reasonable, the defendant will recover the full amount for obtaining hearing transcripts.

### xi.    Outside Printing

The defendant seeks to recover $1,857.42 in outside printing services. The

defendant has offered no explanation concerning the use of an outside printing service.

The defendant paid the firm of Maynard, Cooper & Gale, P.C. ("Maynard") $156.24 for

"copies." See Waller July 13, 2010 Billing Statement (DE# 300-6 at 56, 10/6/10). A

review of the defendant's billing records indicates that Maynard responded to a

subpoena issued by the defendant. See Waller July 21, 2010 Billing Statement (DE#

300-6 at 30, 10/6/10). The Court will allow the defendant to recover $156.24 for

obtaining documents from Maynard. The records submitted by the defendant do not

allow the Court to readily ascertain why the remaining outside printing charges were

incurred. The Court will limit the defendant's recovery to $156.24.

### xii.    Mediation Fee (½ amount)

The Court finds that the defendant is entitled to recover its share of the mediation

fee. Local Rule 16.2(b)(7), states that: "[a]bsent agreement of the parties to the contrary,

the cost of the mediator's services shall be borne equally by the parties to the mediation

conference." The PSA constitutes the parties' "agreement to the contrary." The

defendant will be awarded $1,750.00 for its share of the mediation fee.[17]

### xiii.    Meals

The defendant seeks to recover $692.54 for meals in the instant case. The Court

will disallow the entire amount. Although these meals may have taken place during

---

[17] The plaintiff has already paid its corresponding half of the mediation fee. See
Defendant's Notice of Payment of Mediator Fees and of Gragil Associates, Inc.'s
Decision Not to Pursue Sanctions (DE# 313, 10/22/10).

depositions and other events related to the litigation, meals do appear to be a necessary disbursement.

### xiv.    Court Filing Fees

The defendant also seeks to recover $300.00 in court filing fees. This amount represents the $75.00 filing fees for attorneys Joseph A. Woodruff, Lea Carol Owen, Sara C. McBride and Frances C. Fenelon to appear pro hac vice on behalf of the defendant. The Court finds that this amount is reasonable, necessary and recoverable. The defendant is entitled to recover $300.00 in court filing fees.

For the reasons stated above, the costs recoverable by the defendant are as follows:

| Description | Amount Sought | Amount Allowed |
| --- | --- | --- |
| Depositions | $35,618.08 | $31,361.38 |
| Litigation Support | $26,286.90 | $26,286.90 |
| Travel Expenses | $15,630.62 | $15,133.68 |
| Photocopies | $12,163.40 | $3,040.85 |
| Document and Date Duplication and Management | $10,830.00 | $5,992.30 |
| Postage | $10,387.15 | $10,387.15 |
| Online Research Charges | $8,618.33 | $8,618.33 |
| Courier Services | $3,604.71 | $1,802.36 |
| Conference Calls | $3,434.69 | $3,434.69 |
| Phone | $1,967.07 | $1,967.07 |
| Hearing Transcripts | $1,927.15 | $1,927.15 |
| Outside Printing | $1,857.42 | $156.24 |
| Mediation Fee (½ amount) | $1,750.00 | $1,750.00 |

| | | |
|---|---|---|
| Meals | $692.54 | $0.00 |
| Delivery | $392.95 | $0.00 |
| Court Filing Fees | $300.00 | $300.00 |
| Total Expenses | $135,461.01 | $112,158.10 |

## B.    Expenses

The Court has also reviewed the invoices submitted by the defendant for its experts and trial consultants totaling $263,817.85. These expense can be broken down as follows: $4,246.70 for work performed by TrialGraphix, $177,389.16 for work performed by Decosimo and $82,181.99 for work performed by Kelso Trial Consulting.

The work performed by TrialGraphix included "video synchronization" and "data archive." As explained in the invoices, "[t]he synchronization process enables the trial team to display specific selections of video and audio with or without the corresponding transcript." See TrialGraphix Invoice (DE# 300-8 at 2, 10/6/10). Data archive refers to the storage of this material for future use in other proceedings. TrialGraphix also charged for project and design consultation. Id. at 4. In the instant case, video synchronization would have assisted the defendant in presenting video deposition testimony to the jury. Based on the Court's own experience, to use of streamlined video testimony at trial is helpful and conserves time. The Court finds that these expenses were reasonable and recoverable. The defendant will be awarded the full amount paid to TrialGraphix, $4,246.70.

The defendant also engaged the accounting firm of Decosimo. The use of an accounting firm in the instant case was necessary because the plaintiff was claiming lost profits. Additionally, healthcare accounting is a specialized field. The defendant

employed the Decosimo firm to assist them in preparing for depositions and defending against the plaintiff's claims. The Court finds that it is not unusual for a defendant to retain an accounting firm in defending against the types of claims asserted in the instant case. The Court has reviewed the bills submitted by the Decosimo firm and finds that they are detailed and reasonable. The defendant shall recover the full amount, $177,389.16, incurred in employing the Decosimo firm.

Lastly, the defendant used Kelso Trial Consulting to conduct a two-day focus group and mock trial. It is not unusual for a defendant to conduct a mock trial and a focus group in a case involving potential liability exposure in excess of a million dollars. The Court will award the defendant the full amount paid to Kelso Trial Consulting, $82,181.99. In sum, the defendant shall recover all expenses, **$263,817.85**, incurred in the instant case.

## CONCLUSION

In accordance with the foregoing, it is

ORDERED AND ADJUDGED that the Defendant's Motion for Award of Attorney's Fees, Costs and Expenses and Memorandum of Law in Support Thereof (DE# 298, 10/6/10) is **GRANTED in part and DENIED in part**. It is further

ORDERED AND ADJUDGED that the defendant is awarded attorney's fees in the amount of $1,166,927.93 ($969,220.98 plus $197,706.95), costs in the amount of $112,158.10 and expenses in the amount $263,817.85. In total, the defendant shall

30

recover **$1,542,903.88** in attorney's fees, costs and expenses from the plaintiff.

      **DONE AND ORDERED** in Chambers at Miami, Florida this **27th** day of June, 2011.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Seitz
All counsel of record