UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-60351-CIV-SEITZ/O'SULLIVAN

MANAGED CARE SOLUTIONS, INC.,

      Plaintiff,

v.

ESSENT HEALTHCARE, INC.,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER comes before the Court on the Defendant's Motion for Sanctions Against Plaintiff Managed Care Solutions, Inc.; Robert Ingham, Esq.; Ingham & Associates, P.A.; Jonathan J. Warrick, Esq.; The Law Office of Jonathan Warrick, P.A.; and Raphael Baruch and Memorandum of Law in Support Thereof (DE# 299, 10/6/10). This matter was referred to United States Magistrate Judge John J. O'Sullivan by the Honorable Patricia A. Seitz, United States District Court Judge for the Southern District of Florida pursuant to 28 U.S.C. § 636(b). Having reviewed the applicable filings and law and having held an evidentiary hearing on June 7, 2011, the undersigned respectfully RECOMMENDS that the Defendant's Motion for Sanctions Against Plaintiff Managed Care Solutions, Inc.; Robert Ingham, Esq.; Ingham & Associates, P.A.; Jonathan J. Warrick, Esq.; The Law Office of Jonathan Warrick, P.A.; and Raphael Baruch and Memorandum of Law in Support Thereof (DE# 299, 10/6/10) be **GRANTED in part and DENIED in part** in accordance with this Report and Recommendation.[1]

---

[1]The Defendant initially sought to recover $1,750.00 for an unpaid mediation fee and $4,279.00 on behalf of the law firm Gragil Associates, Inc. as a result of a

## BACKGROUND

Raphael Baruch is the plaintiff's litigation manager and has worked for the plaintiff "on and off" as the plaintiff's Director of Information Systems for approximately ten years. Mr. Baruch is not an attorney. Mr. Baruch has been married to Kara Atchison, the plaintiff's Chief Executive Officer, since 2003. Mr. Baruch is also the Chief Executive Officer of BCA, Corp. BCA Corp. and the plaintiff had a license software fee agreement which was heavily disputed in this litigation. Robert Ingham and Mr. Ingham's law firm, Ingham & Associates, P.A., have represented the plaintiff, Mr. Baruch and Ms. Atchison in a number of legal matters since 2008.

On March 6, 2009, Mr. Ingham commenced the instant action on behalf of the plaintiff against the defendant over the defendant's alleged breaches of a Professional Services Agreement (hereinafter "PSA"). See Complaint and Demand for Jury Trial (DE# 1, 3/6/09). [2] The complaint alleged the following causes of action: breach of contract, breach of implied covenant of good faith and fair dealing and accounting. Id. On September 29, 2009, the plaintiff filed an amended complaint. See Plaintiff's Amended Complaint and Demand for Jury Trial (DE# 28, 7/29/09). [3] The amended

_____

subpoena duces tecum issued by Mr. Ingham. On October 22, 2010, the defendant filed a notice advising the Court that the mediation fee has been paid by Mr. Ingham and it is no longer seeking any award of sanctions in favor of Gragil Associates, Inc. See Defendant's Notice of Payment of Mediator Fees and of Gragil Associates, Inc.'s Decision Not to Pursue Sanctions (DE# 313, 10/22/10).

[2] To avoid confusion, the undersigned will refer to the page number automatically assigned by the Court's CM/ECF system when citing to the record in this case.

[3] The amended complaint was filed pursuant to a Court Order requiring the plaintiff to support its common law accounting claim with additional factual allegations. See Order (1) Denying Motion to Dismiss for Lack of Personal Jurisdiction[;] (2)

2

complaint continued to assert claims for breach of contract and accounting.[4]

In late 2009, Mr. Ingham engaged Jonathan Warrick and Mr. Warrick's law firm to assist Mr. Ingham with this litigation.[5] Mr. Warrick had an "of counsel" relationship with Mr. Ingham's law firm. Mr. Warrick was prohibited by the plaintiff from filing a notice of appearance in this case.[6] Mr. Warrick assisted Mr. Ingham with legal research, discovery and drafted court filings including the summary judgment motion that was filed by the plaintiff on December 15, 2009. See Plaintiff's Motion for Partial Summary Judgment as to Count I of the Amended Complaint (DE# 50, 2/15/09). Mr. Warrick frequently communicated with opposing counsel regarding this case. See, e.g., Exhibit C to Ingham's Verified Response (DE# 319-3 at 4-5) (detailed email dated April 7, 2010 from Mr. Warrick to defendant's counsel Frances Fenelon and others). René Harrod,

---

Denying Motion to Dismiss for Improper Venue; (3) Denying Motion to Transfer Venue; (4) Unstaying Discovery; and (5) Requiring Amended Complaint (DE# 23 at 5, 7/13/09).

[4] On January 25, 2010, the Court dismissed with prejudice the plaintiff's accounting claim. See Order Granting Defendant's Motion to Dismiss Count Two of Plaintiff's Amended Complaint (DE# 84, 1/25/10).

[5] At some point, Mr. Ingham also engaged the services of attorney Adam Barnett. Mr. Barnett entered a Notice of Appearance on September 17, 2010 as "of counsel" to Ingham & Associates. See Notice of Appearance as of Counsel (DE# 269, 9/17/11). Mr. Barnett was allowed to withdraw from the case on September 22, 2010 and is not the subject of the defendant's sanctions motion. See Order Following September 22, 2010 Status Conference, Granting Motion for Default, and Referring Motion on Attorney's Fees and Sanctions to Magistrate Judge (DE# 293 at 1, 9/23/10).

[6] According to Mr. Ingham, the plaintiff did not want Mr. Warrick to file a notice of appearance in the case because the plaintiff was concerned that Mr. Warrick would later assert a retaining or charging lien against the plaintiff. See Ingham's Verified Response (DE# 319 at 11, 11/29/10). Mr. Warrick filed a notice of appearance in this case only after the Court directed him to do so at the pretrial conference on September 17, 2010. See Affidavit of Jonathan J. Warrick (DE# 316-1 at 60, 11/12/10); Notice of Appearance as "Of Counsel" (DE# 270, 9/17/10).

local counsel for defendant,"had significant contact with Mr. Jonathan Warrick, who

held himself out as counsel for [the plaintiff] and actively participated in all aspects of

pretrial litigation . . . ." Affidavit of René Harrod in Support of Defendant's Motion for

Attorney's Fees and Costs (DE# 300-11 at 5, 10/6/10). Mr. Warrick also attended

numerous discovery hearings alone and with Mr. Ingham. See, e.g., Transcript

December 10, 2009 Hearing (DE# 53 at 3, 12/29/09). Mr. Warrick appeared at the

depositions of Kara Atchison (DE# 144-1 at 3, 5/17/10), Keith Atchison (DE# 144-5 at 3,

5/17/10), Raphael Baruch (DE# 144-3 at 7, 5/17/10) and Charlene Maxion (DE# 144-4

at 3, 5/17/10). Mr. Warrick also prepared the initial draft of December 21, 2009

settlement demand letter (DE# 300-3 at 44-49, 10/6/10) that Mr. Ingham sent to the

defendant. The letter simultaneously threatened the defendant's counsel with Rule 11

sanctions and a referral to the Florida and Tennessee bars and made a settlement

demand starting at $4 million.[7] Mr. Warrick did not sign any of the plaintiff's filings in this

case and did not have final say on any aspect of the case. In late April or early May of

---

[7] At the June 7, 2011 evidentiary hearing, Mr. Warrick testified that although he prepared the initial draft of the December 21, 2009 letter, the settlement proposal was not included. However, on December 19, 2009, Mr. Warrick sent an email to Mr. Ingham stating the following:

> Spent about 8 hours researching, strategizing and drafting this letter to OC today. I think it's good to go and shouldn't need any revisions whatsoever. It puts them on notice to correct their answer and aff defs w/in 21 days (or by 1/11/10 if we send on Monday), that they lied to the court **and relays our $12M offer**.
>
> let me know, thanks.

Exhibit E to Ingham's Verified Response (DE# 319-6, 11/29/10) (abbreviations and punctuation in original) (emphasis added). The settlement demand was significantly lower in the final draft of the December 21, 2009 letter.

4

2010, Mr. Ingham told Mr. Warrick to stop communicating with the plaintiff.

Raphael Baruch was actively involved in discovery in this litigation. Mr. Baruch assisted with gathering documents, drafting discovery requests and reviewing documents produced in discovery. Mr. Baruch prepared some witnesses for deposition and attended some depositions. Mr. Baruch also made some revisions to the December 21, 2009 settlement demand letter (DE# 300-3 at 44-49, 10/6/10) and to some documents filed with the Court.

