UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-60351-PAS-SEITZ/SIMONTON

MANAGED CARE SOLUTIONS, INC.,

    Plaintiff,

v.

ESSENT HEALTHCARE, INC.,

    Defendant.
_____/

### ORDER GRANTING IN PART AND OVERRULING IN PART OBJECTIONS TO MAGISTRATE'S REPORT, AFFIRMING IN PART MAGISTRATE'S REPORT, DENYING ESSENT'S MOTION FOR MONETARY SANCTIONS AND REFERRING CONDUCT TO THE FLORIDA BAR

This case involves litigation gone awry. After months of questionable litigation tactics and numerous adverse court rulings, Plaintiff Managed Care Solutions ("MCS") acquiesced to a default judgment as a sanction on the eve of trial. Defendant Essent Healthcare then filed a motion seeking $1,430,862.92 in sanctions against MCS, one of its executives and its attorneys. Essent also filed a separate motion for $2,081,903.76 in attorneys fees, costs and expenses under the parties' contractual fee-shifting provision in favor of the prevailing party. This Court referred the sanctions motion to Magistrate Judge John O'Sullivan for a Report and Recommendation and referred the motion for attorneys' fees, costs and expenses for final resolution in accordance with 28 U.S.C. 636(c), Rule 73 and the consent of the Parties. *See* Order of Sept. 22, 2010, ¶¶6(a) and (b) [DE-293]. Magistrate Judge O'Sullivan held an evidentiary hearing and issued a 38-page Report recommending that the Court sanction MCS's attorney, Robert Ingham, in the amount if $87,736.95, and deny all other sanctions. By separate Order, Magistrate Judge O'Sullivan awarded Essent more than $1.5 million in attorneys fees, costs and expenses, which MCS has

1

appealed to the Eleventh Circuit. Currently before the Court are objections filed by Ingham, Essent and MCS to the Report recommending sanctions against Ingham. Having reviewed the matters objected to *de novo*, the Court will decline the recommendation to award monetary sanctions and otherwise affirm and adopt the remainder of the Report.

I. **LEGAL STANDARD**

When reviewing a magistrate judge's report, a district judge reviews "*de novo* any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b); *see also* 28 U.S.C. § 636(b).[1] It is critical that the objection be sufficiently specific and not a general objection to the report. *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). The district judge is given discretion whether to "accept, reject, or modify" the recommended disposition made by the magistrate judge. FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b). Further, "a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge." *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009)

II. **LEGAL ANALYSIS**

　A. **DEFENDANT ESSENT HEALTHCARE, INC'S OBJECTION**

Essent objects to Magistrate Judge O'Sullivan's recommendation to deny sanctions against MCS, Raphael Baruch, and Jonathan Warrick, Esq. *See* Def.'s Obj., pp. 5-13 [DE-353]. Essent had argued that MCS, Baruch and Warrick should be sanctioned under Rule 37(d)(3) and the Court's inherent powers. Essent also sought sanctions against Warrick under 28 U.S.C. §

---

[1] Regardless of whether the standard of review is deferential or *de novo*, this Court would reach the same result here.

1927.[2]  In denying sanctions against these three, Magistrate Judge O'Sullivan concluded as an initial matter that Rule 37(d)(3) provides no basis for imposing sanctions on this record. *See* Report, pp. 19, 23-24, 26 and 32. Essent's objection, however, makes no mention of Rule 37(d)(3), much less asserts that the rule authorizes sanctions here. Instead, Essent simply repeatedly argues that sanctions should have been awarded without differentiating between any of the authorities for awarding such sanctions. The Court views this objection as too general and conclusory and finds that it lacks the requisite specificity to enable the Court to properly evaluate the objection. *Marsden*, 847 F.2d at 1548; *see United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009) ("a party that wishes to preserve its objection must ... pinpoint the specific findings that the party disagrees with"). Finding no proper objection to Magistrate Judge O'Sullivan's conclusion that Rule 37(d)(3) does not apply here, the Court will affirm and adopt that portion of the Report. The Court will now turn to the recommendation to deny sanctions under the Court's inherent powers against Baruch and MCS and under section 1927 and those inherent powers against Warrick.