Discovery was heavily contested in the instant case. There were approximately ten discovery hearings before the undersigned in this case. The first of the contentious discovery hearing occurred on December 10, 2009. On that day, the plaintiff sought to obtain numerous documents from the defendant in response to the plaintiff's request for production. Following the hearing, the undersigned issued an Order (DE# 48, 12/10/09) requiring the defendant to produce certain documents by December 21, 2009 and the remaining documents on a rolling basis no later than January 14, 2010. The plaintiff was well aware of the short production deadline imposed on the defendant by the Court's December 10, 2009 discovery Order and sought to use it to pressure the defendant to settle this case.

In order to increase the pressure on the defendant, the plaintiff filed a motion for partial summary judgment on December 15, 2009. See Plaintiff's Motion for Partial Summary Judgment as to Count I of the Amended Complaint (DE# 50, 12/15/09). The plaintiff moved for partial summary judgment even though discovery was still ongoing. The plaintiff knew the defendant was attempting to comply with the Court's December 10, 2009 discovery Order and the purpose of the motion for partial summary judgment

5

and the December 21, 2009 settlement demand letter was to put additional pressure on the defendant to settle the case.[8]

On February 26, 2010, the Court issued an Order requiring the plaintiff to disclose its experts by March 12, 2010. See Order Granting in-Part and Denying in-Part Motion to Clarify (DE# 105 at 2, 2/26/10). On or about March 4, 2010, Mr. Baruch learned of the expert disclosures deadline from Mr. Warrick. See Affidavit of Raphael Baruch (DE# 316 at 77-78, 11/12/10). Mr. Baruch attempted to comply with the expert disclosures by providing Mr. Ingham with as much information as the plaintiff had available on such short notice. Id. On May 3, 2010, the Court determined that the plaintiff's expert disclosures where inadequate and struck the plaintiff's experts. See Order (DE# 138, 5/3/10). On August 23, 2010, the Court struck the plaintiff's supplemental disclosures regarding damages as untimely. See Order (DE# 213,

_____

[8] The plaintiff moved for Rule 11 Sanctions on February 9, 2010. See Plaintiff's Motion for Rule 11 Sanctions and Incorporated Memorandum of Law (DE# 87, 2/9/10). In denying the plaintiff's motion for Rule 11 sanctions, the Court noted that "it would have been more helpful to the Court and more consistent with Plaintiff's counsel's obligations under Rule 1 of the Rules of Civil Procedure, if he had exercised self-restraint and undertaken better legal research before expending the Court's and counsel's time and resources to deal with this motion." See Order Denying Motion for Sanctions (DE# 134 at 3, 4/27/10).

The Court also denied the plaintiff's motion for partial summary judgment. See Order Denying Plaintiffs Motion for Partial Summary Judgment (DE# 132, 4/27/10). After the close of discovery, the plaintiff filed a motion for leave to file a second motion for summary judgment. See Plaintiff's Motion for Leave to File Second Motion for Partial Summary Judgment (DE# 119, 4/13/10). The Court denied this motion based on Local Rule 7.1(c)(2) prohibiting the filing of multiple motions for partial summary judgment. See Order Denying Motion for Leave to File Second Motion for Partial Summary Judgment (DE# 133, 4/27/10). In denying the plaintiff's motion for leave, the Court observed that "[t]he reason for the rule is to spare the parties and Court the significant expenditure of resources that are involved in the presentment of a fully briefed motion and its resolution. "

8/23/10).

On August 31, 2010, the Court granted in part and denied in part the defendant's

motion for summary judgment. See Order Granting Defendant's Motion for Summary

Judgment in-Part and Granting Motion to Exclude Evidence of Lost Profits (DE# 222,

8/31/10). The Court found that:

> [the plaintiff] c[ould] proceed to trial on its claims that [the defendant]
> prevented [the plaintiff] from performing denial management services at
> [the defendant's] hospitals other than Paris Regional (but [the plaintiff]
> cannot seek lost profits on this claim), and [the defendant] was obligated
> to compensate [the plaintiff] for licensing fees paid to third parties after
> [the defendant] terminated the agreement.

Id. at 30-31.

On September 13, 2010, the Court issued an Order (DE# 250) requiring the

plaintiff to make supplemental pretrial filings including "specific damage figures." See

Order Following September 10, 2010 Pretrial Conference (DE# 250 at 2, 9/14/10). The

Order provided the plaintiff with one last opportunity to correct prior filings which the

Court determined where inadequate or insufficient. Mr. Ingham provided Mr. Baruch

with only a short time in which to provide the requested damage figures. See Affidavit of

Raphael Baruch (DE# 316-1 at 1, 11/12/10). Mr. Ingham requested the damage figures

from Mr. Baruch the same day they were due to be filed with the Court.

The plaintiff was ultimately unable to proceed to trial. The plaintiff terminated Mr.

Ingham and his law firm on September 19, 2010. Shortly before trial was scheduled to

commence, the plaintiff agreed to a default judgment against it pursuant to Rule

37(b)(2)(A) of the Federal Rules of Civil Procedure. See Order Following September 22,

2010 Status Conference, Granting Motion for Default, and Referring Motion on

7

Attorney's Fees and Sanctions to Magistrate Judge (DE# 293 at 1, 9/23/10). The Order

also referred Mr. Ingham to the Florida Bar for a psychological and competency

evaluation and to the Chief Judge and the Peer Review Committee to determine

whether Mr. Ingham should be removed from the Bar of this Court. Id. at 3-4. On the

same day, the Court issued a Final Judgment (DE# 294, 9/23/10) in favor of the

defendant and against the plaintiff on all counts of the complaint effectively terminating

the merits of this action. On September 27, 2010, Mr. Baruch filed a bar complaint

against Mr. Ingham as a result of the instant action. See Exhibit D to Ingham's Verified

Response (DE# 319-5 at 3, 11/29/10).

The defendant filed the instant motion for sanctions along with supporting

documentation, declarations and affidavits on October 6, 2010. See Defendant's Motion

for Sanctions Against Plaintiff Managed Care Solutions, Inc.; Robert Ingham, Esq.;

Ingham & Associates, P.A.; Jonathan J. Warrick, Esq.; The Law Office of Jonathan

Warrick, P.A.; and Raphael Baruch and Memorandum of Law in Support Thereof (DE#

299, 10/6/10) (hereinafter "Defendant's Motion for Sanctions"); Defendant's Notice of

Filing Declarations and Affidavits in Support of its Motion for Award of Attorney's Fees

and Expenses and Motion for Sanctions Against Plaintiff, Managed Care Solutions,

Inc.; Robert Ingham, Esq.; Ingham & Associates, P.A.; Jonathan J. Warrick, Esq.; The

Law Office of Jonathan J. Warrick, P.A.; and Raphael Baruch (DE# 300, 10/6/10). The

defendant also moved for attorneys' fees in a separate motion. See Defendant's Motion

for Award of Attorney's Fees, Costs, and Expenses and Memorandum of Law in

Support Thereof (DE# 298, 10/6/10).[9] For the most part, the plaintiff, Mr. Baruch and the plaintiff's former counsel responded to both motions in the same filings. These responses, as they pertain to the motion for sanctions, are as follows:[10]

- Partial Response in Opposition to Motion for Sanctions (and Memorandum of Law) and Incorporated Motion for Enlargement and Extension of Time to Respond in Full to the Sanction Motion and to the Defendant's Motion for Award of Attorney's Fees and Costs (DE# 301, 10/12/10) filed by the plaintiff;

- Jonathan J. Warrick, Esq.'s Motion for an Enlargement and Extension of Time to Respond to Defendant's Motion for Sanctions Against Jonathan J. Warrick and to Defendant's Motion for Award of Attorney's Fees, Costs and Expenses as it Relates to the Undersigned (DE# 304, 10/18/10);[11]

- Former Counsel for Plaintiff, Robert Ingham's Partial Response in Opposition to Defendant's Motion for Sanctions Against Plaintiff Managed Care Solutions, Inc., Robert Ingham, Esq., Ingham & Associates, P.A., Jonathan J. Warrick, Esq., The Law Office of Jonathan J. Warrick, P.A., and Raphael Baruch and Memorandum of Law in Support [D.E. 299] and Motion for Enlargement of Time to Fully Brief the Issue (DE# 306, 10/19/10);

---

[9] The defendant's motion for attorneys' fees is the topic of a separate Order.