        **i.**        **SANCTIONS AGAINST MCS UNDER THE COURT'S INHERENT POWERS**

For nearly as long as the federal courts have existed, it has been understood that, "'[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)(quoting *United*

---

[2] Title 28, United States Code, Section 1927 ("section 1927") provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

3

*States v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812)). "For this reason, 'Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" *Id.* (quoting *Anderson v. Dunn*, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821)). At the same time, however, these powers must be exercised "with restraint and discretion." *Id.* "Principles of deference counsel restraint in resorting to inherent power, and require its use to be a reasonable response to the problems and needs that provoke it[.]" *Degen v. United States*, 517 U.S. 820, 823-24 (1996). The "key for unlocking" the Court's inherent powers to sanction is a finding of bad faith. *Norelus v. Denny's Inc.*, 628 F.3d 1270, 1282 (11th Cir. 2010).

Essent first argues that Magistrate Judge O'Sullivan "erroneously [found] that MCS did not act in bad faith in bringing and pursuing its complaint[.]" *See* Def.'s Obj., p. 7. Essent suggests that the magistrate judge ignored "a massive body of uncontroverted evidence, [ ] controlling law, [and the] previous findings and guidance of the district court" in declining to sanction MCS. *See* Def.'s Obj., p. 7 [DE-353]. Because Essent believes the record clearly reflects MCS's bad faith, it strenuously objects to Magistrate Judge O'Sullivan's "remarkable conclusion that MCS should not be sanctioned[.]" *Id.* Essent asks this Court to reject the recommendation and exercise its inherent powers and award sanctions in the amount of $1,430,862.92 for attorneys fees and costs against MCS.

Essent's arguments, however, are misplaced. Magistrate Judge O'Sullivan did not recommend that the Court decline to exercise its inherent powers because of the absence of bad-faith conduct by MSC. Rather, Magistrate Judge O'Sullivan concluded that MCS had already suffered the "ultimate sanction" by having a default judgment entered as a sanction under Rule

4

37(b)(2)(A). *See* Report, pp 19-20. As a result of that Rule 37 sanction, a sanction that MCS agreed to no less, MCS later became liable to Essent for $1.5 million in attorneys fees, costs and expenses. On this record, he declined to recommend the Court exercise its inherent powers to impose *additional* sanctions against MCS. *Id.* Declining additional sanctions comports with the Court's duty to exercise its inherent powers "with restraint and discretion." *Chambers*, 501 U.S. at 50. Further, the Supreme Court has explained that

> when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.

*Id.* Entering a default judgment under Rule 37 that resulted in a $1.5 million dollar award reflects that the Rules were up to the task in this instance and provided an adequate sanction for MCS' conduct. *Id.* This Court must therefore affirm and adopt the recommendation to deny *additional* sanctions under its inherent powers. Essent's first objection is overruled.

    ii.    **SANCTIONS AGAINST BARUCH UNDER THE COURT'S INHERENT POWERS**

In the second objection, Essent takes issue with Magistrate Judge O'Sullivan's recommendation that the Court deny sanctions against Baruch, a director for MCS and the husband of MCS's owner, Kara Atchison. Baruch was the self-described "case manager" for lawsuits involving MCS. He personally reviewed pleadings and letters in this case, attended most or all of the depositions and generally consorted with the two attorneys accused of wrongdoing here, Ingham and Warrick, as part of his regular business day.[3]

Essent's second objection, however, is actually a subset of the first objection because the

---

[3] One could safely find that "unsavory" describes a person who engages in the type of "business" conducted by Baruch.

conduct of Baruch is the conduct of MCS and vice versa. The Court has declined to impose additional sanctions against MCS and will likewise deny sanctions against Baruch. While the Court remains troubled by almost every aspect of Baruch's involvement in this proceeding, the Court agrees with Magistrate Judge O'Sullivan that MCS, and therefore Baruch, have been "sufficiently punished" already. Report, p. 25. Accordingly, and for the reasons set forth above rejecting the first objection, this objection must also be overruled.