[10] There are numerous affidavits, declarations and exhibits attached to these filings. Although the undersigned has considered all attachments, they are not individually listed in this Report.

[11] Although this motion is captioned as a motion for an enlargement of time, the motion raises substantive defenses to the relief requested by the defendant and the undersigned will consider those arguments in ruling on the Defendant's Motion for Award of Attorney's Fees, Costs, and Expenses (DE# 298, 10/6/10).

- Defendant's Reply to Plaintiff's Partial Response to Defendant's Motion for Sanctions (DE# 308, 10/19/10);

- Response in Opposition to Motion for Sanctions and Motion for Award of Attorney's Fees, Costs and Expenses  (DE# 316, 11/12/10) filed by the plaintiff;

- Former Counsel for Plaintiff, Robert Ingham's Verified Response in Opposition to Defendant's Motion for Sanctions Against Plaintiff Managed Care Solutions, Inc., Robert Ingham, Esq., Ingham & Associates, P.A., Jonathan J. Warrick, Esq., The Law Office of Jonathan J. Warrick, P.A., and Raphael Baruch and Memorandum of Law in Support [D.E. 299] and Plaintiff's and Raphael Baruch's Response in Opposition to Motion for Sanctions and Motion for Award of Attorney's Fees, Costs and Expenses [D.E. 316] (DE# 319, 11/29/10) (hereinafter "Ingham's Verified Response");

- Reply to Robert Ingham, Esquire's Verified Response in Opposition to Defendant's Motion for Sanctions and Plaintiff's and Raphael Baruch's Response in Opposition to Motion for Sanctions and Motion for Award of Attorney's Fees, Costs and Expenses [D.E. 319] (DE# 320, 12/20/10) filed by the plaintiff;

- Attorney Jonathan J. Warrick, Esquire and The Law Office of Jonathan J. Warrick, P.A.'s, Response in Opposition to Defendant's Motion for Sanctions (DE# 318, 11/29/10);

- Notice of Filing Exhibit C to D.E. 320 (DE# 322, 12/20/10) filed by the plaintiff and

- Notice of Filing Exhibit B to D.E. 320 (DE# 325, 12/21/10) filed by the plaintiff.

10

The defendant filed its reply on December 20, 2010. See Defendant's Reply in Support of its Motion for Sanctions (DE# 324, 12/20/10).

Prior to the evidentiary hearing, the parties filed the following exhibits:

• Notice of Filing Exhibits to Be Used During the Evidentiary Hearing Set for June 7, 2011 at 1 PM (DE# 334-336, 6/5/11) filed by Mr. Warrick and

• Defendant's Notice of Filing Demonstrative Exhibits for Use at the June 7, 2011, Hearing (DE# 338, 6/6/11).[12]

On June 7, 2011, the undersigned held an evidentiary hearing. At the evidentiary hearing, the undersigned heard testimony from Mr. Baruch, Mr. Warrick, Mr. Ingham, Mr. Ingham's former girlfriend Monica Gonzalez and Michael Lascelles, an attorney who shared office space with Mr. Ingham. Following the evidentiary hearing, the plaintiff filed a Motion to Allow Filing of Exhibits Concerning Rebuttal Witness Testimony (DE# 343, 6/9/11). The undersigned will grant this motion in a separate Order and consider the exhibits in issuing this Report and Recommendation.

## STANDARDS OF REVIEW

The defendant seeks sanctions against the plaintiff Managed Care Solutions, Raphael Baruch, attorneys Robert Ingham and Jonathan Warrick and Mr. Ingham and Mr. Warrick's respective law firms under Rule 37(d)(3) of the Federal Rules of Civil Procedure and the Court's inherent power. The defendant also seeks sanctions against Mr. Ingham, Mr. Warrick and their respective law firms under Title 28, United States Code, Section 1927.

---

[12] The Court struck the July 9, 2009 and March 29, 2010 entries on the Selected Chronology (DE# 338-2) filed by the defendant. See Order (DE# 341, 6/7/11).

1.      **Fed. R. Civ. P. 37(d)(3)**

The defendant seeks sanctions under Fed. R. Civ. P. 37(d)(3). Rule 37(d)(3)

states as follows:

> **(3) Types of Sanctions.** Sanctions may include any of the orders listed in
> Rule 37(b)(2)(A)(i)-(vi). Instead of or in addition to these sanctions, the
> court must require the party failing to act, the attorney advising that party,
> or both to pay the reasonable expenses, including attorney's fees, caused
> by the failure, unless the failure was substantially justified or other
> circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(d)(3). Rule 37(d)(3) permits the Court to impose additional sanctions

on the plaintiff and/or the plaintiff's counsel for failing to act. Id. The Court may impose

broad sanctions under Rule 37 for discovery-related abuses. See In re Seroquel

Products Liability Litigation, 244 F.R.D. 650, 656 (M.D. Fla. 2007). An individual may

avoid sanctions under Rule 37(d)(3) if he or she shows that the failure to act was

"substantially justified" or if the Court determines that the imposition of additional

sanctions would be unjust. Fed. R. Civ. P. 37(d)(3). "Substantially justified means that

reasonable people could differ as to the appropriateness of the contested action."

Maddow v. Procter & Gamble Co., 107 F.3d 846, 853 (11th Cir. 1997) (citing Pierce v.

Underwood, 487 U.S. 552, 565 (1988)).

2.      **Court's Inherent Power**

The defendant also seeks sanctions under the court's inherent power. The

Court's inherent power is derived from the Court's need "to manage [its] own affairs so

as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO,

Inc., 501 U.S. 32, 43 (1991) (internal citations and quotation marks omitted). "The key

to unlocking [the] court's inherent power is a finding of bad faith." Barnes v. Dalton, 158

F.3d 1212, 1214 (11th Cir. 1998); see also Thomas v. Tenneco Packaging Co., 293

F.3d 1306, 1320 (11th Cir. 2002) (noting that "before a court can impose sanctions

against a lawyer under its inherent power, it must find that the lawyer's conduct

constituted or was tantamount to bad faith.") (citation and quotations marks omitted). "A

party demonstrates bad faith by, inter alia, delaying or disrupting the litigation or

hampering enforcement of a court order." Eagle Hosp. Physicians, LLC v. SRG

Consulting, Inc., 561 F.3d 1298, 1306 (11th Cir. 2009). "A court should be cautious in

exerting its inherent power and 'must comply with the mandates of due process, both in

determining that the requisite bad faith exists and in assessing fees.'" Byrne v. Nezhat,

261 F.3d 1075 , 1106 (11th Cir. 2001) (citing Chambers, 501 U.S. at 50).

"Inherent powers must be exercised with restraint and discretion . . . . A primary

aspect of that discretion is the ability to fashion an appropriate sanction." Chambers v.

NASCO, Inc., 501 U.S. 32, 44 (1991) (internal citation omitted). The "dismissal of a

party's complaint or answer, or striking its defenses . . . is a heavy punishment,

appropriate only as a last resort, when less drastic sanctions would not ensure

compliance with the court's orders." Eagle Hosp., 561 F.3d at 1306 (alterations and

quotation marks omitted). Thus, in exercising its inherent power, the Court must

consider whether a less severe remedy is more appropriate to address the misconduct

at issue. See Betty K Agencies, Ltd. v. M/V Monada, 432 F.3d 1333, 1338 (11th Cir.

2005); E.E.O.C. v. General Dynamics, 999 F.2d 113, 119 (5th Cir. 1993) (noting that

the "death penalty" sanction of striking pleadings is appropriate "only under extreme

circumstances" such as willfulness or bad faith).

3.    **28 U.S.C. § 1927**

The defendant also seeks sanctions against the plaintiff's counsel and their

respective law firms under Title 28, United States Code, Section 1927. Section 1927

provides that:

> Any attorney or other person admitted to conduct cases in any court of the
> United States or any Territory thereof who so multiplies the proceedings in
> any case unreasonably and vexatiously may be required by the court to
> satisfy personally the excess costs, expenses, and attorneys' fees
> reasonably incurred because of such conduct.

28 U.S.C. § 1927. Section 1927 is penal in nature and must be strictly construed.

Macort v. Prem, Inc., 208 Fed. Appx. 781, 786 (11th Cir. 2006) (citing Peterson v. BMI

Refractories, 124 F.3d 1386, 1396 (11th Cir. 1997)). "To justify an award of attorneys'

fees under section 1927, a court must find that a party has 'unreasonably and

vexatiously' multiplied the proceedings in a case." Mackenzie v. City of Rockledge, 920

F.2d 1554, 1560 (11th Cir. 1991) (quoting 28 U.S.C. § 1927). "For sanctions under

section 1927 to be appropriate, something more than a lack of merit is required. The

statute was designed to sanction attorneys who willfully abuse the judicial process by

conduct tantamount to bad faith." Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1225

(11th Cir. 2003) (citation and internal quotation marks omitted).