### iii. SANCTIONS AGAINST WARRICK UNDER THE COURT'S INHERENT POWERS AND 28 U.S.C. § 1927

In its third objection, Essent argues that the magistrate judge "ignored the record as a whole" in failing to sanction attorney Jonathan Warrick. Def.'s Obj, p. 11 [DE-353]. The Report, however, clearly reflects that Magistrate Judge O'Sullivan did not ignore the entire record. His analysis and conclusions reflect just the opposite – that he carefully considered all of the arguments and evidence and arrived at a thoughtful and restrained resolution of the issues. Magistrate Judge O'Sullivan concluded that while Warrick's conduct might warrant referral to The Florida Bar, it did not support the imposition of monetary sanctions. Report, pp. 32-33. That he reached a different conclusion than Essent would have liked does not mean that Magistrate Judge O'Sullivan ignored the entire record. The Court echos Magistrate Judge O'Sullivan's view that Warrick, together with Ingham, exhibited the type of unprofessionalism in this case that sadly lends support to the stereotyped caricatures of attorneys held by some members of the public. Warrick's actions justify referral to The Florida Bar for professionalism and ethics training, but do not support monetary sanctions. Based on Warrick's appearance before this Court, his conduct reflects a significant failure to understand his ethical

responsibilities, particularly the exercise of independent judgment, and a profound lack of basic competence. Such conduct will not be corrected by monetary sanctions. Therefore, the Court overrules this objection and affirms and adopts this portion of the Report.

Finally, Essent objects to Magistrate Judge O'Sullivan's recommendation to reduce the sanction against Ingham with an across-the-board-cut of 30 percent. Because the Court has declined to adopt the part of the recommendation to which Essent objects, Essent's fourth objection is also overruled.[4]

### B.   MCS'S OBJECTIONS

Though the Report declined to award sanctions against MCS, MCS still objected to the Report because it believed Magistrate Judge O'Sullivan should have awarded more sanctions against Ingham, its attorney. This argument, however, is not one MCS raised before Magistrate Judge O'Sullivan. The Court will exercise its discretion and decline to consider an objection that was not first presented to the magistrate judge. *Williams*, 557 F.3d at 1292. But even if the Court considered this objection, it would be rejected for the reasons set forth below.

### C.   INGHAM'S OBJECTIONS

Ingham objects to the recommendation that he be sanctioned $87,736.95 for his bad faith in filing a motion for partial summary judgment and sending a settlement demand letter in December 2009. The sanction is an amount equal to the reasonable attorneys' fees Essent incurred related to Ingham's bad faith submissions. While the Court agrees with every factual finding of Magistrate Judge O'Sullivan's Report, it will not adopt the monetary sanction award

---

[4] Had the Court reached this objection, however, it would also have been overruled based on the magistrate judge's factual findings.

against Ingham.

As the Court has noted, the "key for unlocking" the Court's inherent powers to sanction and sanctions under 28 U.S.C. §1927, is a finding of bad faith. *Norelus*, 628 F.3d at 1282. Even if a Court finds an attorney acted with bad faith, a Court does not, *ipso facto*, award sanctions under section 1927 or its inherent powers. Pursuant to 28 U.S.C. § 1927, a court "may," but need not, sanction an attorney who "multiplies the proceedings ... unreasonably and vexatiously." 28 U.S.C. § 1927. The imposition of sanctions pursuant to the Court's inherent powers is similarly a matter of discretion. *Degen*, 517 U.S. at 823-24; *Chambers*, 501 U.S. at 43.[5]

While Ingham's conduct related to the motion for partial summary judgment and the settlement demand letter reflect a notable failure to exercise rational judgment and a complete lack of professionalism, a colorable basis arguably existed for a kernel of these submissions. As discussed more fully in this Court's Order denying partial summary judgment [DE-132], Ingham premised the motion on the language of the parties' PSA and the affidavit of Kara Atchison. Essent filed a lengthy response supported by expert testimony to establish, and the Court ultimately concluded, that issues of fact existed precluding an award of summary judgment. That the Court denied the motion or even that the motion lacked merit is not the same as finding that Ingham's conduct in filing the motion objectively rises to bad faith. The Court denied the sanctions motion because Ingham sought recovery under the wrong federal rule and the arguments he raised were more appropriate for trial, not because the factual underpinnings for the

---

[5]The Court also has a duty to proceed cautiously in exerting its inherent power to sanction and to "comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees. *Id.* Because there was no finding related to Ingham's ability to pay the recommended sanction, the Court, had it adopted that portion of the Report, would have required additional findings on Ingham's ability to pay a sanction before adopting Magistrate Judge O'Sullivan's recommendation.