**ANALYSIS**

The defendant seeks sanctions in the amount of $1,430,862.92[13] against the

---

[13] The $1,430,862.92 figure was calculated by the defendant as the amount of fees, costs and expenses incurred by the defendant from January 15, 2010 until the conclusion of the litigation minus $287,500.00 (the amount of the December 16, 2009 settlement offer) minus $97,000.00 (the approximate amount of fees, cost and expenses the defendant avoided as a result of the plaintiff's agreement to a default judgment). See Defendant's Motion for Sanctions (DE# 299 at 2, 10/6/10).

plaintiff, the plaintiff's litigation case manager Raphael Baruch and the plaintiff's former counsel: Robert Ingham, Esq., Ingham & Associates, P.A., Jonathan J. Warrick, Esq. and The Law Office of Jonathan Warrick, P.A. <u>See</u> Defendant's Motion for Sanctions (DE# 299 at 1, 10/6/10). Collectively, the defendant refers to these individuals and entities as the "MCS Litigation Team." <u>Id.</u> The defendant asks that the Court hold the MCS Litigation Team jointly and severally liable as follows: "MCS, 100%;  Robert Ingham, Esq., and Ingham & Associates, P.A., 40%; Jonathan J. Warrick, Esq., and The Law Office of Jonathan J. Warrick, P.A., 20%; and Raphael Baruch, 40%." <u>See</u> Defendant's Motion for Sanctions (DE# 299 at 10, 10/6/10).

The defendant is not seeking an additional monetary award over the attorneys' fees, costs and expenses it seeks to recover in the Defendant's Motion for Award of Attorney's Fees, Costs, and Expenses (DE# 298, 10/6/10). Instead, the defendant is seeking to characterize some of the attorney's fees, costs and expenses as sanctions. <u>See</u> Defendant's Motion for Sanctions (DE# 299 at 2 n. 4, 10/6/10) (stating that "Essent is not seeking, for itself, the award or imposition of monetary sanctions in addition to the awarding of attorneys fees and costs pursuant to the prevailing party, fee shifting provision of the contract. Rather, Essent asks that a portion of its total fee shifting award also be characterized as monetary sanctions and forced against the persons or entities who committed the sanctionable conduct."). The defendant argues that: "[t]he requested additional sanctions are necessary in order to hold the MCS Litigation Team individually responsible for their sanctionable behavior and to maximize Essent's ability to recover some, though not all, of the damages suffered as a result of the MCS Litigation Team's willful and vexatious conduct throughout this case . . . ." Defendant's

Reply to Plaintiff's Partial Response to Defendant's Motion for Sanctions (DE# 308 at 2 n.3, 10/19/10). The defendant argues that characterizing a portion of the attorney's fees and costs as sanctions is necessary to protect the defendant in the event that the plaintiff files for bankruptcy:[14] "steps should be taken to protect [the defendant] and maximize the possibility that [the defendant] will be able to collect what it is owed." Defendant's Reply to Plaintiff's Partial Response to Defendant's Motion for Sanctions (DE# 308 at 6, 10/19/10).

**1.    Liability**

The defendant seeks sanctions under Fed. R. Civ. P. 37, the Court's inherent power and Title 28, United States Code, Section 1927. The defendant argues that the Court should sanction the MCS Litigation Team because, among other things, the instant action was baseless. "The MCS Litigation Team acted in bad faith in bringing [the] Complaint against [the defendant]. [The plaintiff]'s alleged claims were baseless from the outset and this should have been apparent to [the plaintiff], Mr. Baruch, and its counsel." See Motion for Sanctions (DE# 299 at 4, 10/6/10). At the outset, the undersigned disagrees with the defendant's position that the plaintiff's claims were entirely baseless. Of note, some of the plaintiff's claims survived the defendant's summary judgment motion. See Order Granting Defendant's Motion for Summary Judgment in-Part and Granting Motion to Exclude Evidence of Lost Profits (DE# 222, 8/31/10). In granting in part and denying in part the defendant's summary judgment motion, the Court found that:

_____

[14] The defendant takes the position that sanctions sought in its motion are not dischargeable in bankruptcy. Defendant's Reply to Plaintiff's Partial Response to Defendant's Motion for Sanctions (DE# 308 at 6, 10/19/10) (citation omitted).

16

> [the plaintiff] c[ould] proceed to trial on its claims that [the defendant]
> prevented [the plaintiff] from performing denial management services at
> [the defendant's] hospitals other than Paris Regional (but [the plaintiff]
> cannot seek lost profits on this claim), and [the defendant] was obligated
> to compensate [the plaintiff] for licensing fees paid to third parties after
> [the defendant] terminated the agreement.

Id. at 30-31.[15] In fact, prior to the entry of the final default judgment against the plaintiff,

> the claims remaining to be tried in this case [we]re (1) pre-termination
> breach of contract based on Defendant's failure to provide Plaintiff access
> to four of Defendant's hospitals, for which Plaintiff will seek either a
> specific monetary amount of reliance damages, or nominal damages, and
> (2) post-termination breach for failure to compensate Plaintiff for
> associated licensing fees paid to a third party.

Order Following September 10, 2010 Pretrial Conference (DE# 250 at 1, 9/14/10).

Thus, the undersigned finds no merit in the argument that this litigation was completely

baseless from the outset. The undersigned will now address the appropriateness of

imposing sanctions against each member of the MCS Litigation Team.

### a.    The Plaintiff

The defendant seeks sanctions against the plaintiff pursuant to Rule 37(d)(3) of

the Federal Rules of Civil Procedure and the Court's inherent power. The plaintiff takes

the position that it should not be sanctioned further because "it [wa]s the victim of gross

negligence on behalf of its prior counsel which has effectively prevented the Plaintiff

from presenting its case and proceeding on the merits of its claims." Partial Response

in Opposition to Motion for Sanctions (and Memorandum of Law) and Incorporated

Motion for Enlargement and Extension of Time to Respond in Full to the Sanction

Motion and to the Defendant's Motion for Award of Attorney's Fees and Costs (DE# 301

---

[15] Of course, surviving summary judgment does not indicate that the plaintiff
would have prevailed at trial.

at 1-2, 10/12/10). The plaintiff notes that it has already been subject to the harshest

sanction – the striking of its pleadings and the entry of a final judgment – and argues

that "to categorize any portion of the attorneys' fees and costs awarded to the

Defendant as the prevailing party as a sanction would be unjust and improper." Id. at 4.

### i.     Sanctions under Rule 37(d)(3)

The defendant argues that sanctions against the plaintiff under Rule 37(d)(3) are

warranted "based upon willful and malicious conduct, including wrongful and abusive

litigation tactics . . . ." See Defendant's Reply in Support of its Motion for Sanctions

(DE# 324 at 4, 12/20/10). Rule 37(d)(3) falls under Rule 37(d). The heading of Rule

37(d) is "Party's Failure to Attend Its Own Deposition, Serve Answers to Interrogatories,

or Respond to a Request for Inspection." Fed. R. Civ. P. 37(d). Rule 37(d)(1) addresses

a party's failure to appear at a deposition and failure to serve answers, objections or

written responses to interrogatories or requests for inspection. Lastly, Rule 37(d)(3)

addresses sanctions. It stands to reason that the type of conduct sanctionable under

Rule 37(d)(3) is the conduct addressed in other portions of Rule 37(d). Namely, the

failure to appear at a deposition, serve answers to interrogatories or respond to a

request for inspection. Fed. R. Civ. P. 37(d)(1). The cases reviewed by the undersigned

from this Circuit indicate that Rule 37(d)(3) sanctions are imposed for the failure to

respond to interrogatories or requests for inspection and for the failure to appear at a

deposition. See, e.g., Gigena v. Tapas & Tintos, Inc., No. 10-23422-CIV, 2011 WL

2443674, at *2 (S.D. Fla. Jun. 15, 2011) (imposing monetary sanctions under Rule

37(d)(3) against the plaintiff based on the plaintiff's non-appearance at a properly

noticed deposition); United States v. $100,100 in U.S. Funds, No. 4:07-CV-180, 2008

WL 4614329, at * 1 (Oct. 16, 2008) (observing that "[i]f a party fails to respond to discovery requests, a court may impose sanctions under Federal Rule of Civil Procedure 37(d)(3)."). The conduct for which the defendant seeks sanctions under Rule 37(d)(3) falls outside the parameters of sanctionable conduct under Rule 37(d)(1). However, the plaintiff fails to make this argument.[16]

Rule 37(b)(2)(C) provides for the imposition of monetary sanctions for the failure to comply with discovery Orders. See Fed. R. Civ. P. 37(b)(2)(C).  It states:

> (C) *Payment of Expenses*. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Id. (italics in original). Assuming, arguendo, that the defendant is seeking sanctions under Rule 37(b)(2)(C), the undersigned finds that the imposition of those sanctions on the plaintiff would be unjust. The plaintiff is already subject to an award of attorney's fees, costs and expenses exceeding $1.5 million and a final default judgment has been entered against it. Under these circumstances, the defendant's request for additional sanctions under 37(b)(2)(C) should be denied.