8

motion were nonexistent. It must be remembered that the settlement demand resulted in a $287,500 offer of judgment the following day[6].

Much has been made about the timing of Ingham's motion and demand letter and whether Ingham intended to put additional pressure on Essent to accept MCS's settlement demand. Here, Ingham acknowledged that he intended to pressure Essent into accepting a settlement, but he also acknowledged that this was not the only basis for these submissions. The timing of Ingham's two submissions is not dispositive on the issue before the Court, but merely part of the calculus involved in analyzing his conduct as a whole.

The Court need not definitively resolve this issue because even assuming this conduct demonstrates bad faith, the Court will decline to award sanctions against Ingham.[7] Considering all of the record evidence, the Court believes the proper exercise of both restraint and discretion requires no monetary sanctions against Ingham under the Court's inherent powers or section 1927. While not awarding monetary sanctions, the record reflects that the questionable litigation tactics Ingham employed during the course of this litigation have resulted in adverse consequences to him. The Court referred Ingham to The Florida Bar for a psychological and competency evaluation because his conduct evidenced a fundamental incompetence and questionable connection with reality that can best be addressed through the pending discipline

---

[6] It is also worth mentioning that neither of these submissions resulted in a contemporaneous motion for sanctions. Without suggesting that waiting until the very end of the case to seek sanctions is impermissible, a contemporaneous allegation of sanctionable conduct would at least have been consistent with the purpose of sanctions - to deter subsequent abuses in this case.

[7] Let it be clear that the Court does not condone Ingham's conduct. An attorney should not equate the pursuit of zealous advocacy with the zealous pursuit of the dubious ends of clients by relentlessly advancing whatever marginally, colorable claim that might exist. The professional harm flowing from this type of conduct is self-evident.

process. The Court also referred him to the Chief Judge of this Court and the peer review committee to determine whether Ingham should be removed from the Bar of the Southern District of Florida. MCS terminated Ingham and filed a complaint with The Florida Bar against him. And while the words of this Order might not constitute a formal sanction, harsh words that reflect adversely on a lawyer's professionalism always should be treated as a form of punishment for attorney misconduct.

### III. CONCLUSION

The imposition of a default judgment under Rule 37(b)(2)(A) is arguably the most severe sanction at the Court's disposal. MCS is further obligated to pay Essent $1.5 million in attorneys fees, costs and expenses as a direct result of that default judgment. Declining Essent's invitation to further punish anyone through additional monetary sanctions does not reflect a denial of justice as suggested by Essent. Denying additional sanctions is, however, consistent with the Court's duty to exercise its inherent powers to sanction with restraint and discretion. On this record, the Court declines to exercise this potent power. Essent's motion for sanctions is therefore denied. Accordingly, it is

ORDERED THAT:

(1) Magistrate Judge O'Sullivan's Report and Recommendation [DE-347] is DECLINED IN PART AND AFFIRMED AND ADOPTED IN PART. The Report is DECLINED to the extent it recommends imposing monetary sanctions against Robert Ingham and his law firm. It is otherwise AFFIRMED AND ADOPTED consistent with this Order.

(2) Robert Ingham's Objections [DE-355] are GRANTED IN PART and OVERRULED IN PART. The objections are granted to the extent that the Court declines the recommendation to award sanctions against Ingham, and otherwise the objections are OVERRULED.

(3) Plaintiff Managed Care Solutions' Objections [DE-351] are OVERRULED.

(4) Defendant Essent Healthcare Inc.'s Objections [DE-353] are OVERRULED.

(5) Defendant Essent Healthcare Inc.'s Motion for Sanctions [DE-299] is DENIED.

(6) Jonathan Warrick's Motion to Strike [DE-371] is DENIED AS MOOT.

(7) Based on his conduct in this proceeding, the Court will refer Jonathan Warrick to The Florida Bar with the recommendation that his conduct merits some form of professionalism and ethics training. Essent shall provide The Florida Bar with a comprehensive list of Warrick's transgressions in this case as set forth in the Objection at pages 11-13 [DE-353].

DONE and ORDERED in Miami, Florida, this 20th day of September, 2011.

_____
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record
Magistrate Judge John O'Sullivan
Arlene Sankel, The Florida Bar (asankel@flabar.org)