### ii.    Sanctions Pursuant to the Court's Inherent Power

The defendant also seeks sanctions under the Court's inherent power. The Court should refrain from exercising its inherent power in further sanctioning the plaintiff in the instant case. "Inherent powers must be exercised with restraint and discretion." In re Mroz, 65 F.3d 1567, 1575 (11th Cir. 1995). While the undersigned is aware that "[t]here

---

[16] Mr. Ingham does make the argument that Rule 37 sanctions must relate to discovery abuses. See Ingham's Verified Response (DE# 319 at 6-7, 11/29/10).

is no injustice in holding a client responsible for the acts of his attorney of which he is aware," <u>Anderson v. United States Parcel Serv.</u>, 915 F.2d 313, 316 (7th Cir. 1990), the plaintiff in the instant case has not been left unscathed. The plaintiff has already suffered the ultimate sanction — the imposition of a default judgment. As a result, the plaintiff is liable to the defendant for over $1.5 million in attorney's fees, costs and expenses. To the extent that the Court wishes to curb future litigation abuses, it is clear that the fees judgment in excess of $1.5 million against the plaintiff would serve as an adequate deterrent. The defendant argues that the possibility that the plaintiff could petition for bankruptcy is a proper basis for characterizing a portion of those fees as sanctions. <u>See</u> Defendant's Reply in Support of its Motion for Sanctions (DE# 324 at 4, 12/20/10). However, there is no indication that the Court should use its inherent power to ensure that the defendant is made whole. The undersigned recommends that the defendant's request for additional sanctions under the Court's inherent power be denied.

**b.    Raphael Baruch**[17]

The defendant seeks sanctions against Raphael Baruch pursuant to Rule 37(d)(3) and the Court's inherent power. Mr. Baruch is married to Kara Atchison, the plaintiff's Chief Executive Officer. <u>See</u> Transcript September 22, 2010 Pretrial Conference (DE# 296 at 37, 10/5/10). Mr. Baruch worked for the plaintiff  "on-and-off" as the Director of Information Systems for the past ten years and is the plaintiff's litigation case manager. Mr. Baruch is not an attorney and was not a party to this

---

[17] Mr. Baruch did not file a separate response. Rather, the plaintiff responded on behalf of Mr. Baruch.

20

litigation. Nonetheless, the defendant argues that Mr. Baruch should be sanctioned because "he actively involves himself in nearly every aspect of the cases for which he is the litigation manager." Defendant's Reply to Plaintiff's Partial Response to Defendant's Motion for Sanctions (DE# 308 at 3-4, 10/19/10) (citations to the record omitted). Specifically, the defendant argues that sanctions against Mr. Baruch are merited because:

> Mr. Baruch was heavily involved in all aspects of this litigation on behalf of MCS. Mr. Baruch collected the discovery information (Maxion Dep., at 29:3-13), prepared witnesses for depositions (id. at 37:17-22), reviewed discovery, and researched, drafted and delivered filings and evidentiary support to an attorney for filing with the courts (Baruch Dep., at 163:19-166:9). In sum, Mr. Baruch was an active member of the MCS Litigation Team and actively participated in decisions affecting commencement of this frivolous action, abusive and expensive discovery tactics, motions for sanctions, bad faith settlement strategies, the timing and content of filings with the Court, and the maintenance for almost two years of unsupported claims that ultimately totaled $34 million.

Motion for Sanctions (DE# 299 at 7-8, 10/6/10).

In his affidavit, Mr. Baruch attests that he "was not the 'strategist' or driving force behind the handling of this case or the ultimate decision maker on behalf of the [p]laintiff" and that "[Ms.] Atchison had the ultimate say on any decisions the [p]laintiff was required to and asked to make with respect to this case." Affidavit of Raphael Baruch in Opposition to Defendant's Motion for Sanctions Against Plaintiff Managed Care Solutions, Inc.; Robert Ingham, Esq.; Ingham & Associates, P.A.; Jonathan J. Warrick Esq.; The Law Office of Jonathan J. Warrick, P.A.; and Raphael Baruch [D.E. 299] (DE# 316 at 76, 11/12/10) (hereinafter "Affidavit of Raphael Baruch").[18] Mr. Baruch

---

[18] The exhibits to the Response in Opposition to Motion for Sanctions and Motion for Award of Attorney's Fees, Costs and Expenses (DE# 316 at 16, 11/12/10) were improperly filed on the Court's CM/ECF system. As a result, the first part of Mr.

acknowledges that he did "serve[ ] as a contact person between the [p]laintiff and [Mr.] Ingham and assisted the [p]laintiff in the handling of its obligations in this case." Id.

The record shows that Mr. Baruch had extensive involvement in discovery matters in the instant action. In an email from Mr. Baruch to Mr. Ingham dated January 15, 2010, Mr. Baruch stated:

> Before you answer any request from the Defendant, I would really appreciate if you were to confer with me first . . . . I am the only one to have reviewed and have an understanding of the complete discovery produced by both parties to date, to know what we want from them and the only one to have the technical background necessary to respond. I would appreciate that neither of you respond to technical request [sic] or pretty much anything else from the opposing counsel without conferring with at least one of us.

Exhibit K to Ingham's Verified Response (DE# 319-12 at 2, 11/29/10). Mr. Baruch also participated in a conference call on April 2, 2010 regarding discovery with the plaintiff's counsel, Mr. Ingham and Mr. Warrick. See Exhibit C to Ingham's Verified Response (DE# 319-3, 11/29/10). In fact, when Mr. Baruch filed a bar complaint against Mr. Ingham on September 27, 2010, Mr. Baruch stated the following:

> InghamPA issued a discovery request with little or no modifications from a drafted version I provided to Robert at the beginning of the case. At that time my document reflected the scope of questions and documents which I thought would be needed through the discovery process, although not understanding the distinction between discovery request and interrogatories Robert submitted the request as is.

See Exhibit D to Ingham's Verified Response (DE# 319-5 at 3, 11/29/10) (emphasis omitted) (footnote omitted in original). Thus, it is clear that, at least with respect to the discovery aspect of this litigation, Mr. Baruch was heavily involved. Having determined

---

Baruch's affidavit can be found at docket entry 316 at pages 75-79. The rest of Mr. Baruch's affidavit is found at docket entry 316-1 at pages 1-5.

Mr. Baruch's involvement in this litigation, the undersigned will now address whether

any sanctions should be imposed against Mr. Baruch.

### i.      Sanctions under Rule 37(d)(3)

Rule 37(d)(3) provides that:

> Instead of or in addition to [the sanctions listed in Rule 37(b)(2)(A)(i)-(vi)],
> the court must require the party failing to act, the attorney advising the
> party, or both to pay the reasonable expenses, including attorney's fees,
> caused by the failure, unless the failure was substantially justified or other
> circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(d)(3). The undersigned has expressed doubts as to the applicability

of Rule 37(d)(3) to the complained of conduct. See, supra. However, even assuming

that the defendant is seeking sanctions pursuant to Rule 37(b)(2)(C), the undersigned

recommends against imposing Rule 37(b)(2)(C) sanctions on Mr. Baruch.

By its very terms, Rule 37(b)(2)(C) is limited to a party's failure. Fed. R. Civ. P.

37(b)(2)(C). Here, the plaintiff failed to comply with numerous discovery related orders.

Most notably, the plaintiff failed to comply with the Court's Order (DE# 105, 2/26/10)

requiring the plaintiff to disclose its experts by March 12, 2010. See Order Granting in-

Part and Denying in-Part Motion to Clarify (DE# 105 at 2, 2/26/10). The plaintiff's failure

to comply with this Order ultimately proved fatal. It resulted in the plaintiff's experts and

supplemental disclosures regarding damages being struck and severely limited the

plaintiff's ability to present its case at trial. See Order (DE# 138, 5/3/10) (striking

plaintiff's experts for failure to file proper disclosures); Order (DE# 213, 8/23/11)

(striking plaintiff's supplemental disclosures containing an analysis of the plaintiff's

claimed damages). Mr. Baruch learned of the expert disclosures deadline from Mr.

Warrick on or about March 4, 2010. See Affidavit of Raphael Baruch (DE# 316 at 77-

23

78, 11/12/10). Mr. Baruch attempted to comply with the expert disclosures by providing Mr. Ingham with as much information as the plaintiff had available under short notice. Id. The plaintiff also failed to comply with the Court's Order requiring supplemental pretrial filings requiring "specific damage figures." See Order Following September 10, 2010 Pretrial Conference (DE# 250 at 1-2, 9/14/10). Again, Mr. Baruch was provided short notice by Mr. Ingham with respect to the plaintiff's obligations under the Court's Order. See Affidavit of Raphael Baruch (DE# 316-1 at 1, 11/12/10). In the end, the plaintiff agreed to the entry of a final default judgment rather than proceed to trial. See Order Following September 22, 2010 Status Conference, Granting Motion for Default, and Referring Motion on Attorney's Fees and Sanctions to Magistrate Judge (DE# 293 at 1, 9/23/10).

The undersigned finds that it would be unjust to attribute Mr. Ingham's failures in complying with the Court's discovery Orders to Mr. Baruch. Mr. Baruch is not an attorney and was provided with short notice of the plaintiff's obligations by Mr. Ingham. There is no indication on this record that Mr. Baruch had the ability to comply with the Court's orders. Thus, imposing Rule 37(b)(2)(C) sanctions against Mr. Baruch for the plaintiff's failures in comply with discovery related orders would unjust under the circumstances of this case. The undersigned recommends that the Court deny the defendant's request for Rule 37(b)(2)(C) sanctions against Mr. Baruch.

### ii.    Sanctions under the Court's Inherent Power

Unlike Rule 37(d)(3) or 37(b)(2)(C) sanctions, the Court may exercise its inherent power to punish a wide variety of litigation misconduct. Because the Court's inherent powers are wide-reaching, the Court must exercise restraint and discretion. See Mroz,

65 F.3d 1567, 1575 (11th Cir. 1995). The undersigned finds that because the plaintiff is being sufficiently punished with a fees judgment in excess of $1.5 million, additional sanctions against the plaintiff's litigation manager under the Court's inherent power should not be imposed.

### c.      Robert Ingham, Esq. and Ingham & Associates, P.A.

The defendant seeks sanctions against Mr. Ingham and Mr. Ingham's law firm under Rule 37(d)(3), the Court's inherent power and 28 U.S.C. § 1927. Like the plaintiff, Mr. Ingham also takes the position that the entry of the final judgment against the plaintiff averts the need for additional sanctions:

> As [the plaintiff] has consented to entry of default, which is tantamount to outright dismissal of the suit, Defendant has won its 'ultimate sanction' sought by its Motion and [the plaintiff's] consent has likewise obviated the need for the imposition of fees as a precondition to the maintenance of its claim as sought by Defendant in its Supplemental Brief. Indeed, as prevailing party, Essent is already entitled to an award of its fees and costs under the PSA.

Former Counsel for Plaintiff, Robert Ingham's Partial Response in Opposition to Defendant's Motion for Sanctions Against Plaintiff Managed Care Solutions, Inc., Robert Ingham, Esq., Ingham & Associates, P.A., Jonathan J. Warrick, Esq., The Law Office of Jonathan J. Warrick, P.A., and Raphael Baruch and Memorandum of Law in Support [D.E. 299] and Motion for Enlargement of Time to Fully Brief the Issue (DE# 306 at 5, 10/19/10). However, Mr. Ingham is in a different posture from the plaintiff. The plaintiff, not Mr. Ingham, is liable to the defendant for the fee award exceeding $1.5 million. At this point, Mr. Ingham had faced no monetary sanctions as a result of his conduct in this litigation.

### i.    Sanctions under Rule 37(d)(3)

The undersigned has already expressed concern as to the applicability of Rule 37(d)(3) to the instant case. See, supra. To the extent the defendant is seeking sanctions under Rule 37(b)(2)(C), the undersigned recommends that this request be denied. A Court may refrain from imposing additional sanctions under Rule 37(b)(2)(C) if the opposing party shows that his or her failure was "substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Because the undersigned finds that monetary sanctions against Mr. Ingham and his law firm are warranted under §1927 and the Court's inherent power, the undersigned recommends against imposing sanctions under Rule 37(b)(2)(C) as unjust.

### ii.    Sanctions under Section 1927

"[A] district court's authority to issue sanctions for attorney misconduct under § 1927 is either broader than or equally as broad as the district court's authority to issue a sanctions order under inherent powers." Id. at 1239. Thus, it makes sense to consider sanctions under Section 1927 before addressing whether sanctions are merited under the Court's inherent power. As the Eleventh Circuit noted in Amlong:

> If the sanctions were permissible under § 1927, then they were proper, and there is no need to examine whether the sanctions were also permissible under the court's inherent powers. On the other hand, if the sanctions amounted to an abuse of the district court's discretion under § 1927, they necessarily amounted to an abuse of the court's discretion under its inherent powers, because the court's inherent power to issue sanctions for vexatious conduct by attorneys does not reach further than § 1927.

Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1241 (11th Cir. 2007).

Sanctions under 28 U.S.C. § 1927, like sanctions under the Court's inherent power,

require a finding of bad faith. Id. The bad faith standard under § 1927 is objective: "for purposes of § 1927, bad faith turns not on the attorney's subjective intent, but on the attorney's objective conduct." Id. at 1239.

Mr. Ingham argues that sanctions against him and his law firm are unavailable because he "has neither acted with willful disobedience of any orders of this Court, nor has he conducted himself in bad faith, vexatiously, wantonly nor for oppressive reasons, monetary sanctions against him are not warranted." Former Counsel for Plaintiff, Robert Ingham's Partial Response in Opposition to Defendant's Motion for Sanctions Against Plaintiff Managed Care Solutions, Inc., Robert Ingham, Esq., Ingham & Associates, P.A., Jonathan J. Warrick, Esq., The Law Office of Jonathan J. Warrick, P.A., and Raphael Baruch and Memorandum of Law in Support [D.E. 299] and Motion for Enlargement of Time to Fully Brief the Issue (DE# 306 at 10, 10/19/10).

The undersigned disagrees. Mr. Ingham's own testimony at the June 7, 2011 evidentiary hearing shows that he acted in bad faith when he filed the plaintiff's motion for partial summary judgment and sent the December 21, 2009 settlement demand letter (DE# 300-3 at 44-49, 10/6/10). Mr. Ingham testified that this filing and the settlement demand letter were sent for the improper purpose of putting additional pressure on the defendant to accept the plaintiff's settlement demands. Mr. Ingham filed and served these documents in bad faith and for an improper purpose, knowing that the defendant's counsel were under a strict deadline to comply with the Court's December 10, 2009 discovery Order.

This deliberate effort on the part of Mr. Ingham to force the defendant into accepting the plaintiff's settlement demand was an abuse of the judicial system.

27

Through these letters and filings, Mr. Ingham has "unreasonably and vexatiously" multiplied the proceedings. 28 U.S.C. § 1927. Not surprisingly, the Court denied both the plaintiff's motion for partial summary judgment and the motion for Rule 11 sanctions.  The Court also rebuked the plaintiff in its Order denying the Rule 11 Sanctions. See Order Denying Motion for Sanctions (DE# 134 at 3, 4/27/10) (stating that "it would have been more helpful to the Court and more consistent with Plaintiff's counsel's obligations under Rule 1 of the Rules of Civil Procedure, if he had exercised self-restraint and undertaken better legal research before expending the Court's and counsel's time and resources to deal with this motion."). Mr. Ingham's deliberately premature summary judgment motion caused the plaintiff to file a motion for leave to file a second motion for summary judgment after discovery had ended. See Plaintiff's Motion for Leave to File Second Motion for Partial Summary Judgment (DE# 119, 4/13/10). The Court denied this motion based on Local Rule 7.1(c)(2) prohibiting the filing of multiple motions for partial summary judgment. See Order Denying Motion for Leave to File Second Motion for Partial Summary Judgment (DE# 133, 4/27/10). In denying the plaintiff's motion, the Court observed that "[t]he reason for the rule is to spare the parties and Court the significant expenditure of resources that are involved in the presentment of a fully briefed motion and its resolution. " On this record, the undersigned finds that Mr. Ingham has "unreasonably and vexatiously" multiplied the proceedings and that 1927 sanctions are merited against Mr. Ingham and his law firm.

"Sanctions imposed under § 1927 must bear a financial nexus to the excess proceedings [and] may not exceed the costs, expenses, and attorneys' fees reasonably incurred because of [the sanctionable] conduct." Norelus v. Denny's, Inc., 628 F.3d

1270, 1297 (11th Cir. 2010) (alterations in original, citation and internal quotation marks

omitted). Thus, the undersigned recommends that sanctions against Mr. Ingham and

his law firm be limited to the reasonable attorney's fees incurred by the defendant in

responding to the aforementioned filings and letter.[19]

### iii.    Sanctions under the Court's Inherent Power

Although the undersigned recommends that the Court refrain from exercising its

inherent power to sanction the other members of the MCS Litigation Team, the

undersigned finds that Mr. Ingham stands in a different posture. Mr. Ingham was clearly

steering this litigation. Unlike Mr. Warrick, Mr. Ingham "called the shots" and had

complete control over the manner in which this litigation was conducted. Mr. Ingham

attempts to shift the blame to Mr. Baruch arguing that Mr. Baruch and Ms. Atchison

were "very much the driving force behind the strategy employed [in this litigation]."

Ingham's Verified Response (DE# 319 at 10-11, 11/29/10). However, Mr. Ingham, as

the attorney of record, had unique obligations to the Court. If Mr. Ingham believed that

the strategy advocated by the plaintiff was unreasonable or unethical, it was his

responsibility to reign in his client. See Thomas v. Tenneco Packing Co., 293 F.3d

1306, 1327 (11th Cir. 2002) (stating that "[i]ndependent judgment is an essential

ingredient of good lawyering, since attorneys have duties not only to their clients, but

also, as officers of the court, to the system of justice as a whole."). If Mr. Ingham was

---

[19] Mr. Ingham also failed to comply with the Court's Orders regarding expert disclosures and the calculation of damages. See Order Granting in-Part and Denying in-Part Motion to Clarify (DE# 105 at 2, 2/26/10); Order Following September 10, 2010 Pretrial Conference (DE# 250, 9/14/10). There is no evidence that Mr. Ingham acted in bad faith with respect to these Orders. See discussion, infra. The undersigned recommends against imposing sanctions under § 1927 or the Court's inherent power for this noncompliance.

unable to reign in his client, he should have withdrawn from the case. See <u>Malautea v.</u> <u>Suzuki Motor Co.</u>, 897 F.2d 1536, 1546 (11th Cir. 1993) (stating that "[a]n attorney's dutiy to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly."). Thus, Mr. Ingham cannot avoid sanctions by shifting the blame to his former client. Because the undersigned finds that sanctions under Section 1927 against Mr. Ingham and his law firm are warranted in the instant case, the undersigned also recommends the imposition of sanctions against Mr. Ingham and his law firm under the Court's inherent power. See <u>Heard v. ATN Restaurant, Inc.</u>, No. 07-60269, 2008 WL 123596, at *3 (S.D. Fla. Jan. 8, 2008) (imposing costs sanctions on attorney under § 1927 <u>and</u> the Court's inherent power).

### d.   Jonathan J. Warrick, Esq. and The Law Office of Jonathan Warrick, P.A.

The defendant seeks sanctions against Mr. Warrick and Mr. Warrick's law firm under Rule 37(d)(3), the Court's inherent power and 28 U.S.C. § 1927. The defendant argues that Mr. Warrick should be sanctioned because "[a]ll counsel, not just lead counsel, are legally and ethically accountable for bad faith and unethical conduct occurring during litigation." Defendant's Reply in Support of its Motion for Sanctions (DE# 324 at 11, 12/20/10). The plaintiff's expert, Mr. Goldman, appears to take the position that the sanctions should be borne entirely by Mr. Ingham. See Declaration of Peter R. Goldman (DE# 316-1 at 72 n. 8, 11/12/10) (stating that "a more important consideration, at least with respect to an award of *monetary sanctions*, is that Mr. Ingham, and not Mr. Warrick, made the requisite Rule 11 certifications through the signing of pleadings and had the *de facto*, control over the management and

30

stewardship of the case.") (italics in original).

Mr. Warrick's involvement in the instant case began in late 2009. At Mr. Ingham's request, Mr. Warrick became "active" in the instant case in December 2009. See Affidavit of Jonathan J. Warrick in Opposition to Defendant's Motion for Sanctions Against Plaintiff Managed Care Solutions, Inc.; Robert Ingham, Esq.; Ingham & Associates, P.A.; Jonathan J. Warrick Esq.; The Law Office of Jonathan J. Warrick, P.A.; and Raphael Baruch [D.E. 299] (DE# 316-1 at 59, 11/12/10) (hereinafter "Affidavit of Jonathan J. Warrick").[20] According to Mr. Warrick "from mid-December 2009 through March 2010, [he] frequently communicated with [Mr.] Baruch and [Ms.] Atchison (mainly Baruch) to discuss the issues in this case.[21] In particular, [Mr. Warrick] would exchange emails and telephone calls concerning issues as they came up during the relevant time period." Id. at 60. Mr. Warrick also communicated with defense counsel on discovery issues and attended, argued or assisted Mr. Ingham with various discovery hearings on the plaintiff's behalf. Id. Mr Warrick "often aid[ed Mr.] Ingham in the drafting of motions, and . . . frequently discussed legal strategy, etc, relative to this case." Id. In the Spring of 2010, Mr. Ingham told Mr. Warrick to stop communicating with the plaintiff.

---

[20] Mr. Ingham states that Mr. Warrick's involvement in the case began in October 2009 when Mr. Warrick began drafting the plaintiff's motion for partial summary judgment. See Ingham's Verified Response (DE# 319 at 3, 11/29/10).

[21] Of note, in his motion to withdraw, Mr. Warrick represented to the Court that: The undersigned [Mr. Warrick] was expressly directed by both Mr. Ingham and the Plaintiff that it [sic] was to have no communication with the Managed Care Solutions, Inc., or its agents regarding this litigation." See Jonathan J. Warrick, Esq.'s Motion to Withdraw as Counsel for Managed Care Solutions, Inc., Declaration of Conflict, Response to Defendant's Motion for Sanctions and Motion for in Camera Hearing or, Alternatively, Motion for Enlargement of Time to Respond to Defendant's Motion for Sanctions in Order to Obtain Independent Counsel (DE# 287 at 2, 9/20/10).

31

### i.      Sanctions under Rule 37(d)(3)

As noted above, the undersigned has reservations concerning the applicability of Rule 37(d)(3) to support the sanctions sought by the defendant. If the Court determines that Rule 37(b)(2)(C) sanctions are applicable, the undersigned recommends against imposing these sanctions on Mr. Warrick and his law firm. Mr. Warrick had very little control over the manner in which the plaintiff conducted discovery. The undersigned credits Mr. Warrick's testimony that his contact with the plaintiff was discouraged and limited by Mr. Ingham, especially after March, 2010, when Mr. Warrick spoke to Mr. Baruch about the plaintiff's looming expert disclosure deadline. Thus, Rule 37(b)(2)(C) sanctions should not be imposed on Mr. Warrick and his law firm where Mr. Warrick had very little ability to comply with the Court's discovery Orders.

### ii.      Sanctions under the Court's Inherent Power

The defendant also seeks sanctions under the Court's inherent power. The undersigned recommends that the Court decline to exercise its inherent power to sanction Mr. Warrick. The undersigned finds no evidence of bad faith on the part of Mr. Warrick in this litigation. See Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998) ("The key to unlocking [the] court's inherent power is a finding of bad faith."). To the extent the Court wishes to address Mr. Warrick's participation in drafting the December 21, 2009 settlement demand letter (DE# 300-3 at 44-49, 10/6/10),[22] the undersigned finds that the conduct could be more appropriately addressed by a referral to the

---

[22] In the December 21, 2009 letter, the plaintiff simultaneously threatened the defendant with Rule 11 sanctions and a referral to the Florida and Tennessee bars and made a settlement demand starting at $4 million. At the June 7, 2011 evidentiary hearing, Mr. Warrick admitted to preparing the initial draft of this letter but claimed that the settlement amounts were added by Mr. Ingham.

Florida Bar, rather than imposing monetary sanctions.

### iii   Sanctions under Section 1927

Mr. Warrick argues that he did not violate Title 28, United States Code, Section 1927 because "[Mr.] Ingham insisted that he file all motions and only [Mr.] Ingham was authorized to communicate with the client" and because the case had merit. Attorney Jonathan J. Warrick, Esquire and The Law Office of Jonathan J. Warrick, P.A.'s Response in Opposition to Defendant's Motion for Sanctions (DE# 318 at 4, 11/29/10). It is clear from the record that Mr. Warrick was not the driving force of this litigation. He had very little say and no control in the way in which this case was litigated. As such, the undersigned cannot say that Mr. Warrick's conduct unreasonably and vexatiously multiplied the proceedings in this case. See Mackenzie v. City of Rockledge, 920 F.2d 1554, 1560 (11th Cir. 1991) (stating that "[t]o justify an award of attorneys' fees under section 1927, a court must find that a party has 'unreasonably and vexatiously' multiplied the proceedings in a case.") (quoting 28 U.S.C. § 1927). The undersigned recommends against imposing sanctions under section 1927 against Mr. Warrick and his law firm.

### 2.   Amount

The defendant asks that $1,430,862.92 of the amount awarded in attorney's fees, costs and expenses under the PSA be characterized as sanctions against the plaintiff and in varying percentages against Mr. Baruch, Mr. Ingham, Ingham & Associates, P.A., Mr. Warrick and The Law Office of Jonathan Warrick, P.A. Having determined that sanctions under §1927 and the Court's inherent power are warranted against Mr. Ingham and his law firm, the undersigned must determine a reasonable

amount. "Sanctions imposed under § 1927 must bear a financial nexus to the excess proceedings [and] may not exceed the costs, expenses, and attorneys' fees reasonably incurred because of [the sanctionable] conduct." Norelus v. Denny's, Inc., 628 F.3d 1270, 1297 (11th Cir. 2010) (alterations in original, citation and internal quotation marks omitted). Thus, the monetary sanctions to be borne by Mr. Ingham and his law firm should be limited to those attorney's fees caused by Mr. Ingham's bad faith conduct. In the instant case, Mr. Ingham exhibited bad faith in December 2009 when he filed a motion for partial summary judgment and sent the December 21, 2009 settlement demand letter (DE# 300-3 at 44-49, 10/6/10) with the express purpose of putting pressure on the defendant to settle this action. Mr. Ingham and his law firm should be jointly and severally liable with plaintiff for those fees reasonably related to Mr. Ingham's bad faith conduct including the subsequent filing of the Rule 11 motion and all briefings related to the summary judgment motion and the motion for leave to file a second summary judgment motion.

The undersigned finds that there was no bad faith when Mr. Ingham failed to comply with the Court's February 26, 2010 and September 14, 2010 Orders. See Order Granting in-Part and Denying in-Part Motion to Clarify (DE# 105 at 2, 2/26/10); Order Following September 10, 2010 Pretrial Conference (DE# 250, 9/14/10). The record shows that Mr. Ingham attempted to comply with these deadlines but in the end was unable to do so. Mr. Ingham's failed to comply with the Court's expert disclosures (the February 26, 2010 Order) was based on a combination of insufficient planning and Mr. Ingham's mistaken belief that he did not need experts in the case. Additionally, the undersigned credits Mr. Ingham's testimony at the June 7, 2011 evidentiary hearing that

34

he was unable to determine the damages calculation on his own. The undersigned will limit Mr. Ingham and his law firm's liability to reasonable attorney's fees incurred by the defendant in responding to the plaintiff's motion for partial summary judgment, the plaintiff's motion for leave to file a second motion for partial summary judgment, the December 21, 2009 settlement demand letter (DE# 300-3 at 44-49, 10/6/10) and the Rule 11 motion for sanctions.

The undersigned has reviewed the detailed billing statements submitted by the defendant's lead counsel Waller, Lansden, Dortch & Davis, LLP (hereinafter "Waller" or "lead counsel") and its local counsel Berger Singerman, P.A. (hereinafter "Berger" or "local counsel") filed in connection with the Defendant's Motion for Award of Attorney's Fees, Costs, and Expenses and Memorandum of Law in Support Thereof (DE# 298, 10/6/10). Having reviewed these detailed billing entries for the relevant time period, the undersigned has determined that approximately 55.30 hours of Berger's time (totaling $17,584.50) was devoted to responding to Mr. Ingham's bad faith conduct. The undersigned has also determined that approximately 409.40 hours of Waller's time (totaling $107,754.00) was devoted to responding to Mr. Ingham's bad faith conduct. Thus, the total amount of attorney's fees devoted by the defendant in addressing Mr. Ingham's bad faith litigation conduct is $125,338.50 ($17,584.50 plus $107,754.00).

The undersigned has reached this amount by carefully reviewing the defendant's billing entries for the months of December 2009 through April 2010. Included in this total are all billing entries related to the plaintiff's motion for partial summary judgment, the December 21, 2009 settlement demand letter (DE# 300-3 at 44-49, 10/6/10) and the Rule 11 motion that were readily ascertainable by the undersigned. The

undersigned omitted any work performed by timekeepers who worked a total of less than ten hours on the case because it is difficult to determine what value was added to the case by such a minimal involvement. From this amount, the undersigned finds that a 30 percent reduction ($37,601.55) is warranted to account for block billing, clerical work, duplicative and excessive time entries and otherwise noncompensable work.[23] See Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008) (stating that "[w]hen a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour- by-hour analysis or it may reduce the requested hours with an across-the-board-cut.") (per curiam).  Thus, the undersigned determines that a reasonable sanction for Mr. Ingham's bad faith conduct is **$87,736.95** ($125,338.50 minus $37,601.55).

## CONCLUSION

The undersigned recommends that the Court impose additional sanctions against Mr. Ingham and Ingham & Associates, P.A. under § 1927 and the Court's inherent power based on Mr. Ingham's bad faith litigation conduct. Mr. Ingham and Ingham & Associates, P.A. should be jointly and severally liable, along with the plaintiff,[24] for **$87,736.95** of the attorney's fees, costs and expenses awarded to the

---

[23] In ruling on the Defendant's Motion for Award of Attorney's Fees, Costs, and Expenses and Memorandum of Law in Support Thereof (DE# 298, 10/6/10), the undersigned also reduced the defendant's billing entries by 30% and subtracted the billing entries for all timekeepers who worked a total of less than 10 hours on the case. The undersigned finds that these reductions should also be made in assessing the attorney's fees to be borne by Mr. Ingham and his law firm, jointly and severally with the plaintiff.

[24] The plaintiff's liability derives from the Professional Services Agreement and is addressed in this Court's Order regarding the Defendant's Motion for Award of Attorney's Fees, Costs, and Expenses and Memorandum of Law in Support Thereof (DE# 298, 10/6/10).

defendant. The undersigned finds that it would be unjust to impose additional sanctions against the plaintiff, Mr. Baruch, Mr. Warrick and The Law Office of Jonathan J. Warrick P.A. under the circumstances of this case. The over $1.5 million dollars in attorney's fees and costs to be borne by the plaintiff is sufficient to deter the plaintiff and Mr. Baruch from overzealous litigation in the future. Additionally, the Court should refrain from imposing sanctions on Mr. Warrick and his law firm. The undisputed evidence is that Mr. Warrick was not a strategist in this litigation and had little authority over how the plaintiff and Mr. Ingham litigated the instant case.

## **RECOMMENDATION**

In accordance with the foregoing, the undersigned respectfully recommends that the Defendant's Motion for Sanctions Against Plaintiff Managed Care Solutions, Inc.; Robert Ingham, Esq.; Ingham & Associates, P.A.; Jonathan J. Warrick, Esq.; The Law Office of Jonathan Warrick, P.A.; and Raphael Baruch and Memorandum of Law in Support Thereof (DE# 299, 10/6/10) be **GRANTED in part and DENIED in part.** The Court should Order that Robert Ingham and Ingham & Associates, P.A. be jointly and severally liable, along with the plaintiff, for **$87,736.95** of the attorney's fees, costs and expenses awarded to the defendant.

The parties have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Patricia A. Seitz, United States District Court Judge. **Any party objecting to this Report and Recommendation shall promptly file a copy of the June 7, 2011 evidentiary hearing transcript.** Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. See LoConte v. Dugger,

847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark

Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

      RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida

this **27th** day of June, 2011.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Seitz
All Counsel of Record

38